# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN HIGHLANDS, LLC,
an Oregon Limited Liability Company,

      Plaintiff,

vs.                                                                           No. CIV 08-0239 JB/ACT

DAVID HENDRICKS, and
MAGNOLIA MOUNTAIN LIMITED
PARTNERSHIP, a Texas limited
partnership,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss, filed March 14, 2008 (Doc. 3). The Court held a hearing on April 24, 2008. The primary issues are: (i) whether Plaintiff Mountain Highlands, LLC's 2003 claims are barred because the Defendants successfully defended title to the property; (ii) whether Mountain Highlands' 2003 claims are barred because the doctrine of merger merged all prior representations into the warranty deed; (iii) whether Mountain Highlands is estopped from bringing its 2003 claims because the prior adjudication in the New Mexico Court of Appeals gives rise to collateral estoppel; (iv) whether Mountain Highlands' 2007 claims should be denied because Mountain Highlands' reasons why the United States Bankruptcy Court for the District of New Mexico denied its plan for reorganization are false; (v) whether Mountain Highlands' 2007 claims constitute an improper collateral attack on the Bankruptcy Court's order; and (vi) whether Mountain Highlands' 2007 claims should be dismissed because Mountain Highlands failed to seek further relief from the Bankruptcy Court. The Court concludes that Mountain Highlands' 2003 claims about the Defendants' representations regarding marketability

and clarity of title are merged into the warranty deed and barred, but that the representations about the commercial viability of the project are collateral and may proceed. The Court further believes that the prior opinions of the New Mexico Court of Appeals and the United States Bankruptcy Court for the District of New Mexico do not bar the 2003 claims about the commercial viability or the 2007 claims before the Court, and that Mountain Highlands is not, with these claims, collaterally attacking the judgments made in prior opinions, and that Mountain Highlands has properly alleged these claims in the United States District Court for the District of New Mexico. Accordingly, the Court will grant in part and deny in part the Defendants' motion to dismiss.

## FACTUAL BACKGROUND

The Court derives its summary of the facts primarily from the allegations in Mountain Highlands' Complaint, but also from facts set forth in a reported opinion from the New Mexico Court of Appeals. See Magnolia Mountain Ltd. Partnership v. Ski Rio Partners, 2006-NMCA-027, 131 P.3d 675. The Court also derives some facts from a Memorandum Opinion and Order by the Honorable James S. Starzynski, United States Bankruptcy Judge, in Mountain Highlands' Chapter 11 bankruptcy proceeding. See In re: Mountain Highlands, LLC, Debtor, Cause No. 11-06-10011-SA (Doc. 131); In re: Mountain Highlands, LLC, Debtor, Cause No. 11-60-10011-SA (Doc. 137). The Defendants request that the Court take judicial notice of facts set forth in the reported opinion from the New Mexico Court of Appeals, and in Documents 131 and 137 from cause number 11-06-10011-SA from the United States Bankruptcy Court proceeding.

For the purposes of this motion, the Court must assume the Complaint's factual allegations to be true. In their motion to dismiss, however, the Defendants contend that the Court must deem some of these allegations false because of the decisions by the New Mexico Court of Appeals and

Judge Starzynski.  See Motion to Dismiss, filed March 14, 2008 (Doc. 3)("Motion to Dismiss").  The Court is not, however, free, on a motion to dismiss, to resolve factual issues.

In 2003, Defendant Magnolia Mountain Limited Partnership initiated the foreclosure of a property located in Taos County, New Mexico, known as Ski Rio Property, that Ski Rio Partners, Ltd. owned.  See Complaint ¶ 6, at 2.  The land remained subject to a first lien in favor of Signature Capital Funding.  See Motion to Dismiss at 2.  Defendant David B. Hendricks, the general partner of Magnolia Mountain, led the Ski Rio Partners to believe that foreclosure of the Ski Rio property was not real and that they should not waste time filing a response to the foreclosure-related pleadings served.  See Complaint ¶ 9, at 2-3.

Based on the information that Hendricks gave it, the Ski Rio Partners did not answer the foreclosure action.  See id. ¶ 10, at 3.  In May or June of 2003, the Eighth Judicial District Court of New Mexico entered a default judgment and order authorizing the foreclosure of the mortgage in favor of Magnolia Mountain and the sale of the property.  See Complaint ¶ 15, at 4.  After obtaining a default judgment against Ski Rio Partners, and a stipulated judgment with another defendant in the foreclosure action, Magnolia Mountain conducted a foreclosure sale and purchased the property at the foreclosure sale by bidding in the amount of its judgment against Ski Rio Partners.  See id. ¶ 16, at 4.

Following the foreclosure, Magnolia Mountain increased the offering price of the Ski Rio property to Mountain Highlands by $500,000.00, representing that not only had the foreclosure action been properly conducted, but that it had so effectively quieted title to the Ski Rio property that if Mountain Highlands accepted Magnolia Mountain's offer, it would be immediately able to commence business development on the property.  See id. ¶ 23, at 5.  Mountain Highlands accepted

Magnolia Mountain's offer and entered into a purchase option agreement.  See id. ¶ 24, at 6. Mountain Highlands alleges that Magnolia Mountain knew that Mountain Highlands planned to move quickly to develop the Ski Rio property and knew, or should have known, that it was relying on Magnolia Mountain's representation that it had properly obtained title to the Ski Rio property. See id. ¶ 25, at 6.

Within a few days following the closing, Ski Rio Partners filed a lis pendens against the Ski Rio property, clouding the title to the Ski Rio property, rendering it and all other assets that Mountain Highlands then owned, adjacent or near the Ski Rio property, unmarketable, and subjecting Mountain Highlands to alleged damages and injuries.  See Complaint ¶ 31, at 8. After the sale to Mountain Highlands was completed, Ski Rio Partners moved to set aside the default judgment, asserting fraud and misrepresentation by Magnolia Mountain. See Complaint ¶ 31, at 8. Mountain Highlands alleges that the lis pendens provided it with its first notice that the Ski Rio property was unmarketable property.  See Complaint ¶ 32, at 8.

In the lawsuit to set aside the default judgment, Magnolia Mountain defended title successfully.  The Honorable Peggy Nelson, District Judge of the Eighth Judicial District Court, County of Taos, State of New Mexico, upheld the foreclosure judgment and sale as valid, and the New Mexico Court of Appeals affirmed Judge Nelson's decision.  See Magnolia Mountain Limited Partnership v. Ski Rio Partners, 2006-NMCA-027, ¶ 45, at 300, 131 P.3d at 687.

The New Mexico Court of Appeals set forth the procedural history of this foreclosure case in Magnolia Mountain Limited Partnership v. Ski Rio Partners.  See 2006-NMCA-027, ¶¶ 3-11, at 291-92, 131 P.3d at 678-79.  The result was that, on December 12, 2005, the Court of Appeals affirmed the default judgment and foreclosure sale.  See id. ¶ 45, at 300, 131 P.3d at 687.  The state

district court and Court of Appeals held that: (i) Magnolia Mountain did not make a promise not to foreclose; and (ii) Ski Rio Partners could not have reasonably relied upon any alleged promise.  See Magnolia Mountain Ltd. Partnership v. Ski Rio Partners, 2006-NMCA-027, ¶¶ 22, 26, 27, at 295-96, 131 P.3d at 682-83.  Mountain Highlands was made a party to Magnolia Mountain Limited Partnership v. Ski Rio Partners through Ski Rio Partners' third-party complaint.  See id. ¶ 7, at 292, 131 P.3d at 679.  Mountain Highlands was later dismissed from the case.  See id., 131 P.3d at 679. According to Mountain Highlands, during the two years required to resolve the question whether Magnolia Mountain was the actual owner of the Ski Rio property, Mountain Highlands incurred over two million dollars in costs to secure, insure, and maintain the Ski Rio property and other related properties acquired from Magnolia Mountain, the usefulness and value of which were dependant upon uncontested ownership of the Ski Rio property.  See Complaint ¶ 35, at 8-9.

        While Magnolia Mountain Limited Partners v. Ski Rio Partners was pending, Signature Capital sought to foreclose on the property pursuant to its first-lien mortgage.  See Motion to Dismiss at 2. Signature Capital eventually obtained a judgment for foreclosure and noticed up its own foreclosure sale.  See id.  Before the foreclosure sale could be held, however, Mountain Highlands filed a Chapter 11 bankruptcy proceeding. See id.; 11-06-10011-SA at 4.

        To extricate itself from the bankruptcy, Mountain Highlands proposed a Plan for Reorganization.  See Complaint ¶ 46, at 10. According to Mountain Highlands, for the purpose of securing the Plan's approval, Mountain Highlands accepted a proposal made by Magnolia Mountain involving a trade of lands owned by one of Mountain Highlands' affiliate companies.  See Complaint ¶ 47, at 10. This proposal was contingent upon the confirmation of Mountain Highlands' Plan, to which Magnolia Mountain had previously agreed to approve.  See id. ¶ 48, at 11.

At the hearing on the Plan, Magnolia Mountain, through its attorney and without advance notice to Mountain Highlands, objected to the sale, and gave notice that it intended to refuse to comply with the proposal and that it would not approve confirmation of the Plan if it were required to honor the proposal.  See Complaint ¶ 53, at 11. According to Mountain Highlands, Magnolia Mountain's objection was made in a way that implied, "through omissions of fact and intentionally misleading communications to the Bankruptcy Court Judge, that Plaintiff [had] improperly obtained the approvals from Defendants regarding the [proposal] and the Plan." Complaint ¶ 54, at 11-12. Judge Starzynski denied the confirmation of Mountain Highlands' plan in his Memorandum Opinion and Order of December 14, 2007.  See In re: Mountain Highlands, LLC, Debtor, Cause No. 11-06-10011-SA, Memorandum Opinion in Support of Order Denying Confirmation of Debtor in Possession's Restated Plan of Reorganization  (Doc. 131).

Judge Starzynski's Memorandum Opinion in Support of Order Denying Confirmation of Debtor in Possession's Restated Plan of Reorganization (Doc. 131) is a twenty-seven page opinion, detailing the reasons for denying confirmation of Mountain Highlands' Plan. See id.  Footnote 5 of his opinion provides:

> Debtor has now filed a motion for approval of a § 363(f) sale of the property.  Doc 106.  The Court is making its decision based on the record and the facts as presented at the evidentiary hearing, without regard to more recent developments, including the proposed sale as well as the overall tightening of the credit markets.

Memorandum Opinion in Support of Order Denying Confirmation of Debtor in Possession's Restated Plan of Reorganization at 5. Mountain Highlands alleges that Magnolia Mountain only objected to the sale because, once cash had been offered for Mountain Highlands' properties, Magnolia Mountain decided that it wanted cash instead of the trade it proposed and approved.  See Complaint ¶ 55, at 12.  According to Mountain Highlands, Magnolia Mountain's actions threatened

to end the sale of the property, which Magnolia Mountain knew or should have known would expose Mountain Highlands to additional losses and extended litigation.  See id. ¶ 55, at 12.  In 2008, Mountain Highlands sold the Ski Rio property to a buyer it had previously procured, but at a substantial added cost to Mountain Highlands as a result of Magnolia Mountain's allegedly wrongful objection to the sale.  See id. ¶ 57, at 12.

## PROCEDURAL BACKGROUND

Mountain Highlands asserts six causes of action.  All six causes of action are based on one or both of two factual scenarios that Mountain Highlands alleges.  One factual scenario involves the sale of the property to Mountain Highlands in August 2003 -- the 2003 Claims.  The other factual scenario involves the Orders from Judge Starzynski in December 2007 -- the 2007 Claims.  Mountain Highlands' causes of action  relating to the 2003 claims include: (i) fraud; (ii) breach of the covenant of good faith and fair dealing; (iii) breach of express and implied warranties; and (iv) prima-facie tort. Mountain Highlands' causes of action relating to the 2007 claims include: (i) interference with prospective economic advantage; (ii) breach of covenant of good faith and fair dealing; and (iii) prima-facie tort.

The 2003 Claims are based on the following allegations: (i) the Defendants knew or should have known, or were reckless in failing to discover, that the title to the Ski Rio property, which they were conveying to Mountain Highlands, was not clear and marketable and that the status of the property did not allow for immediate commercial development by Mountain Highlands, but that, to the contrary, there was a substantial risk that Ski Rio Partners, upon learning what had happened, would challenge Mountain Highlands' new title and the methods used by Magnolia Mountain to strip the Ski Rio properties from their prior owner; (ii) the Defendants knew or should have known

that Mountain Highlands needed clear-and-marketable title to the Ski Rio property as well as the ability to begin immediate commercial development to realize a return on its investment, and in fact charged Mountain Highlands an extra $500,000.00 for the increased value represented by the commercial viability of the property and the allegedly clear-and-marketable title they transferred to Mountain Highlands, when they knew the title they were transferring was not clear and marketable and intentionally misrepresented the nature and quality of the property and of the title they transferred; (iii) the Defendants expressly and impliedly warranted that the title of the Ski Rio property was clear and marketable when transferred to Mountain Highlands and that Mountain Highlands would be immediately able to commence business operations on the property; (iv) the Defendants intentionally misrepresented and concealed the true nature and quality of the title and of the property, and intended Mountain Highlands to rely on these representation; and (v) as a result of these actions, Mountain Highlands suffered significant financial loss.  See Complaint ¶¶ 60-69, 76-79, 88-92, 94-98, at 13-19.  The 2007 Claims are based on the following allegations: (i) Mountain Highlands filed a motion for approval from Judge Starzynski to sell the property; (ii) Mountain Highlands and Magnolia Mountain entered into an Exchange Agreement which required Magnolia Mountain to approve Mountain Highlands' Plan; (iii) in a last minute attempt to obtain a portion of the sale proceeds that Mountain Highlands would receive upon the sale of the Ski Rio property, Magnolia Mountain refused to comply with the Exchange Agreement and objected to the motion for approval of the sale, wrongfully omitting facts from the Bankruptcy Court to cause Mountain Highlands' Plan to fail; (iv) as a result of the misrepresentations by the Defendants' counsel, Judge Starzynski denied confirmation of Mountain Highlands' Chapter 11 plan for reorganization; and (v) Mountain Highlands was harmed by the denial of its plan for reorganization.

-8-

<u>See</u> Complaint ¶¶ 71-74, 83-86, 99-100, at 15, 17, 19-20.

The Defendants move the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims set forth in Mountain Highlands' Complaint for Damages and Equitable Relief, because Mountain Highlands has allegedly failed to state a claim upon which the Court can grant relief.  Specifically, Magnolia Mountain argues that: (i) the 2003 contract claims are barred because Magnolia Mountain successfully defended title to the property; (ii) all of the 2003 claims are barred because they are collaterally estopped by the decision in <u>Magnolia Mountain Limited Partnership v. Ski Rio Partners</u>, 2006-NMCA-027, 131 P.3d 675; (iii) the 2007 claims fail because Mountain Highlands' allegations regarding the reason why confirmation of its plan for reorganization was denied by Judge Starzynski are patently false; (iv) the 2007 claims constitute an improper collateral attack on the Bankruptcy Order; and (v) Mountain Highlands should not be allowed to pursue an independent action while it has remedies available in the Bankruptcy Court. <u>See</u> Motion to Dismiss at 1-7.  Magnolia Mountain ultimately argues that Mountain Highlands' claims are barred by final adjudications in prior and separate proceedings.  <u>See</u> Motion to Dismiss at 8.

## STANDARDS FOR DISMISSAL UNDER RULES 12(b)(6) AND  FOR SUMMARY JUDGMENT UNDER RULE 56

The Defendants request the Court to dismiss Mountain Highlands' case pursuant to rule 12(b)(6).  Mountain Highlands contends that, because the Defendants' motion relies heavily on matters outside of its Complaint, that, if the Court is to consider such matters, it may treat Defendants' motion as one for summary judgment under rule 56.

### 1.    Rule 12(b)(6).

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted). "[T]he Supreme Court [of the United States] recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). "The [Supreme] Court [of the United States] explained that a plaintiff must 'nudge[] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts

-10-

in support of the pleaded claims is insufficient; the complaint must give the court reason to believe

that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge

at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.   The United States Court of Appeals for the

Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct, much
> of it innocent, then the plaintiffs "have not nudged their claims across the line from
> conceivable to plausible."  The allegations must be enough that, if assumed to be
> true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly,

127 S Ct. at 1974)(internal citations omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the
> absence of additional allegations) have a reasonable prospect of success, but also to
> inform the defendants of the actual grounds of the claim against them.  "Without
> some factual allegation in the complaint, it is hard to see how a claimant could
> satisfy the requirement of providing not only 'fair notice' of the nature of the claim,
> but also 'grounds' on which the claim rests."  [Bell Atl. Corp. v. Twombly, 127
> S.Ct.] at 1965 n. 3.  See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.,
> 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint
> may be so sketchy that the complaint does not provide the type of notice of the claim
> to which the defendant is entitled under Rule 8.").  The Twombly Court was
> particularly critical of complaints that "mentioned no specific time, place, or person
> involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a
> complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . .
> . would have little idea where to begin."  Id.

Robbins v. Oklahoma, 519 F.3d at 1248.

In determining the sufficiency of a complaint, all well-pleaded factual allegations are to be

taken as true. See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002).

"Nevertheless, conclusory allegations without supporting factual averments are insufficient to state

a claim upon which relief can be based." Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991).

"Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true

only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." Id. Only well-pleaded facts are admitted as distinguished from conclusory allegations when considering a motion to dismiss for failure to state a claim upon which relief can be granted. See Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001).

A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d).  Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment. See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)(citing 27A Fed. Proc., L.Ed. § 62:520 (2003)). Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001). A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002). If, however, a document is not incorporated by reference or attached to the complaint, but is referred to in the complaint and is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). See 5A C. Wright & A. Miller, Federal Practice & Procedure § 1327 (3d ed. 2004) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency

of the pleading.").

        **2.**      <u>**Rule 56**</u>.

Summary judgment is proper and appropriate where the movant demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.</u>, 52 F.3d 1522, 1527 (10th Cir. 1995)("Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.")(internal quotation marks omitted); <u>Thrasher v. B&B Chemical Co.</u>, 2 F.3d 995, 996 (10th Cir. 1993).  Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1).  The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case.  <u>See</u> <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial, <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 324.

While the party moving for summary judgment has the initial burden of establishing that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law, <u>see</u> <u>id.</u> at 330, once the moving party meets its burden, the party opposing the motion must come forward with specific facts supported by admissible evidence that

demonstrates the presence of a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248-249; Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).  When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## NEW MEXICO LAW REGARDING WARRANTY DEEDS AND MERGER

> In a conveyance of real estate the words, "warranty covenants" shall have the full force, meaning and effect of the following words: "the grantor for himself, his heirs, executors, administrators and successors, covenants with the grantee, his heirs, successors and assigns, that he is lawfully seized in fee simple of the granted premises; that they are free from all former and other grants, bargains, sales, taxes, assessments and encumbrances of what kind and nature soever; that he has good right to sell and convey the same; and that he will, and his heirs, executors, administrators and successors shall warrant and defend the same to the grantee and his heirs, successors and assigns forever against the lawful claims and demands of all persons."

N.M.S.A. 1978, § 47-1-37 (1947).

Parties to a contract may substitute a prior agreement with a new one.  See Richards v. Allianz Life Ins. Co. of N. Am., 2003-NMCA-001, ¶ 12, 62 P.3d 320, 324 (citing Restatement (Second) of Contracts § 279 (1981), and  A. Corbin, Corbin on Contracts § 1293 (1962)).  "This doctrine, the substitution of contracts, has been characterized in New Mexico as the doctrine of merger. Both stand for the proposition that, in the case of subsequent inconsistent contracts, the later contract governs." Richards v. Allianz Life Ins. Co. of N. Am., 2003-NMCA-001, ¶ 12, 62 P.3d at 324 (citing Superior Concrete Pumping, Inc. v. David Montoya Const., Inc., 108 N.M. 401, 404, 773 P.2d 346, 349 (1989)("The doctrine of merger is a contract principle that prior agreements on the same subject are presumed to be included in the final contract. Merger applies only to successive agreements that contain inconsistent terms. Under these conditions, an antecedent agreement is

-14-

deemed to have merged into the more recent contract[.]"))(internal citations omitted). The Supreme

Court of New Mexico has described the doctrine of merger as it exists in New Mexico:

> In the absence of fraud, mistake, etc., the following stipulations in contracts for the sale of real estate are conclusively presumed to be merged in a subsequently delivered and accepted deed made in pursuance of such contract, to wit: (1) Those that inhere in the very subject-matter of the deed, such as title, possession, emblements, etc.; (2) those carried into the deed and of the same effect; (3) those of which the subject-matter conflicts with the same subject-matter in the deed. In such cases, the deed alone must be looked to in determining the rights of the parties.
>
> But where there are stipulations in such preliminary contract of which the delivery and acceptance of the deed is not a performance, the question to be determined is whether the parties have intentionally surrendered or waived such stipulations. If such intention appears in the deed, it is decisive; if not, then resort may be had to other evidence.

Continental Life Ins. Co. v. Smith, 41 N.M. 82, 88-89, 64 P.2d 377, 381 (1936).  "There is an

exception to the [merger] rule . . . which is that the contract of conveyance is not merged upon

execution of a deed, where under the contract the rights are conferred collaterally and independent

of the deed; there being no presumption that the party, in accepting the deed, intends to give up the

covenants of which the deed is not a performance or satisfaction." Norment v. Turley, 24 N.M. 526,

528, 174 P. 999, 1001 (1918).

The difficulty is determining what pre-warranty deed promises are collateral and which are

merged, and whether the mere allegation of fraud, of even admittedly merged promises, is enough

to avoid merger.  If the Court makes the merger doctrine too broad, the merger doctrine could allow

a seller to make many misrepresentations with immunity; if the Court construes the collateral

exception too broadly, the exception could swallow the rule.  Similarly, if the Court allows the fraud

exception to exclude all allegations of representations that turn out to be inaccurate, the exception

could allow about any claim of misrepresentation to go forward.

The Defendants rely primarily on nineteenth-century decisions of the Supreme Court of the United States that reflect a broad merger doctrine.  In <u>Andrus v. St. Louis Smelting and Refining Co.</u>, 130 U.S. 643 (1889), the buyer alleged that the seller promised to put the buyer "into immediate possession" of the subject property.  <u>Id.</u> at 646.  After purchasing the property, however, the buyer discovered that there was a person in possession of the property.  <u>Id.</u>  The buyer successfully ejected the persons who were unlawfully in possession of the property.  <u>Id.</u> at 647.  The buyer then sued the seller for misrepresentation, claiming damages for the time period between purchasing the property and completing the ejection suit because the buyer was not put into immediate possession, as the seller had allegedly promised.  The Supreme Court stated:

> [T]he covenant in the deed for quiet possession merged all previous representations as to the possession, and limited the liability growing out of them. Those representations were to a great extent, if not entirely, mere expressions of confidence in the company's title, and the right of possession which followed it, against all intruders. The covenant was an affirmance of those statements in a form admitting of no misunderstanding. It was the ultimate assurance given upon which the plaintiff could rely, a guaranty against disturbance by a superior title. That covenant has not been broken. It is a covenant against disturbance by 'persons lawfully claiming' the premises or any part thereof. If the occupant holds by a paramount title, and thus lawfully excludes the purchaser from possession, the covenant is broken. But it is not broken by a tortious disturbance. If the occupation is without right, the remedy of the purchaser is to dispossess the i[n]truder. His occupation does not constitute a breach of the covenant. False and fraudulent representations upon the sale of real property may undoubtedly be ground for an action for damages, when the representations relate to some matter collateral to the title of the property, and the right of possession which follows its acquisition, such as the location, quantity, quality, and condition of the land, the privileges connected with it, or the rents and profits derived therefrom.

<u>Andrus v. St. Louis Smelting and Refining Co.</u>, 130 U.S. at 646-47 (internal citations omitted). The Supreme Court's decision held that, generally, a representation regarding title that precedes the delivery of a warranty deed cannot form the basis of a misrepresentation claim.  <u>See</u> <u>id.</u> at 648.

Similarly, in <u>Farrar v. Churchill</u>, 135 U.S. 609 (1890), the Plaintiffs brought a claim of

fraudulent representations against the Defendants and their agent as to the freedom of the lands from liability to overflow from the Mississippi River, and also as to the number of acres of cleared land in the tract of land conveyed.  See id. at 614.  The Supreme Court noted that it had held in Andrus v. St. Louis Smelting and Refining Co., that "false and fraudulent representations upon the sale of real property may undoubtably be ground for an action for damages when the representations relate to some matter collateral to the title of the property . . ." Farrar v. Churchill, 135 U.S. at 614.  The Supreme Court derived guidance from Myers v. Estell, 47 Miss. 4 (Miss. 1872), in which the Supreme Court of Mississippi stated:

> "In an action for the price of land sold, the purchaser may set up in defense the fact that the vendor defrauded him by false representations as to the quantity, quality, condition, and boundaries of the land.  An offer to rescind the contract is not necessary in order to entitle the purchaser to maintain an action for damages for the fraud, . . . nor to entitle him to defend to the extent that he has suffered by the fraud; that it, to the extent that he would be entitled to recover in an action for damages founded on the fraud."

Farrar v. Churchill, 135 U.S. at 614-15 (quoting  Myers v. Estell, 47 Miss. at 21).  The Supreme Court went on to state:

> Fraud is never presumed, and where it is alleged the facts sustaining it must be clearly made out.  The representation must be in regard to a material fact, must be false, and must be acted upon by the other party in ignorance of its falsity, and with a reasonable belief that it was true.  It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause, if it were proximate, immediate and material.

Id. at 615.  Additionally, the Supreme Court noted:

> In an action of deceit, it is true that silence as to a material fact is not necessarily, as [a] matter of law, equivalent to a false representation.  But mere silence is quite different from concealment. . . . A suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of, and equivalent to, a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the

-17-

whole truth.

Id. at 617 (internal quotation marks omitted).  Ultimately, the Supreme Court determined that the

deed "cannot be brushed away as a result of the evidence in this record."  Id. at 620.  The Supreme

Court noted that the plaintiff went personally upon the ground, "which ought to have enabled him

to determine substantially how many acres were in fact under cultivation."  Id.

While the cases from the Supreme Court of the United States, upon which the Defendants

rely, suggest a broad merger doctrine and limitations on fraud claims, the case law from New

Mexico suggests that the doctrine in this state is narrow, and that the state courts have been willing

to find claims to be collateral and to allow fraud claims to proceed.  In Everett v. Gilliland, 47 N.M.

269, 141 P.2d 326 (1943), the Supreme Court of New Mexico found that, because the seller failed

to disclose material information, which induced the buyer to enter into the contract, the contract did

not merge into the deed.  See id. at  274, 141 P.2d at 331. In that case, the seller knew that at the

time the buyer purchased the lands from him that there was interest due on the loan which was in

excess of the amount agreed to be paid by the buyer.  See id. at  272, 141 P.2d at 329.  The seller did

not disclose this information to the buyer, and the buyer did not discover the interest due until he

sought to procure a new loan on the land purchased from the buyer. See id. at  272, 141 P.2d at 329.

The Supreme Court stated: "Silence or no disclosure where there is a duty to speak will alone, and

unaccompanied by any element of active fraud be sufficient to ground an action for deceit." Id. at

274, 141 P.2d at 331 (internal quotation marks omitted).  While the seller argued that the acceptance

of the deed by the buyer waived the provisions of the contract via merger, the Supreme Court stated

that the key question was one of fraud and deceit.  Id. at 275, 141 P.2d at 332.  "The false

representation and the contract were distinct and separable.  The former was the inducement for the

latter, and did not merge in the contract or deed." Id. at 275, 141 P.2d at 332. "It is elementary that

where a contract or transaction was induced by false representations, the representations and the

contract are distinct and separable -- that is, the representations are usually not regarded as merged

in the contract or deed."   Id. at 275, 141 P.2d at 332.  The Supreme Court also noted that one of the

leading cases cited on this issue is Darlington v. J.L. Gates Land Co., 142 Wis. 198, 125 N.W. 456

(1910), in which the court stated:

> "It would seem to be sound in principle to hold that the doctrine of merger should not
> apply in a case involving actual fraud.  It is here alleged that the agent of the
> defendant not only represented that he had good title to the lands, but he specifically
> stated that the timber thereon would become the property of the plaintiffs if they
> purchased, and that the defendant owned it and had a good right to sell it.  It is
> further alleged that such agent knew the representations to be false and fraudulent
> when he made them.  Actual fraud is therefore shown by the complaint and admitted
> by the demurrer.  A tort was committed, assuming the averments made to be true.
> The rule of damages, as well as the remedy for the enforcement of the right may be
> different in a tort action from one on contract."

Everett v. Gilliland, 47 N.M. at 275, 141 P.2d at 332 (quoting Darlington v. J.L. Gates Land Co.,

142 Wis. at 205-206, 125 N.W. at 459).  Ultimately, the Supreme Court stated: "We think it is a

salutary rule to hold that, where as here actual fraud is alleged, the fraudulent oral representation as

to title is not merged in the covenant of warranty contained in the deed subsequently given." 47

N.M. at 275, 141 P.2d at 332.

In Maxey v. Quintana, 84 N.M. 38, 499 P.2d 356 (1972), the Supreme Court of New Mexico

held that a covenant, into which the parties entered before they entered into the deed, which

represented that the mortgage was a VA mortgage as opposed to an FHA mortgage, as stated in the

deed, did not cause the prior representation to merge into the deed.  See id. at 42-43, 499 P.2d at

361.  The Supreme Court noted that the record raised factual issues as to representations to the buyer

concerning a VA mortgage, and a representation to the buyer that the reference in the closing

statement to FHA insurance was erroneous.  See id. at 43, 499 P.2d at 361.  "The false representation and the contract were distinct and separable.  The former was the inducement for the later, and did not merger the contract or the deed." Id. at 43, 499 P.2d at 361 (internal quotation marks omitted).

In Ute Park Summer Homes Association v. Maxwell Land Grant Co., 77 N.M. 730, 427 P.2d 249 (1967), the Supreme Court of New Mexico found that, where a plat was used in making sales of lots and the plat designated an area as "golf course," that representation which was not in the deed was not merged in the deed, but rather was a collateral matter.  77 N.M. at 734-35, 427 P.2d at 252-53.  The Supreme Court found that the rule, that a contract to convey is merged in the deed upon its delivery and acceptance as performance of the contract to convey, does not apply in such a situation. See id. at 737-38, 427 P.2d at 254-55.   The Supreme Court explained: "The deeds given by defendant were not given as performance of the implied, if not express, agreement arising from the use of the plat and the representations concerning the use to be made of the 'golf course' area." Id. at 737-38, 427 P.2d at 255.  The Supreme Court determined: " The right in plaintiffs, as a result of this conduct on the part of defendant, is collateral to and in no way contradicts or varies the covenants, reservations and restrictions contained in the warranty deeds, or the conveyance thereby of the fee simple title in the lots." Id. at 738, 427 P.2d at 255.

In Chavez v. Gomez, 77 N.M. 341, 423 P.2d 31 (1967), the Supreme Court of New Mexico held that the obligation to furnish an abstract or title insurance at the time of delivery of the deed to show good and merchantable title does not relate to the "title, possession, quantity, or emblements of the land," and thus was collateral.  Id. at 344-45, 423 P.2d at 33.  Good and merchantable title means a marketable title of record.  See id. at 345, 423 P.2d at 34. The Supreme Court has defined "marketable title":

> A "marketable title" is a title not subject to such reasonable doubt as would create a just apprehension of its validity in the mind of a reasonable, prudent, and intelligent person; one that a person of reasonable prudence and intelligence, guided by competent legal advice, would be willing to take and pay the fair value of the land for.

Campbell v. Doherty, 53 N.M. 280, 286, 206 P.2d 1145, 1148 (1949).  In Chavez v. Gomez, the Supreme Court explained that, generally, provisions as to title, possession, quantity, or emblements of the land are presumed to be merged in a subsequently delivered and accepted deed.  See Chavez v. Gomez, 77 N.M. at 344, 423 P.2d at 33.   Although the contract and the deed vary, the presumption of merger generally applies, because such provisions inhere in the very subject matter of the deed.  See id. at 344, 423 P.2d at 33. The Supreme Court held that, because furnishing the buyer with an abstract does not relate to the title, possession, quantity, or emblements of the land and was an obligation to be performed in addition to the delivery of the deed at the time the deed was delivered, the provision for furnishing an abstract was collateral to and independent of the deed. See id. at 344-45, 423 P.2d at 33.  The Supreme Court noted that, in a real estate transfer, the giving or withholding of an abstract does not affect the validity or invalidity of the title to the premises. See id. at 344, 423 P.2d at 33. Because the contract provision was not performed by delivery and acceptance of the deed, the question to be determined "is whether the parties have intentionally surrendered or waived such stipulation.  If such intention appears in the deed, it is decisive; if not, then resort may be had to other evidence."  Id. at  345, 423 P.2d at 33.  "Waiver is the intentional abandonment or relinquishment of a known right." Id. at  345, 423 P.2d at 33.  "An intention to waive a right is ordinarily a question of fact."  Id. at  345, 423 P.2d at 33.  Although the evidence was conflicting, the Supreme Court found that the evidence supported a finding that the Plaintiff had not waived her right. Id. at  345, 423 P.2d at 34.

In <u>Bloom v. Hendricks</u>, 111 N.M. 250, 804 P.2d 1069 (1991), the Supreme Court of New Mexico addressed whether a grantee, based upon a warranty covenant, can recover the costs of defending his title.  See <u>id.</u> at 255, 804 P.2d at 1074. In <u>Bloom v. Hendricks</u>, the grantees of a tract of land sued the immediate grantors for breach of warranty covenants to appear and defend fee simple title against all lawful claims and demands made against the land.  See <u>id.</u> at 251, 804 P.2d at 1070.  At the time the grantees purchased the land, the grantees were concerned with the neighbors' use of a portion of their land.  See <u>id.</u> at 252, 804 P.2d at 1071.  The immediate and remote grantors stated that the neighbors' use was permissive and would cease upon request.  See <u>id.</u> at 252, 804 P.2d at 1071.  Later, when the grantees requested that the neighbors cease their use of the land, the neighbors asserted a fee title in the tract and presented an affidavit signed by the remote grantor stating that they could use the property.  See <u>id.</u> at 252, 804 P.2d at 1071.  The grantee then filed suit against both the remote and the immediate grantors for the cost of defending against the neighbors' adverse title claim.  See <u>id.</u> at 253, 804 P.2d at 1072.  The Supreme Court noted that the majority of courts that had addressed the question whether a grantee, based upon a warranty covenant, can recover the costs of defending its title, had determined that the grantee may recover its costs of defense, including reasonable attorney fees. See <u>id.</u> at 253, 804 P.2d at 1072. The Supreme Court noted that recovery of costs usually is not allowed, however, when a defense by the grantee is successful, because the grantor's promise to defend against lawful claims is interpreted as a promise to defend only against claims that establish paramount title.  See <u>id.</u> at 253, 804 P.2d at 1072.  "Consequently, where the grantee has successfully defeated the adverse claim and no paramount title has been established, the grantor cannot be held to have breached either the covenant of title or his promise to defend." <u>Id.</u> at 255, 804 P.2d at 1074.  The Supreme Court noted, however,

-22-

that courts have made exceptions to this rule when the grantor bears some responsibility for the litigation between the grantee and the third party.  See id. at 255, 804 P.2d at 1074.  For example, recovery of the costs of a successful defense has been allowed where the litigation was caused by the grantor's negligence or when the wrongful act of the grantor thrusts the grantee into litigation with a third person.  See id. at 255, 804 P.2d at 1074 (citing McDonald v. Delhi Savings Bank, 440 N.W.2d 839, 842 (Iowa, 1989) and First Fiduciary Corp. v. Blanco, 276 N.W.2d 30, 34 (Minn. 1979)).

The Supreme Court of New Mexico in Bloom v. Hendricks held that a grantor should have limited liability under statutory warranty covenants for the costs of a grantee's defense of an adverse claim.  See 111 N.M. at 255, 804 P.2d at 1074. The Supreme Court held that two factors should determine the assumption of risk by the grantor:

> [(i)] whether the grantor bears some responsibility for the substance of an adverse claim, or had actual or constructive knowledge of a potential adverse claim at the time he warranted his title and agreed to defend it, and [(ii)] whether the grantee has made demand of the grantor to defend the title.

Id. at 256, 804 P.2d at 1074.

> Where demand to defend has been made of a grantor who bears responsibility or had knowledge, the grantor should pay for the costs of the defense, regardless of whether defense of the title is successful, because the grantor has substantiated the adverse claim from his warranty covenants.  However, when no demand is made of a grantor with responsibility or knowledge, the grantor should pay only if defense of the title is successful.

Id. at 256,  804 P.2d at 1075.  The Supreme Court ultimately held the grantees were not barred from recovery of attorney fees from the remote grantors.  See id. at 256, 804 P.2d at 1075.  The Supreme Court held that, because the remote grantors had actual knowledge of the neighbors' use of the land and because the immediate grantors did not have any responsibility or knowledge of such use, the

remote grantors were responsible for the grantee's cost of defense.  See id. at 256, 804 P.2d at 1075.

## NEW MEXICO LAW REGARDING COLLATERAL ESTOPPEL

"[C]ollateral estoppel, also called issue preclusion, prevents a party from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit.'" Ullrich v. Blanchard, 2007-NMCA-145, ¶ 19, 171 P.3d 774, 778 (quoting Deflon v. Sawyers, 2006-NMSC-025, ¶ 13, 137 P.3d 577; Adams v. United Steelworkers of Am., 97 N.M. 369, 373, 640 P.2d 475, 479 (1982)). For collateral estoppel to apply, four elements must be met: "[(i)] the parties in the current action were the same or in privity with the parties in the prior action, [(ii)] the subject matter of the two actions is different, [(iii)] the ultimate fact or issue was actually litigated, and [(iv)] the issue was necessarily determined." Ullrich v. Blanchard, 2007-NMCA-145, ¶ 19, 171 P.3d at 778 (quoting City of Sunland Park v. Macias, 2003-NMCA-098, ¶ 10, 75 P.3d at 820).  Whether the doctrine of collateral estoppel should be applied is within the trial court's discretion, and the exercise of discretion is reviewed for an abuse of discretion on appeal.  See Shovelin v. Cent. N.M. Elec. Coop., 115 N.M. 293, 299, 850 P.2d 996, 1002 (1993). Even when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine.  See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor, 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct.App.1993). Collateral estoppel should be applied only where the judge determines that its application would not be fundamentally unfair.  See Reeves v. Wimberly, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct.App.1988).

## NEW MEXICO LAW REGARDING COLLATERAL ATTACK ON JUDGMENTS

"A collateral attack is an attempt to avoid, defeat, or evade [a judgment], or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking

-24-

the judgment." Lewis v. City of Santa Fe, 2005-NMCA-032, ¶ 10, 108 P.3d 558, 561 (internal

quotations omitted).

> A collateral attack is an attempt to impeach the judgment by matters dehors the record, in an action other than that in which it was rendered. . . . Under this definition, [Plaintiff's] attack was collateral because it was made in a different action and a different court. It has long been the general rule that a judgment is not subject to collateral attack where the court had jurisdiction of the subject matter and of the parties. . . . [It] is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies in any collateral action or proceeding, except . . . for fraud in its procurement.

Sanders v. Estate of Sanders, 1996-NMCA-102, ¶ 23, 927 P.2d 23, 29 (internal citations and

quotations omitted). Generally, where there is no appeal from a judgment, it is not subject to

collateral attack. See State ex rel. Sofeico v. Heffernan, 41 N.M. 219, 234, 67 P.2d 240, 249 (1936)

(stating that a judgment that is not appealed becomes "res judicata as to any and all future litigation

between the same parties" involving the question resolved).

## LAW REGARDING LIS PENDENS

New Mexico statute § 38-1-14 provides, in relevant part, the following:

> In all actions in the district court of this state or in the United States district court for the district of New Mexico affecting the title to real estate in this state, the plaintiff, at the time of filing his petition or complaint, or at any time thereafter before judgment or decree, may record with the county clerk of each county in which the property may be situate[d] a notice of the pendency of the suit containing the names of the parties thereto, the object of the action and the description of the property so affected and concerned, and, if the action is to foreclose a mortgage, the notice shall contain, in addition, the date of the mortgage, the parties thereto and the time and place of recording, and must be recorded five days before judgment, and the pendency of such action shall be only from the time of recording the notice, and shall be constructive notice to a purchaser or encumbrancer of the property concerned; and any person whose conveyance is subsequently recorded shall be considered a subsequent purchaser or encumbrancer and shall be bound by all the proceedings taken after the recording of the notice to the same extent as if he were made a party to the said action.

NMSA 1978 § 38-1-14. "The purpose of recording a notice of lis pendens on a piece of real property

is to provide 'constructive notice to subsequent purchasers and encumbrancers of litigation affecting the title to [the] real property.'" United States v. Jarvis, 499 F.3d 1196, 1202-1203 (10th Cir. 2007)(quoting Title Guar. and Ins. Co. v. Campbell, 106 N.M. 272, 742 P.2d 8, 13 (Ct. App.1987)). In New Mexico, a lis pendens notice is essentially "a republication of the pleadings filed in the pending judicial proceedings." Title Guar. & Ins. Co. v. Campbell, 742 P.2d at 13. "Under the New Mexico lis pendens statute, a notice of lis pendens may only be recorded by plaintiffs in 'actions . . . affecting the title to real estate.'" United States v. Jarvis, 499 F.3d at 1203 (quoting N.M.S.A. 1978 § 38-1-14).  See Superior Constr., Inc. v. Linnerooth, 103 N.M. 716, 712 P.2d 1378, 1381 (1986) ("[A] notice of lis pendens may be properly filed only if plaintiff pleads a cause of action which involves or affects the title to, or any interest in or a lien upon, specifically described real property.")(internal quotation omitted).

"To be eligible to record a lis pendens notice on a piece of real property, however, the party recording the notice must assert a present claim to the property's title or have some other present interest in the subject property." United States v. Jarvis, 499 F.3d at 1203 (citing 14 R. Powell, Powell on Real Property § 82A.01[2], at 6 (M. Wolf ed. 2000)). "The notice is intended to preserve the property rights in existence at the time the litigation commences, but does not create new or additional property rights." United States v. Jarvis, 499 F.3d at 1203.  In New Mexico, a lis pendens cannot be filed in "anticipation of a money judgment." Hill v. Department of Air Force, 884 F.2d 1321, 1322 (10th Cir. 1989).  "A lis pendens also generally cannot be used as 'a substitute for a prejudgment attachment.'" United States v. Jarvis, 499 F.3d at 1203 (quoting The Cadle Co. II, Inc. v. Superior Constr. and Contracting, Inc., 362 B.R. 687, 688 (Bankr.E.D.Va. 2006)). Nor can a lis pendens be used  to create a constructive trust on property to satisfy a potential monetary judgment.

See United States v. Jarvis, 499 F.3d at 1203 (citing Flores v. Haberman, 915 S.W.2d 477, 478 (Tex. 1995)).

## NEW MEXICO LAW REGARDING BREACH OF
## IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." WXI/Z Sw. Malls v. Mueller, 2005-NMCA-046, ¶ 25, 110 P.3d 1080, 1087.  "[T]he implied covenant of good faith and fair dealing requires only that neither party injure the rights of the other party to receive the benefit of their agreement." Smoot v. Physicians Life Ins. Co., 2004 -NMCA- 027 ¶ 13, 87 P.3d 545, 548.  A cause of action for breach of an implied covenant of good faith and fair dealing cannot prevail without showing that "a party seeks to prevent the contract's performance or to withhold its benefits from the other party." Azar v. Prudential Ins. Co. of Am., 2003-NMCA-062, ¶ 51, 68 P.3d 909, 925; Brock v. Presbyterian Healthcare Servs., Inc. 220 Fed.Appx. 842, 846 (10th Cir. 2007). "[T]he implied covenant of good faith and fair dealing depends upon the existence of an underlying contractual relationship." Azar v. Prudential Ins. Co. of Am., 2003-NMCA-062, ¶ 53, 68 P.3d at 926.  Moreover, "[t]he breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party."  WXI/Z Sw. Malls v. Mueller, 2005-NMCA-046, ¶ 25, 110 P.3d at 1087.

> The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement.  Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract.

Planning and Design Solutions v. City of Santa Fe, 118 N.M. 707, 714, 885 P.2d 628 635 (1994).

-27-

## NEW MEXICO LAW REGARDING PRIMA-FACIE TORT

"Prima facie tort provides a remedy for persons harmed by intentional and malicious acts that are <u>otherwise</u> <u>lawful</u>, but fall outside of the rigid traditional intentional tort categories." <u>Portales Nat'l Bank v. Ribble</u>, 2003-NMCA-093, ¶ 4, 75 P.3d 838, 840 (emphasis added). <u>See</u> <u>Healthsource v. X-Ray Associates of N.M.</u>, 2005-NMCA-097, ¶ 34, 116 P.3d 861, 871 ("To state a claim for prima facie tort, a plaintiff must allege (1) an intentional and lawful act, (2) with the intent to injure the plaintiff, (3) injury to the plaintiff as a result of an intentional act, and (4) the absence of sufficient justification for the injurious act."); <u>Grover v. Stechel</u>, 2002-NMCA-049, ¶ 19, 45 P.3d 80, 85 ("Prima facie tort exists only when the defendant's acts meet the following elements: [i] an intentional, <u>lawful act</u> . . . .")(emphasis added).  New Mexico Uniform Jury Instruction 13-1631, "Definition and Elements of Prima Facie Tort" provides:

> Plaintiff claims damages on the basis that defendant intended to cause plaintiff harm and succeeded in doing so. In order to recover damages from defendant on this claim, plaintiff must show:
>
> 1. That defendant intentionally [did some act] [failed to act];
>
> 2. That defendant intended that the [act] [failure to act] would cause harm to the plaintiff or that defendant knew with certainty that the [act] [failure to act] would cause harm to the plaintiff;
>
> 3. That the defendant's [act] [failure to act] was a cause of plaintiff's harm; and
>
> 4. That defendant's conduct was not justifiable under all the circumstances.

N.M.R.A., Civ. UJI 13-1631.  The Supreme Court of New Mexico first recognized prima-facie tort as a cause of action in <u>Schmitz v. Smentowski</u>, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990).  The Supreme Court held that the tortious act "must be committed with the intent to injure the plaintiff, or, in other words, without justification, but it need not be shown that the act was solely intended

to injure plaintiff." Schmitz v. Smentowski, 109 N.M. at 395, 785 P.2d at 736.

Once intent to injure has been established, then the trial court must balance the defendant's act or acts against the justification for the act or acts, and the severity of the injury. See Portales Nat'l Bank v. Ribble, 2003-NMCA-093, ¶ 4, 75 P.3d 838, 840. The trial court "weigh[s]: [(i)] the injury; [(ii)] the culpable character of the conduct; and [(iii)] whether the conduct is unjustifiable under the circumstances." Hagebak v. Stone, 2003-NMCA-007, ¶ 25, 61 P.3d 201, 208 (citing Schmitz v. Smentowski, 109 N.M. at 394, 785 P.2d at 734). "Prima facie tort was not intended to provide a remedy for every intentionally caused harm." Lexington Ins. Co. v. Rummel, 1997-NMSC-043, ¶ 11, 945 P.2d 992, 995. "Although prima facie tort is not to become a catch-all alternative for every action that cannot stand on its own legs . . . [the New Mexico Court of Appeals] has, under certain circumstances, been willing to recognize a prima facie tort claim, even though the conduct in question bore a resemblance to another cause of action." Hagebak v. Stone, 2003-NMCA-007, ¶ 27, 61 P.3d at 209 (internal quotations omitted). "[T]here is simply no need to resort to prima facie tort" when a plaintiff has "existing causes of action provid[ing] reasonable avenues to a remedy for the asserted wrongful conduct." Bogle v. Summit Investment Co., L.L.C., 2005-NMCA-024, ¶ 24, 107 P.3d 520, 529.

"Plaintiffs bear a heavy burden to establish intent to injure." Lexington Ins. Co. v. Rummel, 1997-NMSC-043, ¶ 12, 945 P.2d at 995. "The plaintiff must produce more than a showing that the injury is a natural and foreseeable consequence of the act." Id., ¶ 13, 945 P.2d at 995. "[M]ere insensitivity" towards the injured plaintiff is insufficient to demonstrate intent to injure. Lexington Ins. Co. v. Rummel, 1997-NMSC-043, at ¶ 14, 945 P.2d at 995. See id.,¶¶ 15, 16, 945 P.2d at 996 (holding that the plaintiff failed to demonstrate a material question whether the defendant intended

to injure it, when the plaintiff's factual allegations indicated that the defendant "was motivated by the legitimate business purpose of reducing its own liability and the liability of its insured in the face of an enormous judgment, rather than by an intent to injure [the plaintiff]."); Hagebak v. Stone, 2003-NMCA-007, ¶ 28-29, 61 P.3d at 209 (holding it was error to grant summary judgment "merely on the basis of the same alleged conduct" between the plaintiff's defamation claim and prima-facie tort claim because the plaintiff was "entitled to a reasonable opportunity to marshall sufficient evidence to prove his case.")(internal quotations omitted); Silverman v. Progressive Broadcasting, Inc., 1998-NMCA-107, ¶ 39, 964 P.2d 61, 72 (holding that the plaintiff failed to present a material fact that the defendants acted with malicious intent when the defendants protested the size of its logo on the billboards, because it appeared that the defendants were motivated by a legitimate business interest when they objected).

Summary judgment may be inappropriate on a prima-facie tort claim if there is a sufficient showing by the plaintiff that the defendant engaged in a legal act with intent to harm him or her, and the defendant's conduct did not otherwise fit into a tort claim.  In Portales Nat'l Bank v. Ribble, 2003-NMCA-093, 75 P.3d 838, the New Mexico Court of Appeals held that summary judgment was inappropriate where the plaintiffs argued that their bank, through its president, engaged in a course of inappropriate conduct that resulted in indebtedness so that its president could eventually obtain control of the plaintiff's ranch: "[P]rima facie tort is an appropriate claim to bring . . . because the claim alleges intent to harm [the plaintiffs] through otherwise legal behavior, and the claim does not fit within an accepted category of tort."  Id., ¶ 12, 75 P.3d at 840, 842.  In Tarin's, Inc. v. Tinley, 2000-NMCA-048, 3 P.3d 680, the New Mexico Court of Appeals held that an issue of material fact existed whether defendant committed a prima-facie tort where a building owner alleged that its

-30-

former landlord, general contractor, and subcontractor improperly connected the owner's building to the former landlord's gas pipes and electrical lines when the owner's business moved to its new location, and that the owner suffered losses from the interruption of its business when a former landlord revoked the owner's alleged license to make the utility connections.  See id., ¶ 24, 3 P.3d 680-81, 689.

## LAW REGARDING EXPRESS AND IMPLIED WARRANTIES

The law of warranty for sales of goods is codified at NMSA 1978, §§ 55-2-312 to -318; however, the special-warranty provisions contained in the Uniform Commercial Code are not applicable where realty is involved, and in such cases, common-law principles of warranty is applied. See Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. 436, 441-42, 981 P.2d 1190, 1195 (1995)(citing Dittman v. Nagel, 43 Wis.2d 155, 168 N.W.2d 190, 193 (1969)).

"A 'warranty' is an assurance by one party to a contract of the existence of a fact upon which the other party may rely." Steadman v. Turner, 84 N.M. 738, 742, 507 P.2d 799, 803 (Ct.App. 1973) (quoting 17A C.J.S. Contracts § 342 (1963)). "What is being promised 'is indemnification against loss, in case the facts turn out not to be as represented.'" Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. at 442, 981 P.2d at 1196 (quoting 1 A. Corbin, Corbin on Contracts § 14 (1963)).

"A warranty may be either express or implied by law." Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. at 442, 981 P.2d at 1196 (citing 17A C.J.S. Contracts § 342, at 325-38). "Once a court determines a warranty exists, the seller's liability remains the same whether the breach pertains to an express or implied warranty." Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. at 442, 981 P.2d at 1196 (citing R. Nordstrom, Handbook on the Law of Sales § 74 (1970)).

The Supreme Court of the United States has defined "express warranty" as follows:

> [A]n affirmation of the quality or condition of the thing sold, (not uttered as matter of opinion or belief,) made by the seller at the time of sale, for the purpose of assuring the buyer of the truth of the facts affirmed, and inducing him to make the purchase, if so received and relied on by the purchaser, is an express warranty.

Shippen v. Bowen, 122 U.S. 575, 581 (1887)(internal quotation marks omitted). "An action for breach of an express warranty of the quality or condition of real property sounds in contract, insofar it arises out of the agreement of the parties and the plaintiff sues to recover what he contracted to receive." Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. at 441, 981 P.2d at 1195 (citing Nat'l Ben Franklin Ins. Co. v. Bakhaus Contractors, Inc., 124 Mich.App. 510, 335 N.W.2d 70, 72 (1983)(stating that breach-of-warranty claims sound in contract); Huebner v. Caldwell & Cook, Inc., 139 Misc.2d 288, 526 N.Y.S.2d 356, 358 (Sup.Ct.1988)(same); Barclay v. Johnson, 686 S.W.2d 334, 337 (Tex.Ct.App.1985) (same). But see Fruehauf Trailer Div. v. Thornton, 174 Ind.App. 1, 366 N.E.2d 21, 27 (1977) (stating that allegations of complaint determine whether warranty action is brought in contract or tort); Ware v. Christenberry, 7 Kan.App.2d 1, 637 P.2d 452, 456-57 (1981) (stating that facts proven during trial determine whether warranty action is brought in contract or tort)).

"The plaintiff's burden of proof in an action for breach of warranty thus is identical to the burden of proof in any action for breach of contract." Camino Real Mobile Home Park Partnership v. Wolfe, 119 N.M. at 442, 981 P.2d at 1196.  "The party relying on the breach of warranty must prove the existence of a warranty, the breach thereof, causation, and damages." 119 N.M. at 442, 981 P.2d at 1196.

## ANALYSIS

The Court will treat this motion as a 12(b)(6) motion.  Furthermore, the Court will grant the

Defendants' motion as to the 2003 claims regarding the promise of clear and marketable title. The Court believes that Mountain Highlands has otherwise stated claims upon which relief can be granted.

## I.     THE COURT WILL NOT CONVERT THE 12(b)(6) MOTION INTO A MOTION FOR SUMMARY JUDGMENT.

The Court will not convert the 12(b)(6) motion into a motion for summary judgment. A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). Facts subject to judicial notice, however, may be considered without converting a motion to dismiss into a motion for summary judgment. See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 (10th Cir. 2004)(citing 27A Fed. Proc., L.Ed. § 62:520 (2003)).

Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d at 568 (10th Cir. 2000). A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute authenticity. See Jacobsen v. Deseret Book Co., 287 F.3d at 941-42. If, however, a document is not incorporated by reference or attached to the complaint, but is referred to in the complaint and is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d at 1384. See 5A C. Wright & A. Miller, Federal Practice & Procedure § 1327 (3d ed. 2004) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the

pleading.").

Because the opinions from the Bankruptcy Court and the Court of Appeals of New Mexico, which the Defendants are asking the Court to consider, are a matter of public record, the Court can properly take judicial notice of those opinions without converting the motion into a motion for summary judgment.  See Van Woudenberg v. Gibson, 211 F.3d at 568.  Furthermore, although Mountain Highlands argued that, if the Court were to take these opinions into consideration it would have to convert the motion into a motion for summary judgment, Mountain Highlands stated at the April 24, 2008, hearing that it had no case law to support its argument.  See Tr. at 20:25-9 (Court & Wesner)("I don't have authority on that specific point with regard to the decisions of other courts, Your Honor.").  Thus, the Court will consider the opinions of the other courts, but will not convert the motion into a motion for summary judgment.  That the Court will take judicial notice of these judicial opinions does not, however, mean that it takes judicial notice of each factual statement made therein.  The Court is taking judicial notice of the opinion, not of the facts therein.  The facts that the Court assumes to be true are those stated in Mountain Highlands' Complaint.

## II.    SOME OF THE ALLEGATIONS IN MOUNTAIN HIGHLANDS' 2003 CLAIMS STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

 Mountain Highlands asserts that it was not provided with information that gave it reason to believe that there were factors related to the foreclosure with Ski Rio Partners that might interfere with its commercial expectations for the Ski Rio property and other assets it acquired from Magnolia Mountain.  Mountain Highlands' Complaint further alleges that Magnolia Mountain represented to Mountain Highlands that, after closing, Mountain Highlands would be able to move quickly to develop the Ski Rio property and that the title to the Ski Rio property would allow it to do so. It is undisputed that Ski Rio Partners' claims to the Ski Rio property were invalid.  What is disputed,

however, is whether Magnolia Mountain made a misrepresentation to Mountain Highlands about the marketability of the title, and the availability of the Ski Rio property for immediate and sustained commercial development and operation.

The Court believes that many of the facts alleged regarding the 2003 claims state claims upon which relief can be granted.   While the court believes the representations about the marketability and clarity of the title are merged, the Court concludes that the representations of the viability of commercial development and operation are collateral.  Accordingly, the Court will grant in part and deny in part Magnolia Mountain's Motion to Dismiss regarding the 2003 claims.

## A.   SOME OF THE ALLEGATIONS IN MOUNTAIN HIGHLANDS' CLAIM FOR FRAUD STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The elements of fraud include: (i) a misrepresentation of fact, (ii) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (iii) intent to deceive and to induce reliance on the misrepresentation, and (iv) detrimental reliance on the misrepresentation. Williams v. Stewart, 2005-NMCA-061, ¶ 34, 112 P.3d 281, 290. Mountain Highlands alleges that Magnolia Mountain misrepresented to it that the property, which they were conveying to Mountain Highlands, was clear and marketable, that Mountain Highlands would be immediately able to commence the business development it wished for the Ski Rio Property, and that the Ski Rio property was available for immediate realization of Mountain Highlands' economic goals for the property.  See Complaint ¶¶ 23, 62, 77, 88, at 5, 13, 16, 18. Mountain Highlands alleges that Magnolia Mountain knew or should have known of the substantial risk of a future lawsuit, and that before the sale of the Ski Rio properties to Mountain Highlands, Magnolia Mountain discussed, with its attorneys, the likelihood of legal action by Ski Rio Partners,

the foreclosed owner.  See id. ¶¶ 60, 61, at 13. Furthermore, Mountain Highlands alleges that Magnolia Mountain intentionally concealed the history of the foreclosure process from Mountain Highlands, and intended it to rely on Magnolia Mountains' misrepresentation that Magnolia Mountain was conveying clear and marketable title to the Ski Rio property and that the property was available for immediate realization of Mountain Highlands' economic goals.  See id. ¶¶ 63, 65, 66 at 14.   Finally, Mountain Highlands alleges that it reasonably relied on the intentional misrepresentations, and because of such reliance, was damaged.  See id. ¶ 68, at 14.

Magnolia Mountain contends that Mountain Highlands' claim for fraud is barred because Magnolia Mountain defended title to the property successfully.   See Motion to Dismiss at 3-4. Additionally, Magnolia Mountain argues that all issues regarding title were merged into the warranty deed when it was granted and that Magnolia Mountain's obligation with respect to the warranty covenants, at most, was to defend title to the property. See id. at 3-5.  Finally, Magnolia Mountain argues that Mountain Highlands' claim should be barred by collateral estoppel and should be barred because Mountain Highlands is making an improper collateral attack on the judgment by the New Mexico Court of Appeals.  See Motion to Dismiss at 5.

The Court finds that Mountain Highlands has properly plead the elements of fraud for the representations that there was nothing which might interfere with its commercial expectations for the Ski Rio Property and other assets it acquired from Magnolia Mountain, but not for representations about clear and marketable title.  Other than that one representation directly about clear and marketable title, Mountain Highlands' claims can proceed.

It is undisputed that Magnolia Mountain successfully defended title to the Ski Rio property in the prior suit before the New Mexico Court of Appeals.  Moreover, the Court does not understand

Mountain Highlands' Complaint to be disputing that Magnolia Mountain properly defended its title, or that Ski Rio Partners had lawful claims to the property. Rather, Mountain Highlands is arguing that separate misrepresentations were made about the property, before the delivery of the warranty deed, on which Mountain Highlands detrimentally relied, and which induced Mountain Highlands to enter into a contract with Magnolia Mountain.

Under the doctrine of merger, all issues of title are normally merged into the warranty deed when it is granted. There are, however, exceptions to the doctrine of merger for situations involving fraud or mistake or collateral matters. In viewing the facts most favorable to Mountain Highlands, it appears that the situation before the Court involved collateral matters and fraud.

Specifically, the Court believes that Magnolia Mountain's representations that Mountain Highlands would be immediately able to commence the business development it wished for the Ski Rio property and that the Ski Rio property was available for immediate realization of Mountain Highlands' economic goals were collateral representations and thus were not merged into the deed. New Mexico courts have construed the merger doctrine narrowly and have construed the collateral exception broadly. In Chavez v. Gomez, the Supreme Court of New Mexico held that the obligation to furnish an abstract or title insurance at the time of delivery of the deed to show good and merchantable title did not relate to the "title, possession, quantity, or emblements of the land," and thus was collateral and not merged into the deed. See 77 N.M. at 344-45, 423 P.2d at 33. The Supreme Court of New Mexico stated that good and merchantable title means a marketable title of record. See id. at 345, 423 P.2d at 34. The Supreme Court of New Mexico also noted that the validity or invalidity of the title to the premises was not affected by the giving or withholding of an abstract, thus the failure to give the abstract was collateral to the deed. See id. at 344, 423 P.2d at

33. Similarly, in this situation, the Court is dealing with representations made about the commercial viability of the property immediately after Mountain Highlands took possession of the property. The Court does not believe that the representations about the economic promise of the Ski Rio property "contradicts or varies the covenants, reservations, and restrictions contained in the warranty deed," and thus were collateral and not merged into the deed. Ute Park Summer Homes Assoc. v. Maxwell Land Grant Co., 77 N.M. at 738, 427 P.2d at 255. The Supreme Court of the United States has stated: "[W]hen the representations relate to some matter collateral to the title of the property, and the right of possession which follows its acquisition, such as the location, quantity, quality, and condition of the land, the privileges connected with it, or the rents and profits derived therefrom," the false representations are not merged into the deed. Andrus v. St. Louis Smelting and Refining Co., 130 U.S. at 647. The commercial viability of the Ski Rio Property deals with the quality of the land, is a privilege connected with the land, and allows for profits derived from the land, thus making it fit into the category of collateral matter.

Mountain Highlands' claims regarding economic viability of the Ski Rio Property are collateral, and thus not merged into the deed. The deed was thus allegedly induced by false representations. "It is elementary that where a contract or transaction was induced by false representations, and the representations and the contract are distinct and separable -- that is, the representations are usually not regarded as merged into the contract or deed." Everett v. Gilliland, 47 N.M. at 275, 141 P.2d at 332. The Supreme Court of New Mexico has held: "We think it is a salutary rule to hold that, where as here, actual fraud is alleged, the fraudulent oral representation as to title is not merged in the covenant of warranty contained in the deed subsequently given." Id. at 275, 141 P.2d at, 332. In this case, the Court finds the misrepresentations regarding the economic

viability of the land separate and distinct from the covenants warranted in the deed. These alleged misrepresentations are distinct and independent from the warranties in the deed.

What is not collateral merges, however, which are any claims Mountain Highlands is making that are (i) those that inhere in the very subject-matter of the deed; (ii) those carried into the deed and of the same effect; (iii) those of which the subject-matter conflicts with the same subject-matter in the deed. See Continental Life Ins. Co. v. Smith, 41 N.M. at 88-89, 64 P.2d at 381. The Court acknowledges that, in cases where such claims are alleged, "the deed alone must be looked to in determining the rights of the parties." Id. at 88-89, 64 P.2d at 381. Consistent with Andrus v. St Louis Smelting and Refining Co., "all previous representations as to the possession" are merged since such representations can be considered mere expressions of confidence in the company's title, and the right of possession which followed it. 130 U.S. at 646-47.

Thus, the Defendants' representations about the title are merged. The Defendants' representations that the title was clear and marketable relate to the meaning of the warranty deed. If the merger doctrine is to have any meaning, it should include these representations about the marketability and clarity of the title. Furthermore, as is evidenced by the history between these two parties, the warranties within the deed regarding rightful possession have withstood challenges regardless of the misrepresentations regarding the economic viability of the property. There was no fraud regarding the title, because there was no incorrect statement about the marketability or clarity of the title.

Finally, the Court does not believe that collateral estoppel bars Mountain Highlands' claim for fraud about economic viability of the land. For collateral estoppel to apply, the following elements must be met: "[(i)] the parties in the current action were the same or in privity with the

parties in the prior action, [(ii)] the subject matter of the two actions is different, [(iii)] the ultimate fact or issue was actually litigated, and [(iv)] the issue was necessarily determined." Ullrich v. Blanchard, 2007-NMCA-145, ¶ 19, 171 P.3d at 778.  The relevant ultimate issue before the Court of Appeals was whether the default judgment against Ski Rio Partners should be set aside and thus whether Ski Rio Partners had a claim to the title of the Ski Rio property.  See Magnolia Mountain Ltd. P'ship v. Ski Rio Partners, Ltd., 2006-NMCA-027, ¶ 45, 131 P.3d 675, 687.  The issue that Mountain Highlands is now raising, that Magnolia Mountain committed fraud by making misrepresentations about Mountain Highlands' ability to move quickly to develop the Ski Rio Property before the delivery of the warranty deed, is a separate issue which has not yet been litigated or actually determined.  With the 2003 claims regarding whether the title would allow it to move quickly to develop the Ski Rio Property, Mountain Highlands is not making a collateral attack on the decision which the New Mexico Court of Appeals made that Ski Rio Partners did not have a valid claim to the title of the Ski Rio property.  Rather, Mountain Highlands is attacking a misrepresentation made by Magnolia Mountain which has not yet been litigated.  Thus, the Court will not, at this time, dismiss Mountain Highlands' claim for fraud for representations about the availability of the Ski Rio Property for immediate and sustained commercial development and operation.[1]

---

[1] It may be that Mountain Highlands' claims for misrepresentation about a clear and marketable title are barred by collateral estoppel, as well as the merger doctrine.  Because the Court concludes that the merger doctrine covers the representations about marketability and clarity of title and that there was no fraud regarding the issue of clear title or marketability of title, the Court need not decide whether collateral estoppel also bars the claim.

**B.    SOME OF THE ALLEGATIONS IN MOUNTAIN HIGHLANDS' CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

"Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." WXI/Z Sw. Malls v. Mueller, 2005-NMCA-046, ¶ 25, 110 P.3d at 1087. A cause of action for breach of an implied covenant of good faith and fair dealing cannot prevail without showing that "a party seeks to prevent the contract's performance or to withhold its benefits from the other party." Azar v. Prudential Ins. Co. of Am., 2003-NMCA-062, ¶ 51, 68 P.3d at 925. See Brock v. Presbyterian Healthcare Servs., Inc. 220 Fed.Appx. at 846. "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." WXI/Z Sw. Malls v. Mueller, 2005-NMCA-046, ¶ 25, 110 P.3d at 1087.  "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement.  Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." Planning and Design Solutions v. City of Santa Fe, 118 N.M. at 714, 885 P.2d at 635.

Mountain Highlands alleges that it contracted with Magnolia Mountain for the express purpose of Magnolia Mountain selling, and Mountain Highlands buying, clear and marketable title to the Ski Rio property and the ability to immediately realize Mountain Highlands' economic goals for the property.  See Complaint ¶ 76, at 16.  Mountain Highlands states that Magnolia Mountain knew that it needed clear and marketable title to the Ski Rio property as well as the immediate ability to realize a return on its investment.  See id. ¶ 77, at 16.  Mountain Highlands further argues that Magnolia Mountain charged them an extra $500,000.00 for the increased value represented by

the allegedly clear and marketable title, and for the purported availability of the Ski Rio property for immediate realization of Mountain Highlands' economic goals. <u>See</u> <u>id.</u> According to Mountain Highlands, Magnolia Mountain knew, or should have known, that the title it was transferring to Mountain Highlands was not clear or marketable, and that Mountain Highland would be unable to sell, or commercially develop the property, or to enter into other immediate contractual arrangements involving the property. <u>See</u> <u>id.</u> ¶ 78, at 16. Mountain Highlands argues that Magnolia Mountain's intentional misrepresentation regarding the nature and quality of the title and property they transferred created an "insurmountable barrier to Plaintiff's realization of its expected economic advantage from its investment in the Ski Rio property" and thus deprived them of the benefit of its bargain with Magnolia Mountain. <u>Id.</u> ¶ 79, at 16.

Magnolia Mountain argues that Mountain Highlands' claim for breach of the covenant of good faith and fair dealing is barred, because Magnolia Mountain successfully defended title to the property. <u>See</u> Motion to Dismiss at 3-4. Additionally, Magnolia Mountain argues that all issues regarding title were merged into the warranty deed when it was granted and that Magnolia Mountain's obligation with respect to the warranty covenants, at most, was to defend title to the property. <u>See</u> <u>id.</u> at 3-5. Finally, Magnolia Mountain argues that Mountain Highland's claim should be barred by collateral estoppel and because Mountain Highlands is making an improper collateral attack on the judgment by the New Mexico Court of Appeals. <u>See</u> Motion to Dismiss at 5.

Magnolia Mountain and Mountain Highlands entered into a contract through the warranty deed. Magnolia Mountain fulfilled its duty under the warranty deed to defend the title of the property against Ski Rio Partners. Magnolia Mountain successfully defended the title of the property.

What is in question, however, is whether the allegedly fraudulent misrepresentations made before the delivery of the warranty deed constituted a contract separate from the warranty deed and thus whether Magnolia Mountain sought to prevent that separate contract's performance or to withhold its benefits from the other party.  In other words, before the delivery of the warranty deed, the parties agreed that, in addition to providing a clear and marketable title, the Defendants would deliver a property that would allow for immediate development and economic viability of the land. Because the merger doctrine is inapplicable to some of the present situation, because of the collateral issues involved and the fraudulent misrepresentations made, the misrepresentations constituted part of the pre-warranty deed contract.

According to Mountain Highlands, Magnolia Mountain represented, as part of that comprehensive pre-warranty deed contract, that the property would allow for immediate realization of Mountain Highlands' economic goals for the property.   To allege a breach of the covenant of good faith and fair dealing, Mountain Highlands must show bad faith or that Magnolia Mountain wrongfully and intentionally used the contract to the detriment of the other party. See WXI/Z Sw. Malls v. Mueller, 2005-NMCA-046, ¶ 25, 110 P.3d at 1087.  "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement.  Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." Planning and Design Solutions v. City of Santa Fe, 118 N.M. at 714, 885 P.2d at 635.

Mountain Highland alleges that Magnolia Mountain knew that Mountain Highlands needed the property to allow for immediate realization of economic goals, and knew that the status of the property it was transferring was such that Mountain Highlands would be unable to sell or

commercially develop Ski Rio property as they had planned.  Thus, Mountain Highlands alleges that Magnolia Mountain's misrepresentations injured Mountain Highlands' rights to receive the benefit of their agreement.  Furthermore, collateral estoppel does not bar Mountain Highlands' claim for breach of the covenant of good faith and fair dealing, because the issue of Magnolia Mountain's prior misrepresentations to Mountain Highlands was not actually litigated or necessarily determined in prior cases.  Rather, the case before the New Mexico Court of Appeals decided that Ski Rio Partners had no valid claim to the Ski Rio property.  Additionally, Mountain Highlands is not questioning the decision of the New Mexico Court of Appeals and thus is not making an improper collateral attack.  The Court will not, therefore, at this time, dismiss Mountain Highlands' claim for breach of the covenant of good faith and fair dealing with relation to the representations in the 2003 agreement that Mountain Highlands would be immediately able to commence the business development it wanted of Ski Rio property.  The Defendants did not, however, breach the covenant of good faith and fair dealing regarding their promise to deliver a clear and marketable title.  Mountain Highlands' case cannot proceed on such a claim.  The Defendants may, however, breach the covenant of good faith and fair dealing by entering into an agreement that it was providing a property that had no issues that would preclude immediate business development.

## C. SOME OF THE ALLEGATIONS IN MOUNTAIN HIGHLANDS' CLAIM FOR BREACH OF EXPRESS AND IMPLIED WARRANTIES STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

"The party relying on the breach of warranty must prove the existence of a warranty, the breach thereof, causation, and damages." Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. at 441, 981 P.2d at 1195.  Mountain Highlands alleges that Magnolia Mountain expressly warranted that the title to Ski Rio property was clear and marketable when transferred to them and

that they would be immediately able to commence business operations on the Ski Rio property to realize a return on its investments.  See Complaint ¶ 88, at 18.  Mountain Highlands further alleges that Magnolia Mountain charged them a substantial premium in the amount of $500,000.00 in exchange for their express warranty of clear and marketable title.  See id. ¶ 89, at 18.

Mountain Highlands states that Magnolia Mountain impliedly warranted that the title to the Ski Rio property was clear and marketable and free of all risks or issues other than the few remaining days during which Ski Rio Partners might file for bankruptcy protection.  See id. ¶ 90, at 18.  Mountain Highlands alleges that the Ski Rio property title was not clear and marketable at the time of transfer, and that Magnolia Mountain knew or should have known that the Ski Rio Partners would initiate legal proceedings likely to entangle Mountain Highlands thus preventing Mountain Highlands from immediately realizing its economic goals.  See Complaint ¶ 91, at 18. Thus, Mountain Highlands argues that the breach of such warranties made by Magnolia Mountain has damaged it.  See id. ¶ 92, at 18.

Magnolia Mountain argues that Mountain Highlands' claim for breach of express and implied warranties are barred, because Magnolia Mountain defended title to the property successfully.  See Motion to Dismiss at 3-4. Additionally, Magnolia Mountain argues that all issues regarding title were merged into the warranty deed when it was granted and that Magnolia Mountain's obligation with respect to the warranty covenants, at most, was to defend title to the property. See id. at 3-5.  Finally, Magnolia Mountain argues that Mountain Highlands' claim should be barred by collateral estoppel and because Mountain Highlands is making an improper collateral attack on the New Mexico Court of Appeals Judgment.  See Motion to Dismiss at 5.

During the hearing, Mountain Highlands pointed out that it was not stating a claim for

damages arising from a title defect, but rather from the concealment of title defect.  See Transcript of Hearing at 26:21-24 (taken April 24, 2008)("Tr.")(Wesner).[2]  Although Magnolia Mountain successfully defended the title to the property, Mountain Highlands alleges that express and implied warranties were made to them during the negotiations process, before the delivery of the warranty deed, that were breached.  Specifically, Mountain Highlands points to the express and implied warranties that were made through the half million dollar note which allegedly represented a payment for the marketability of the title and the commercial viability of the property as a separate item.  See Complaint ¶ 89, at 18; Tr. at 24:8-25:5 (Court & Wesner).

The Court sees the warranties about Mountain Highlands' ability to commence operations on the Ski Rio Property to realize a return on its investments made before the delivery of the warranty deed, which was later breached, as an issue that is not barred by the fact that Magnolia Mountain successfully defended title to the property.  Furthermore, because these warranties were collateral issues as well as allegedly fraudulent misrepresentations, they are not subject to the doctrine of merger and thus not lost in the warranty deed.  Additionally, the issue related to these warranties made to Magnolia Mountain before the delivery of the warranty deed has not been previously litigated and is not attacking the decision of prior judgments.  Thus, this claim is not collaterally estopped nor an improper collateral attack.  At this time, therefore, the Court will deny Magnolia Mountain's motion to dismiss Mountain Highland's Claim for breach of expressed and implied warranties that the title was free of all risks or issues that would preclude immediate development.  The Court will not, however allow warranty claims about providing a clear and

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

marketable title to proceed.

### D.   MOUNTAIN HIGHLANDS' CLAIM FOR PRIMA-FACIE TORT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The generally recognized elements of prima-facie tort are: (i) an intentional and lawful act; (ii) an intent to injure the plaintiff; (iii) injury to the plaintiff as a result of the act; and (iv) the absence of sufficient justification for the act. See Saylor v. Valles 133 N.M. 432, 439, 63 P.3d 1152, 1159 (Ct.App. 2002).   Mountain Highlands contends that Magnolia Mountain intentionally misrepresented the nature and quality of the title and of the property that it was transferring to Mountain Highlands, and knowingly transferred property that was not of the nature and quality it had represented to be transferring.   See Complaint ¶ 94, at 19.   Mountain Highlands alleges that Magnolia Mountain intentionally concealed material facts concerning the fact that it had "duped" the foreclosed owner, thus subjecting Mountain Highlands, without its knowledge, to substantial risks associated with Magnolia Mountains' undisclosed misconduct.   Id.   ¶ 95, at 19.   Mountain Highlands states that, because Magnolia Mountain intended for Mountain Highlands to rely on their misrepresentations and omissions and purchase the Ski Rio property, and knew or should have known that Mountain Highlands would be injured thereby, Magnolia Mountain necessarily intended to injure Mountain Highlands.   See id.   ¶ 96, at 19.   Mountain Highlands alleges that Magnolia Mountain recklessly, wantonly, and maliciously subjected Mountain Highlands to risk of loss knowing that Mountain Highlands would not have purchased the Ski Rio property had it been told the truth about the property.   See id. ¶ 97, at 19.

The Court believes that Mountain Highlands' allegations satisfy the elements of prima-facie tort.   Mountain Highlands alleges that Magnolia Mountain engaged in an intentional and lawful act of selling it the property, that Magnolia Mountain intended to injure Mountain Highlands by

misrepresenting the history of the foreclosure and the likely future litigation, that Mountain Highlands was injured through financial loss as a result of the misrepresentation, and that there was not sufficient justification for the act.  At this stage of the litigation, Mountain Highlands states a claim upon which relief can be granted.  Thus, Magnolia Mountain's motion to dismiss Mountain Highlands' 2003 claim for prima-facie tort is denied.

## III.  MOUNTAIN HIGHLANDS' 2007 CLAIMS STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

The Court does not believe that Mountain Highlands' 2007 claims constitute a collateral attack on Judge Starzynski's order.  Nor does the Court believe that it should disallow Mountain Highlands from bringing its claims in District Court because it might have the option to raise similar issues in Bankruptcy Court.  Thus, the Court will deny Magnolia Mountain's Motion to Dismiss regarding the 2007 claims.

### A.  MOUNTAIN HIGHLANDS' 2007 CLAIMS DO NOT CONSTITUTE A COLLATERAL ATTACK AND ARE APPROPRIATELY BROUGHT IN DISTRICT COURT.

Magnolia Mountain argues that the Court should dismiss Mountain Highlands' 2007 claims -- Counts II, IV and VI of the Complaint -- because Mountain Highlands' claims are based on allegations that are "patently false."  Motion to Dismiss at 7.  Specifically, Magnolia Mountain alleges that Mountain Highlands' claims are based on statements made at a hearing, during the bankruptcy proceeding, that caused Judge Starzynski to deny Mountain Highlands' Plan for Reorganization.  See id.  Magnolia Mountain stated that the falsity of the bases of these claims are easily verifiable by Judge Starzynski's opinion.  See id.

Specifically, Magnolia Mountain contends that footnote 5 of Judge Starzynski's opinion verifies that the bases of his decision was not any statements that Magnolia Mountain made at the

hearing.  Footnote 5 of Judge Starzynski's opinion states:

> Debtor has now filed a motion for approval of a § 363(f) sale of the property. Doc 106.  The Court is making its decision based on the record and the facts as presented at the evidentiary hearing, without regard to more recent developments, including the proposed sale as well as the overall tightening of the credit markets.

In re: Mountain Highlands, LLC, Memorandum Opinion in Support of Order Denying Confirmation of Debtor in Possession's Restated Plan of Organization at 5, No. 11-06-10011-SA (United States Bankruptcy Court for the District of New Mexico, entered December 14, 2007)("Bankruptcy Opinion").  Magnolia Mountain concludes that the 2007 claims cannot succeed because Mountain Highlands' allegations regarding the reasons why confirmation of the plan for reorganization was denied by Judge Starzynski are false.  See Motion to Dismiss at 7.

Mountain Highlands contends that Magnolia Mountain's approach to the 2007 claims misconstrues the Complaint's allegations.  See Plaintiff's Response to Defendant's Motion to Dismiss at 7, filed March 31, 2008 (Doc. 4)("Response").  Mountain Highlands argues that Magnolia Mountain's attack on the truth of Mountain Highlands' allegations has no place in a motion to dismiss.  See id. at 7.  Mountain Highlands further notes that Judge Starzynski does not say that his opinion is unrelated to Magnolia Mountain's withdrawal of their support for Mountain Highlands' Plan for Reorganization.  See id. at 8.

Specifically, Mountain Highlands argues that Magnolia Mountain's argument ignores the fact that, at the time that Judge Starzynski issued his Memorandum Opinion, he was unaware that the mortgagee of the Ski Rio Property, Signature Capital funding, Inc., was prepared, before Magnolia Mountain's interference, to withdraw its objection to the Ski Rio Property and the Plan. See id.  Mountain Highlands states that the fact that Judge Starzynski's opinion "lists various reasons for the denial of Plaintiffs Plan is irrelevant -- all of the reasons listed would have been moot

had Plaintiff been permitted to sell the property pursuant to the sale that had been structured." Id.

The Court does not believe it is proper to rely entirely on footnote 5 of Judge Starzynski's opinion to determine the bases of his decision. The Court notes that this Court does not necessarily state all the reasons that it may deny a motion when it issues an opinion. Realistically, the Court, and other courts, do not have time to provide such a comprehensive and extensive opinion for every motion that they decide.

Accordingly, the Court does not think that footnote 5 of Judge Starzynski's opinion forecloses the possibility that he based his decision on reasons other than those explicitly listed, such as the arguments of counsel at the hearing. Judge Starzynski's statement that his Court "is making its decision based on the record and the facts as presented at the evidentiary hearing, without regard to more recent developments . . ." Bankruptcy Opinion at 5, does not indicate to this Court that Judge Starzynski did not also rely upon counsel's arguments. The Court relies on representations made by counsel on a daily basis. Although the arguments and comments of attorneys are not formal evidence, they are representations on which courts often rely. Thus, the Court believes it is possible, as Mountain Highlands argues, that Judge Starzynski relied on the attorneys' arguments at the hearing to make his decision to deny the Plan for Reorganization.

Magnolia Mountain also argues that the 2007 claims constitute an improper collateral attack on Judge Starzynski's order. Additionally, Magnolia Mountain notes that Mountain Highlands still has remedies available to it in Federal Bankruptcy Court. See Motion to Dismiss at 7. Specifically, Magnolia Mountain states that Mountain Highlands can file a rule 60(b) motion or it can appeal Judge Starzynski's order. See id. at 7-8.

Mountain Highlands maintains that its 2007 claims are not an attack on Judge Starzynski's

order, but rather an attack on Magnolia Mountain's conduct in the timing of its withdrawal of

support for the Reorganization Plan, which did not allow Judge Starzynski to be completely

informed of the situation before he entered his order.  See Tr. at 29:16-23 (Court & Wesner).

Mountain Highlands states that Judge Starzynski's order may "well have been accurately reasoned

based on the information before the Court at the time."  Id. at 29:17-19 (Wesner).  Furthermore, in

response to the Court's question about the need to return this matter to Bankruptcy Court rather than

hearing it in federal court, Mountain Highlands stated:

> I think whether or not that is available or valid or even required is something to be
> discussed possibly at a later time, but I believe it is outside the scope of the pending
> 12(b)(6) motion, which by its definition is confined to the four corners of the
> plaintiff[']s complaint.  This issue may . . . prove to have merit in the long run, but
> I do think that it's outside the scope of his proceeding here today.

Tr. at 29:8-15 (Wesner).

The Court agrees with Mountain Highlands that the 2007 claims before this Court are not

a collateral attack on Judge Starzynski's opinion.  Rather, the claims here are against Magnolia

Mountain for its actions regarding the hearing.  "A collateral attack is an attempt to avoid, defeat,

or evade [a judgment], or deny its force and effect, in some incidental proceeding not provided by

law for the express purpose of attacking the judgment."  Lewis v. City of Santa Fe,

2005-NMCA-032, ¶ 10, 108 P.3d 558.

> A collateral attack is an attempt to impeach the judgment by matters dehors the
> record, in an action other than that in which it was rendered[.] . . .  It has long been
> the general rule that "a judgment is not subject to collateral attack where the court
> had jurisdiction of the subject matter and of the parties. . . . [I]t is not open to
> contradiction or impeachment, in respect of its validity, verity, or binding effect, by
> parties or privies in any collateral action or proceeding, except . . . for fraud in its
> procurement.

Sanders v. Estate of Sanders, 1996-NMCA-102, ¶ 23, 927 P.2d 23, 29 (citations omitted).

Mountain Highlands has not given the Court any indication that it is attacking the judgment which Judge Starzynski entered.  The matter brought before the Court regarding the 2007 claims is a new issue that is separate from the decision Judge Starzynski made.  Judge Starzynski's judgment can stand, and the Defendants still may be liable for its breach of agreements in an effort to harm Mountain Highlands.  Thus, the Court does not believe that it should dismiss Mountain Highlands' 2007 claims on the basis of collateral attack.

Furthermore, because the 2007 claims brought by Mountain Highlands are separate, although related, to the issues before Judge Starzynski, the Court believes that Mountain Highlands is not required to appeal the order that Judge Starzynski entered or file a 60(b) motion in the Bankruptcy Court.  Mountain Highlands, like all plaintiffs, has the choice as to where it files its claims.  While Mountain Highlands had the option to file an appeal of the bankruptcy order or file a 60(b) motion in the Bankruptcy Court, they are not required to do so to bring this separate claim in district court. Because the district court appears, at this point in the litigation, to be an appropriate forum for these claims, the Court will not require Mountain Highlands to file its claims in another appropriate forum. The choice is that of the plaintiff.

The Court is aware that matters between Magnolia Mountain and Mountain Highlands are still pending in the Bankruptcy Court.  Such parallel proceedings in the Bankruptcy Court between parties before the district court are common and often proper. While there may be other reasons that the Court should not proceed with Mountain Highlands' claims, the Court is not aware of any rule of law that requires the 2007 claims to be brought only in Bankruptcy Court.  The Defendants remain free to raise other arguments why the  Bankruptcy Court is the better or required forum for the 2007 claims.  Accordingly, the Court will not dismiss Mountain Highlands' 2007 claims on the

basis that Mountain Highlands should exhaust its available remedies in Bankruptcy Court. Mountain Highlands' 2007 claims, therefore, appropriately state a claim upon which relief can be granted.

**IT IS ORDERED** that the Defendants' Motion to Dismiss is granted in part and denied in part. The Court dismisses the Plaintiff's 2003 claims based on representations that the Defendants could provide clear and marketable title. The motion is otherwise denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Steven S. Scholl
Dave Wesner
Dixon Scholl & Bailey, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Charles V. Henry, IV
Charlotte Hetherington
Donald A. Walcott
Scheuer, Yost, & Patterson, P.C.
Santa Fe, New Mexico

    *Attorneys for the Defendants*