IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN HIGHLANDS, LLC,
an Oregon Limited Liability Company,

       Plaintiff/Counterdefendant,

vs.                                                                                                         No. CIV 08-0239 JB/ACT

DAVID HENDRICKS, and MAGNOLIA
MOUNTAIN LIMITED PARTNERSHIP,
a Texas limited partnership,

       Defendants/Counterclaimants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2003 Claims, filed December 16, 2008 (Doc. 57). The Court held a hearing on February 3, 2009. The primary issue is whether the Court should grant summary judgment on Plaintiff Mountain Highlands, LLC's 2003 claims. Because the Court believes that there are genuine issues of material fact regarding Mountain Highlands' claims for fraud, breach of warranty, and prima-facie tort, the Court will deny the motion for summary judgment on those claims. The Court will, however, grant the motion as to the claim for breach of the covenant of good faith and fair dealing, because Mountain Highlands' theory involves a failure to disclose information that pre-dated the contract underlying the covenant.

## FACTUAL BACKGROUND

This motion concerns the events surrounding Defendant Magnolia Mountain Limited Partnership's 2003 sale of real property in Taos County, New Mexico ("Ski Rio property") to Mountain Highlands. Mountain Highlands alleges that the sale was rife with fraud and

misrepresentation. The Defendants disagree.

The basic outline of events in this case is undisputed, as are many of the specific facts. Mountain Highlands contends, however, that many of the facts that the Defendants raise in their briefing are disputed, misleading, or immaterial. Given the Court's resolution of the motion on largely legal grounds and on the existence of disputed issues of material fact, the Court will only sketch out the pertinent facts here.

In 2003, Magnolia Mountain foreclosed its mortgage on the Ski Rio property, which the Ski Rio Partners owned. Magnolia Mountain obtained a default judgment against Ski Rio Partners and conducted an auction of the Ski Rio property, which Magnolia Mountain purchased. Mountain Highlands and the Defendants had been engaged in negotiations about Mountain Highlands' buying Magnolia Mountain's interest in the Ski Rio property since early 2003, ultimately resulting in a Purchase Agreement and the sale of the Ski Rio property to Mountain Highlands. After the sale was complete, Ski Rio Partners filed a Notice of Lis Pendens for the Ski Rio property and sought to have the default judgment set aside.

The primary factual disputes relevant to this motion concern whether Defendant David Hendricks, principal of Magnolia Mountain, had knowledge about "underhanded" practices used against Ski Rio Partners in the foreclosure, and whether he failed to disclose to Mountain Highlands those tactics and the reaction they provoked from John Lau, a principal of Ski Rio Partners. An additional relevant issue is whether Hendricks made representations to Mountain Highlands about the commercial viability of the Ski Rio property during the negotiation of the Purchase Agreement. Both of these areas contain genuine disputes of material fact.

First, there is evidence that Hendricks' representations to Mountain Highlands regarding both the title and the commercial viability of the Ski Rio property were inaccurate. Lawrence Smith,

who negotiated the purchase of the Ski Rio property on behalf of Mountain Highlands, testified that Hendricks told Mountain Highlands that "everything was supposed to be clean and green and ready to rock-and-roll," Exhibit 2 to Motion, Vol. I, Deposition of Lawrence Smith at 207:14-16 (taken October 23, 2008)(Doc. 58-8)("Smith Depo."), that the title was clean, and that "the property is worth more money because you can proceed on development tomorrow," id. at 208:13-14. These statements occurred in the context of what Smith believed -- although he was not completely certain about the full scope of discussions -- were talks about Mountain Highlands' development plans. See id. at 208:22-209:7.

Second, there is some evidence that Hendricks did not inform Mountain Highlands that the Defendants were pursuing aggressive foreclosure tactics that Lau was not pleased with. Hendricks testified at his deposition that he was aware that Lau was, at a minimum, not pleased with the foreclosure and that Lau considered the Defendants' actions "very unfair." Exhibit B to Response, Deposition of David Hendricks at 275:6-16 (taken October 24, 2008)(Doc. 64-3)("Hendricks Depo."). Robert M. Janes, the Vice President of Shepard's Group, Inc., the entity serving as managing member of Mountain Highlands, stated that Hendricks told him that Ski Rio Partners did not know what the foreclosure was about. See Affidavit of Robert M. Janes ¶ 4, at 2 (executed August 28, 2008)(Doc. 64-2)("Janes Aff."). Lau similarly testified at his deposition that the first time he probably learned of the foreclosure was when he was told that the Defendants had acquired the Ski Rio property. See Exhibit 6 to Motion, Deposition of John Lau at 56:10-17 (taken July 21, 2004)(Doc. 58-14)("Lau Depo."). Hendricks testified that the first time he told someone at Ski Rio Partners that he had foreclosed their interest in the Ski Rio property was on July 8, 2003. See Hendricks Depo. at 218:25-219:4. The Defendants maintain that Lau was aware that the Defendants were foreclosing on the property. See Lau Depo. at 62:19-22.

**PROCEDURAL BACKGROUND**

Pursuant to rule 56, the Defendants move for summary judgment on what they describe as Mountain Highlands' 2003 claims: (i) fraud; (ii) breach of the covenant of good faith and fair dealing; (iii) breach of express or implied warranties; and (iv) prima-facie tort. In their motion for summary judgment, the Defendants primarily focus on Mountain Highlands' allegations that the Defendants misrepresented the commercial viability of the Ski Rio property to Mountain Highlands. The Defendants also contend that Mountain Highlands' claims for breach of the covenant of good faith, breach of warranty, and prima-facie tort are flawed.

Mountain Highlands responds that the Defendants have largely mischaracterized its claims, which Mountain Highlands contends are ultimately grounded in fraudulent concealment. See Plaintiff's Response to Motion for Partial Summary Judgment Regarding Plaintiff's 2003 Claims at 3-4, 15, filed January 9, 2009 (Doc. 64)("Response"). The Defendants maintain that Mountain Highlands' focus on concealment does not save its claims. The Defendants contend that Mountain Highlands is still unable to produce factual support for a claim of concealment and that they lacked any legal duty to disclose the information that Mountain Highlands alleges was concealed. See Reply in Support of Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2003 Claims at 4-12, filed January 26, 2009 (Doc. 69)("Reply").

**ANALYSIS**

The Defendants move for summary judgment on Mountain Highlands' 2003 claims, consisting of: (i) fraud; (ii) breach of the covenant of good faith and fair dealing; (iii) breach of express or implied warranties; and (iv) prima-facie tort. The Court concludes that three of the 2003 claims are legally sufficient and involve material disputes of fact that preclude summary judgment: (i) fraud; (ii) breach of warranty; and (iii) prima-facie tort. The claim for beach of the covenant of

good faith and fair dealing, however, is legally flawed. Mountain Highlands' claim for breach of the covenant of good faith and fair dealing does not involve conduct that occurred during the performance of the Exchange Agreement and the Court will therefore dismiss that claim.

**I.    GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON MOUNTAIN HIGHLANDS' FRAUD CLAIM.**

The Defendants make a number of attacks on Mountain Highlands' fraud claim. The Defendants contend that Mountain Highlands' fraud claim lacks a factual basis and also has numerous legal flaws. Additionally, the Defendants argue that, in the alternative, Mountain Highlands has waived its right to pursue a claim for fraud. The Court concludes, however, that there is evidence supporting the fraud claim Mountain Highlands raises and that there are no other legal grounds for summary judgment here.

**A.    WHETHER THE DEFENDANTS MADE RELEVANT MISREPRESENTATIONS OR OMISSIONS IS DISPUTED.**

The Defendants' first attack on the fraud claim is that there is no evidence that Hendricks knew or could have known that Lau would file a Notice of Lis Pendens or move to set aside the default judgment. Mountain Highlands counters that the Defendants misconstrue their claims. Mountain Highlands argues that their 2003 claims are rooted primarily in fraudulent concealment and that they are not suing on the grounds that the Defendants specifically knew that Lau would file a Notice of Lis Pendens, but that they "should have disclosed the underhanded means by which they acquired the property from its former owner, and the reaction of that owner, and its prospective buyer, which reaction was known to the Defendants and concealed from [Mountain Highlands]." Response at 15.

While the Defendants argue that Mountain Highlands has abandoned any claim of misrepresentation through its focus on fraudulent concealment in the Response, the Court does not

understand Mountain Highlands to have abandoned any of its 2003 claims. Mountain Highlands chose to emphasize concealment as the key theory of its case on the 2003 claims, but a fair reading of the briefing and of Mountain Highlands' arguments at the hearing indicates that Mountain Highlands is still asserting a misrepresentation. The apparent reason that Mountain Highlands considers the concealment damaging is because it believed that the Ski Rio property was immediately ready for its commercial purposes. The Court thus views Mountain Highlands as alleging a misrepresentation about commercial viability, which is a misrepresentation because of the alleged undisclosed facts that undercut the statement about viability. The alleged misrepresentation and the alleged omissions work in tandem.

Mountain Highlands correctly notes that the Defendants' statement of undisputed material facts largely does not address whether they knew of and failed to disclose information about the foreclosure and Lau's reaction. The Defendants, however, maintain that Hendricks was surprised that Lau filed a Notice of Lis Pendens and moved to set aside the default judgment. See Motion ¶ 26, at 8. Mountain Highlands contends that this level of specificity regarding Lau's actions is a mischaracterization of its claims. The Defendants then argue in their Reply that there is no evidence supporting Mountain Highlands' fraudulent concealment theory.

To the extent that the Defendants' challenge the correct factual basis for the 2003 claims, Mountain Highlands has offered evidence supporting both the existence of omissions and misrepresentations. Hendricks testified at his deposition that he was aware that Lau was, at a minimum, not pleased with the foreclosure and that Lau considered the Defendants' actions "very unfair." Hendricks Depo. at 275:6-16. Janes' affidavit indicates that Lau was unaware why there was a foreclosure against the Ski Rio property, see Janes Aff. ¶ 4, at 2, as do portions of Lau's deposition testimony, but not others, compare Lau Depo. at 56:10-17 (stating that Lau did not know

of foreclosure until after sale), with id. at 62:19-22 (stating that Lau was aware the Defendants were foreclosing on interest). Smith testified that Hendricks told Mountain Highlands that "everything was supposed to be clean and green and ready to rock-and-roll," Smith Depo. at 207:14-16, that the title was clean, and that "the property is worth more money because you can proceed on development tomorrow," id. at 208:13-14. These statements occurred in the context of what Smith believed -- although he was not completely certain about the full scope of discussions -- were talks about Mountain Highlands' development plans. See id. at 208:22-209:7. While some of these alleged representations concerned title, a fair inference can be drawn from them that Hendricks also stated that the Ski Rio property would be ready for Mountain Highlands' development purposes. In light of the evidence of omissions, there is a disputed issue of material fact whether misrepresentations were made.

The Defendants argue that the New Mexico Court of Appeals' decision in Magnolia Mountain Limited Partnership v. Ski Rio Partners, 139 N.M. 288, 131 P.3d 675 (Ct. App. 2005), found the theory that Magnolia Mountain promised Ski Rio Partners that it would not foreclose to be implausible. Mountain Highlands' allegations, however, do not necessarily turn on the legality of the foreclosure proceedings so much as on Lau's beliefs, and more specifically, on what the Defendants knew of Lau's apparent reaction.

Additionally, the Defendants contend that the only evidence Mountain Highlands offers about "underhanded means" in the foreclosure is Janes' affidavit, which they assert is "an attempt to create a sham issue of fact." Reply at 6 (internal quotation marks omitted). The Defendants point out that Janes' affidavit contains allegations not in the Complaint and is contrary to Lau's deposition testimony. That Janes' affidavit contradicts the testimony of a different witness shows a disputed issue of fact. The Defendants' argument might have more traction if Janes was suddenly reversing

course on his own testimony in response to a motion for summary judgment, but that is not the scenario here. Moreover, nothing requires a plaintiff's complaint to contain an allegation of every fact that will ultimately become relevant as the case progresses. Additionally, because the focus of Mountain Highlands' claims is on Hendricks' understanding of Lau's actions and behavior, Janes' statements regarding what Hendricks said about Lau is not hearsay for the purposes relevant to Mountain Highlands' claims. The importance of Hendricks' statements is what they reveal about Hendricks' perception of Lau.

### B. THE DEFENDANTS ARE NOT OTHERWISE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.

In addition to challenging the factual support for Mountain Highlands' claims, the Defendants make several largely legal arguments in their Motion and Reply: (i) that they had no duty to disclose any information to Mountain Highlands; (ii) that the information Mountain Highlands maintains should have been disclosed consists of speculation and opinion; (iii) that Mountain Highlands could not have reasonably relied on any representations because it conducted due diligence; and (iv) that the merger doctrine bars Mountain Highlands' claims.

The Defendants contend that a fraudulent concealment claim must fail because they had no duty to disclose the information that Mountain Highlands maintains was withheld. See Reply at 5-6. The Defendants acknowledge that superior knowledge will give rise to a duty to disclose, but contend that they had no such knowledge. Superior knowledge, however, can be knowledge peculiarly within the awareness of a party. See Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd., 113 N.M. 9, 12-13, 820 P.2d 1323, 1326-27 (1991). In Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd., an ice cream store, Golden Cone, was negotiating with a mall to lease space. The mall did not disclose complaints it had received from other food vendors in the mall about low

traffic.  The Supreme Court of New Mexico held that the "traffic flow information was peculiarly within the Mall's knowledge," obligating it to disclose the information to Golden Cone.  Id. at 13, 820 P.2d at 1327.  Like the mall, the Defendants were not the only ones with the knowledge in question, but their position gave them a significantly better vantage to obtain the information that Mountain Highlands.  Given the Defendants' initiation of the foreclosure and interactions with Ski Rio Partners, there is evidence supporting the Defendants having superior knowledge and thus being under a duty to disclose.

       The Defendants further contend that Mountain Highlands' fraud claims hinge on a statement that is "a mere expression of opinion regarding future events . . . [that] was not false when made" -- Hendricks' alleged statement that "everything was clean and green, and there were no inhibitors titlewise,"  Motion at 16, and that they "should not be held to a burden of disclosing unknown contingencies," Reply at 6.  The Court does not agree with the Defendants' characterization of Hendricks' statement.  First, the statement has some future orientation, but the statement involves present facts with future consequences.  Second, Hendricks' alleged statement implies that no contrary facts existed.  The Defendants have also not cited any law from New Mexico indicating that New Mexico would not apply the modern rule that opinions can form the basis of a claim for fraudulent inducement.  See 26 Williston on Contracts § 69:6 (4th ed. 2008).

       The Defendants also rely on Krupiak v. Payton, 90 N.M. 252, 561 P.2d 1345 (1977), to support the proposition that they have no duty to disclose unknown contingencies.  In Krupiak v. Payton, the Supreme Court of New Mexico held that there was no duty to "disclos[e] unknown contingencies." Id. at 253, 561 P.2d at 1346.  The particular unknown contingency in that case was whether the City of Albuquerque would levy a special assessment for road improvement on certain property.  A home builder had received a discount in buying property because of the possibility of

such an assessment, but had not disclosed this discount to the buyers of a home. A special levy was later assessed on the property, and the buyers sued the builder for fraud. See id. at 252-53, 561 P.2d at 1345-46. The Supreme Court of New Mexico, in addition to briefly noting that the builder had no duty to disclose unknown contingencies, held that the record did not reveal that the builder had any superior knowledge about the possibility of a future special assessment than the buyers did. See id. at 253, 561 P.2d at 1346. That fact distinguishes Krupiak v. Payton from this case. Here, the Defendants possessed superior knowledge. Neither the Defendants nor Mountain Highlands might have been better able to predict what Ski Rio Partners might do, but there is evidence that the Defendants had information regarding Ski Rio Partners that Mountain Highlands did not. They were not on equal footing. On the record before the Court, the Defendants would not have a duty to disclose that a Notice of Lis Pendens would be filed -- predicting that occurrence would be speculation. The Defendants, however, would be under a duty to disclose the basic underlying facts to put them on equal footing.

The Court also does not believe that Mountain Highlands is foreclosed from arguing that it reasonably relied on Hendricks' representations or omissions. While the Purchase Agreement contains an "as is" clause, that clause refers to the property itself. See Exhibit A to Complaint, Purchase and Option Agreement § 10, at 5 (dated August 4, 2004)(Doc. 1-4)("**Condition of Property.** Buyer has made such inspection, tests, and examinations of the property as it deems necessary and/or desirable . . . ."). This clause would not encompass collateral matters about commercial viability and the threat of litigation. Moreover, the general rule that due diligence will forestall a claim of reliance on misrepresentations applies only where a seller and buyer have equal knowledge or access to the facts. See C. Lambert & Associates, Inc. v. Horizon Corp., 106 N.M. 661, 664, 748 P.2d 504, 507 (1988)(allowing claim despite "as is" clause because of unequal

knowledge). Because Mountain Highlands has offered some evidence of fraudulent concealment, Mountain Highlands can successfully maintain a fraud claim despite having conducted due-diligence investigations.

Finally, the Defendants argue that the merger doctrine forecloses Mountain Highlands' claims. As the Court has already held earlier in this case, representations about the commercial viability of the Ski Rio property are collateral to the issue of title. See Memorandum Opinion and Order at 35-39, entered August 29, 2008 (Doc. 17). Mountain Highlands alleges that the misrepresentations involved commercial viability, and that the harms it suffered were in part because it was unable to immediately commence development. While the alleged concealment of information about the foreclosure and about Lau touches on title issues, the primary thrust of the allegations that survived the Court's earlier opinion on the motion to dismiss is that the Defendants concealed information about the foreclosure and about Lau that would have alerted Mountain Highlands that Lau might take actions that would harm the commercial viability of the Ski Rio property.

      **C.    WHETHER MOUNTAIN HIGHLANDS HAS WAIVED ITS CLAIM FOR FRAUD IS A DISPUTED FACTUAL ISSUE.**

The Defendants also advance an alternative theory that Mountain Highlands has waived any claim it might have for fraud through ratifying the Purchase Agreement and obtaining additional concessions under the contract.[1] This alternative theory, however, requires that Mountain Highlands have had full knowledge of the facts allegedly constituting fraud at the time of the ratification or concessions. See, e.g. Motion at 22 (quoting 37 Am.Jur.2d Fraud and Deceit § 322, at 333)("[I]f

---

[1] The Defendants also contend that Mountain Highlands cannot pursue a claim for rescission of its obligations on two promissory notes. The Court will consider this argument in the context of the Defendants' motion for summary judgment on the promissory notes.

the defrauded party, with knowledge of the fraud does act in ratifying or affirming the contract . . . .")(brackets added by Motion). Janes' affidavit states that Mountain Highlands did not fully learn about the Defendants actions' in the foreclosure on the Ski Rio property until the discovery in this case. See Janes Aff. ¶ 19, at 4-5. As the Court has noted, Janes' affidavit is not an attempt to create a sham issue of fact. Because Janes' affidavit may validly be considered, there is a disputed issue of material fact whether Mountain Highlands had the requisite knowledge to have ratified the Purchase Agreement in a manner that would waive its claims for fraud.

**II.    MOUNTAIN HIGHLANDS' CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING FAILS BECAUSE IT INVOLVES CONDUCT FROM BEFORE THE PURCHASE AGREEMENT.**

The Defendants argue that "the allegations in the Complaint do not properly articulate a claim for breach of the covenant of good faith and fair dealing." Motion at 25. The Court agrees. While the Court has previously held that Mountain Highlands pled a valid cause of action for violation of the covenant, the Court's opinion dealt with the Defendants' motion to dismiss, which raised only the merger doctrine and collateral estoppel as grounds for dismissing the claim. See Motion to Dismiss at 3-6, filed March 14, 2008 (Doc. 3). Here, the Defendants focus on their course of performance under the Purchase Agreement and contend that Mountain Highlands has not made any allegations that the Defendants used the contract to Mountain Highlands' detriment or deprived it of the benefits of the agreement.

The covenant of good faith and fair dealing is tied to the performance of the contract, not to the negotiation of a contract or other events that pre-date the existence of the contract. See WXI/Z Sw. Malls v. Mueller ¶ 25, 137 N.M. 343, 350, 110 P.3d 1080, 1087 (Ct. App. 2005)("Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract.")(emphasis added); Restatement

(Second) of Contracts § 205 cmt. c. (noting that the duty of good faith and fair dealing does not apply to negotiations, for which other doctrines, such "fraud and duress," provide a remedy for bad faith). Mountain Highlands' allegations all concern the Defendants' failure to disclose pre-existing conditions. See Complaint ¶ 78, at 16 ("Defendants knew or should have known . . . that Plaintiff would be unable to sell or commercially develop the Ski Rio property and the associated assets they sold to Plaintiff . . . ."); id. ¶ 79, at 16 ("Defendants' intentional misrepresentation . . . created an insurmountable barrier to Plaintiff's realization of its expected economic advantage . . . ."). These allegations support a claim for fraud, as the Court has just held, but not for breach of the covenant of good faith. Mountain Highlands' interpretation of the covenant in this situation does little more than mimic a cause of action for fraudulent concealment, which is unnecessary given that fraudulent concealment is a recognized cause of action in New Mexico.

Azar v. Prudential Ins. Co. of America, 133 N.M. 669, 68 P.3d 909 (Ct. App. 2003), is the first case from New Mexico to discuss the covenant of good faith and fair dealing, and pre-contractual disclosure. Among other things, the plaintiffs alleged that a life insurance company had a duty to disclose to a prospective insured the additional costs of paying premiums in installments rather than annually, before the policy was issued. See id., ¶ 1, 133 N.M. at 676, 68 P.3d at 916. The New Mexico Court of Appeals held: "Because the implied covenant of good faith and fair dealing depends upon the existence of an underlying contractual relationship, Plaintiffs may not recover under the theory for omissions occurring before the existence of the policy." Id. ¶ 53, 133 N.M. at 685, 68 P.3d at 925. The situation here is analogous to the circumstances of Azar v. Prudential Ins. Co. of America. Mountain Highlands is alleging a breach of the covenant based on the Defendants' alleged failure to inform it of facts that existed before the parties entered into the Purchase Agreement. Other jurisdictions have also held that a failure to disclose material

information from before a contract enters into force is not a violation of the covenant of good faith. See, e.g., Jackson County v. Jackson Educ. Service Dist., 90 Or.App. 299, 303, 752 P.2d 1224, 1228 (Ct. App. 1988)(holding that failure to disclose information during contract negotiations was not a breach of covenant of good faith, which deals with contract performance and not contract making); Sheehy v. Lipton Industries, Inc., 24 Mass.App.Ct. 188, 192-94, 507 N.E.2d 781, 784 & n.6 (Ct. App. 1987)(holding that misrepresentation about land during negotiation and execution of sales contract did not violate covenant of good faith). Mountain Highlands' allegations are directed at pre-contractual behavior and do not involve the Defendants interfering with the contract or depriving Mountain Highlands of the benefit of its bargain after the Purchase Agreement was signed.

Mountain Highlands also states, perhaps alternatively, that it relies on the Purchase Agreement and not on oral agreements. The Court does not fully understand Mountain Highlands' contention, but it appears that Mountain Highlands is suggesting that the pre-contract oral negotiations became part of the written Purchase Agreement, and the Defendants violated the written agreement as supplemented by the oral representations. Even assuming, however, the legal and factual correctness of Mountain Highlands' supplementation argument, if the covenant of good faith and fair dealing arose from the oral statements, the result would not change, because the allegedly unlawful conduct would not involve the performance of the Purchase Agreement. The existence of a binding agreement and its underlying covenant of good faith and fair dealing would date, under Mountain Highlands' argument, to the time of the oral statements instead of the written agreement in such a scenario, but the failure to disclose would still pre-date any oral agreement.

The covenant of good faith and fair dealing primarily precludes a defendant from preventing a plaintiff from enjoying the benefits of the contract. Here, the alleged misrepresentations at issue occurred before the contract and do not prevent Mountain Highlands' enjoyment of the benefits of

its bargain. Analytically, the representations pre-date any agreement, and the covenant of good faith and fair dealing is not applicable to these misrepresentations.

### III. MOUNTAIN HIGHLANDS MAY PROCEED ON ITS CLAIM FOR BREACH OF WARRANTY.

Whether there is sufficient evidence of a breach of warranty depends -- as the Defendants seem to recognize, see Motion at 28 ("Unless Mountain Highlands can prove fraud, the terms of the Purchase Agreement bar Mountain Highlands from claiming express or implied warranties other than those contained in the Purchase Agreement.") -- on whether there is evidence of fraud. If Mountain Highlands' fraud claim falls, the breach of warranty claim must fall with it. Conversely, if the fraud claim withstands summary judgment, the breach of warranty claim will also survive.

Mountain Highlands has presented evidence supporting the existence of a warranty about the viability of the Ski Rio property for its immediate commercial uses. See Smith Depo. at 207:14-209:7. While the Purchase Agreement contains an "as is" clause purporting to disclaim any warranties or representations, as well as an integration clause, these clauses will not cut off Mountain Highlands' claim if it is able to prove that the Defendants perpetrated a fraud on Mountain Highlands. See, e.g., Rio Grande Jewelers Supply, Inc. v. Data General Corp., 101 N.M. 798, 800, 689 P.2d 1269, 1271 (1984)(noting that appellant did not argue fraud in response to contract's disclaimer of warranty, but negligent misrepresentation); Smith v. Price's Creameries, Div. of Creamland Dairies, Inc., 98 N.M. 541, 544, 650 P.2d 825, 828 (1981)("Failing . . . evidence of fraud, where the parties are otherwise competent and free to make a choice as to the provisions of their contract, it is fundamental that the terms of contract made by the parties must govern their rights and duties."). As the Supreme Court of New Mexico has stated:

> Where one party to the contract has perpetrated a fraud upon the other, by means of which the latter was induced to enter into the contract, [one] cannot be precluded

>  from seeking redress by a provision inserted in the contract by the party perpetrating the fraud, designed to shut the mouth of the adverse party as to such fraudulent representations which led up to the making of the contract. And this is true, whether the action be for rescission of the contract or for damages for deceit.

Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd., 113 N.M. at 11-12, 820 P.2d at 1325-26 (quoting Berrendo Irrigated Farms Co. v. Jacobs, 23 N.M. 290, 168 P. 483, 484 (1917)). Because Mountain Highlands has sufficient evidence to proceed on its fraud claim, it may also move forward with its breach of warranty claim.

### IV.   MOUNTAIN HIGHLANDS' PRIMA-FACIE TORT CLAIM IS NOT BARRED AT THIS TIME, BUT THE COURT WILL NOT SUBMIT THE PRIMA-FACIE TORT CLAIM TO A JURY IF ANY OF THE OTHER 2003 CLAIMS GO TO THE JURY.

The Defendants maintain that Mountain Highlands' pleading a claim for prima-facie tort is an attempt to evade "the stringent requirements of a claim for fraudulent concealment." Motion at 29. According to Mountain Highlands, this claim is "a poor candidate for summary disposition," and "[t]he unique facts of this case may require that the Court wait until factual determinations are made to decide whether or not the case fits neatly within existing causes of action." Response at 25. The arguments the opposing parties advance track the two competing strands of thought that have run through the New Mexico cases on prima-facie tort. One line of reasoning favors early dismissal of duplicative claims, but the other line of reasoning has a preference for allowing the facts to play out before deciding whether prima-facie tort should be discarded. The most recent decision on the topic from New Mexico sides with the latter line of thought. The Court will therefore not grant summary judgment on the claim at this time, but will not allow both the prima-facie tort claim and a duplicative claim to go to the jury.

A claim for prima-facie tort cannot be used to avoid the requirements of torts that would cover the conduct at issue. See Stock v. Grantham ¶¶ 38-39, 125 N.M. 564, 575-76, 964 P.2d 125,

135-36 (Ct. App. 1998)(affirming dismissal of prima-facie tort claim that was duplicative of other causes of action and that would serve to evade the requirement that only outrageous conduct be present for intentional infliction of emotional distress); Hill v. Cray Research, Inc., 864 F.Supp. 1070, 1080 (D.N.M. 1991)(noting that "a cause of action in prima facie tort does not lie when the pleaded factual basis is within the scope of an established tort"). The conduct underlying Mountain Highlands' other claims from 2003 is the same as the facts marshaled in support of prima-facie tort. Mountain Highlands has an action for fraud available to it; allowing prima-facie tort here might serve only to permit Mountain Highlands to avoid the rigorous burden of clear-and-convincing evidence that is required to prove fraud. On the other hand, Schmitz v. Smentowski, 109 N.M. 386, 785 P.2d 726 (1990), which recognized prima-facie tort in New Mexico, stated that the tort could be pled in the alternative and "if at the close of the evidence, plaintiff's proof is susceptible to submission under one of the accepted categories of tort, the action should be submitted to the jury on that cause and not under prima facie tort." Id. at 396, 785 P.2d at 736.

Since Stock v. Grantham, the New Mexico Court of Appeals decided Hagebak v. Stone, 133 N.M. 75, 61 P.3d 201 (Ct. App. 2002). In Hagebak v. Stone, the Court of Appeals noted that it had, "under certain circumstances, been willing to recognize a prima facie tort claim, even though the conduct in question bore a resemblance to another cause of action." Id. ¶ 27, 133 N.M. at 83, 61 P.3d at 209. The plaintiff in Hagebak v. Stone admitted that the factual basis of his prima-facie tort claim and his defamation claim overlapped, but that the prima-facie tort claim was broader. The Court of Appeals held that "it was error to award summary judgment against [the plaintiff] on his claim for prima facie tort merely on the basis of the 'same alleged conduct' between the two claims." Id. ¶ 29, 133 N.M. at 83, 61 P.3d at 209. Mountain Highlands makes a similar assertion here as the plaintiff in Hagebak v. Stone did, contending that its cause of action for prima-facie tort

may be distinct from its other claims and that it should be given the opportunity to marshal its evidence.[2]

Prima-facie tort is a doctrine of last resort. For most causes of action, a plaintiff must prove a wrongful act. With prima-facie tort, the plaintiff has a possible remedy where the conduct is lawful, but done with a bad motive. See Schmitz v. Smentowski, 109 N.M. at 396-97, 785 P.2d at 736-37 (noting that prima-facie tort requires an otherwise lawful action). It provides a remedy for wrongful conduct where more traditional torts do not recognize a cause of action. Accordingly, prima-facie tort is not available where a plaintiff can seek redress for a particular wrong under some other theory. In Schmitz v. Smentowski, for example, the Supreme Court of New Mexico authorized prima-facie tort in a situation where the alternative tort theories that the defendant argued could apply -- conversion and fraud -- were not available. See 109 N.M. at 399, 785 P.2d at 738. Mountain Highlands' prima-facie tort claim relies on the same facts as its other 2003 claims: the Defendants' alleged concealment of material facts about the Defendants' foreclosure on the Ski Rio property and the reaction of Ski Rio Partners. The claim is factually a repetition of other claims. Accordingly, the Court will not allow the prima-facie tort claim to proceed to the jury if the Court submits either the fraud or breach of warranty claim to the jury. In the aftermath of Hagebak v. Stone, however, the Court does not believe that summary judgment at this stage would be appropriate on the grounds that Mountain Highlands' claim is either evading the stringent requirements for fraud or is duplicative of a traditional tort. Additionally, summary judgment is not appropriate on factual grounds. The Defendants challenge the underlying facts that Mountain

---

[2] Mountain Highlands has not pointed to any facts to support its prima facie tort claims that it does not also use to support its other two existing claims. Accordingly, as far as the Court can see, on the record before it, the prima-facie tort claim is not broader, factually, than the other two existing claims.

Highlands alleges were not disclosed, but as the Court has already held, there are genuine disputes of material fact regarding that issue. The Defendants may have acted lawfully, but with bad intent.

There remains considerable tension in the law in New Mexico. Hagebak v. Stone acknowledged Stock v. Grantham's pre-trial dismissal, but did not overrule Stock v. Grantham. Moreover, even the case on which Mountain Highlands relies, Healthsource, Inc. v. X-Ray Associates of New Mexico, 138 N.M. 70, 116 P.3d 861 (Ct. App. 2005), dismissed a prima-facie tort claim on standing grounds, but noted in the alternative that the claim was likely invalid because the plaintiff did "not assert any separate factual basis to support its prima facie tort claim." Id. ¶ 36, 138 N.M. at 81, 116 P.3d at 872. In reaching this conclusion, the New Mexico Court of Appeals relied on Stock v. Grantham.

Given that the discussion in Healthsource, Inc. v. X-Ray Associates of New Mexico expressed what the New Mexico Court of Appeals would "likely" hold, the Court believes that it is better at this time to follow Hagebak v. Stone and, more importantly, the Supreme Court of New Mexico's decision in Schmitz v. Smentowski. Moreover, because the Court is allowing other 2003 claims to go forward, the Defendants are not being forced into a trial on these issues when the prima-facie tort claim may ultimately be a redundant cause of action. If the case is submitted to a jury they will also only have to argue against one theory, because the Court will not submit a prima-facie tort claim to the jury if either the fraud or breach of warranty claim goes to the jury.

**IT IS ORDERED** that the Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2003 Claims is granted in part and denied in part. The Court will grant summary judgment as to Count III of the Complaint -- for breach of the covenant of good faith and fair dealing -- but will otherwise deny the motion. The Court will also not allow the prima-facie tort claim to proceed to the jury if the claims for breach of warranty or for fraud go to the jury.

                          _____
                          UNITED STATES DISTRICT JUDGE

*Counsel:*

Steven S. Scholl
Dave M. Wesner
Dixon Scholl & Bailey, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff/Counterdefendant*

Charles V. Henry, IV
Donald A. Walcott
Charlotte Hetherington
Scheuer, Yost, & Patterson, P.C.
Santa Fe, New Mexico

    *Attorneys for the Defendants/Counterclaimants*