# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN HIGHLANDS, LLC,
an Oregon Limited Liability Company,

        Plaintiff/Counterdefendant,

vs.                                          No. CIV 08-0239 JB/ACT

DAVID HENDRICKS, and MAGNOLIA
MOUNTAIN LIMITED PARTNERSHIP,
a Texas limited partnership,

        Defendants/Counterclaimants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Reconsider Memorandum Opinion and Order Document #78, filed February 27, 2009 (Doc. 87)("Motion"). The Court held a hearing on June 5, 2009. The primary issue is whether the Court should reconsider its denial of summary judgment on three of Plaintiff Mountain Highlands, LLC's claims arising out of events in 2003 and dismiss those claims for lack of evidence. Because the Court agrees with the Defendants that the record does not show any undisclosed material information, and because evidence of such information is necessary for all of Mountain Highlands' remaining 2003 claims, the Court will grant the motion and dismiss the three remaining 2003 claims.

## FACTUAL BACKGROUND

This motion involves the sufficiency of evidence of several claims. Resolution of the motion requires placing the new evidence in the relevant context. Although the Court has already sketched out the facts in an earlier opinion, it will reiterate them here, given the nature of the motion.

In 2003, [Defendant] Magnolia Mountain [Limited Partnership] foreclosed its mortgage on the Ski Rio property, which the Ski Rio Partners owned. Magnolia

Mountain obtained a default judgment against Ski Rio Partners and conducted an auction of the Ski Rio property, which Magnolia Mountain purchased. Mountain Highlands and the Defendants had been engaged in negotiations about Mountain Highlands' buying Magnolia Mountain's interest in the Ski Rio property since early 2003, ultimately resulting in a Purchase Agreement and the sale of the Ski Rio property to Mountain Highlands. After the sale was complete, Ski Rio Partners filed a Notice of Lis Pendens for the Ski Rio property and sought to have the default judgment set aside.

The primary factual disputes relevant to this motion concern whether Defendant David Hendricks, principal of Magnolia Mountain, had knowledge about "underhanded" practices used against Ski Rio Partners in the foreclosure, and whether he failed to disclose to Mountain Highlands those tactics and the reaction they provoked from John Lau, a principal of Ski Rio Partners. An additional relevant issue is whether Hendricks made representations to Mountain Highlands about the commercial viability of the Ski Rio property during the negotiation of the Purchase Agreement. Both of these areas contain genuine disputes of material fact.

First, there is evidence that Hendricks representations' to Mountain Highlands regarding both the title and the commercial viability of the Ski Rio property were inaccurate. Lawrence Smith, who negotiated the purchase of the Ski Rio property on behalf of Mountain Highlands, testified that Hendricks told Mountain Highlands that "everything was supposed to be clean and green and ready to rock-and-roll," . . . Vol. I, Deposition of Lawrence Smith at 207:14-16 (taken October 23, 2008)(Doc. 58-8)("[I] Smith Depo."), that the title was clean, and that "the property is worth more money because you can proceed on development tomorrow," id. at 208:13-14. These statements occurred in the context of what Smith believed -- although he was not completely certain about the full scope of discussions -- were talks about Mountain Highlands' development plans. See id. at 208:22-209:7.

Second, there is some evidence that Hendricks did not inform Mountain Highlands that the Defendants were pursuing aggressive foreclosure tactics that Lau was not pleased with. Hendricks testified at his deposition that he was aware that Lau was, at a minimum, not pleased with the foreclosure and that Lau considered the Defendants' actions "very unfair." . . . Deposition of David Hendricks at 275:6-16 (taken October 24, 2008)(Doc. 64-3)("Hendricks Depo."). Robert M. Janes, the Vice President of Shepard's Group, Inc., the entity serving as managing member of Mountain Highlands, stated that Hendricks told him that Ski Rio Partners did not know what the foreclosure was about. See Affidavit of Robert M. Janes ¶ 4, at 2 (executed August 28, 2008)(Doc. 64-2)("Janes Aff."). Lau similarly testified at his deposition that the first he probably learned of the foreclosure was when he was told that the Defendants had acquired the Ski Rio property. See . . . Deposition of John Lau at 56:10-17 (taken July 21, 2004)(Doc. 58-14)("Lau Depo."). Hendricks testified that the first time he told someone at Ski Rio Partners that he had foreclosed

their interest in the Ski Rio property was on July 8, 2003.  <u>See</u> Hendricks Depo. at 218:25-219:4.  The Defendants maintain that Lau was aware that the Defendants were foreclosing on the property.  <u>See</u> Lau Depo. at 62:19-22.

Memorandum Opinion and Order at 2-4, entered February 13, 2009 (Doc. 78)("MOO").

## PROCEDURAL BACKGROUND

In an earlier opinion, the Court dismissed one of Mountain Highlands' 2003 claims -- for breach of the covenant of good faith and fair dealing -- but found genuine disputes of material fact regarding the remaining three 2003 claims, for fraud, breach of warranty, and prima-facie tort. <u>See</u> MOO at 4-5.  In particular, the Court found that the fraud claim was supported with evidence of misrepresentations and omissions regarding the economic viability of the Ski Rio property Mountain Highlands was buying. <u>See</u> <u>id.</u> at 6.  The Court found evidence of a duty to disclose based upon the Defendants having superior knowledge.  <u>See</u> <u>id.</u> at 9-10.  Additionally, the Court found that, so long as the fraud claim was viable, the breach of warranty claim was viable, and that the prima-facie tort could proceed for the present as an alternative theory.  <u>See</u> <u>id.</u> at 16, 19.

Now the Defendants ask the Court to reconsider its earlier decision and dismiss the remaining 2003 claims.  The Defendants contend that, b ased upon Smith's testimony at a deposition on February 17, 2009, shortly after the Court's opinion was entered, there is no evidence that the alleged misrepresentations involve commercial viability, as opposed to clear title.  <u>See</u> Motion at 5-6.  Additionally, the Defendants maintain that Smith's testimony establishes that Mountain Highlands was aware of Lau's reaction to foreclosure, meaning that the Defendants did not have superior knowledge, vitiating any duty to disclose on the facts of this case.  <u>See</u> <u>id.</u> at 6-7.

In response, Mountain Highlands contends that the Defendants' arguments ignore those portions of the record and Smith's testimony that create factual issues.  According to Mountain Highlands, Smith's testimony includes statements that support the contention that Mountain

Highlands' was told the Ski Rio property was immediately commercially viable.  See Plaintiff's Response the Defendants' Motion to Reconsider Memorandum Opinion and Order Document #78 at 2-3, filed March 20, 2009 (Doc. 92)("Response").  Additionally, Mountain Highlands argues that, at best, the Defendants have shown that Mountain Highlands had some information on one aspect of the transaction, but that a genuine issue remains whether Mountain Highlands was on equal footing with the Defendants.  See id. at 3-6.

In reply, the Defendants contend that Mountain Highlands has switched its theory from the Complaint's allegations, and that this new theory is invalid and lacks evidentiary support.  See Reply in Support of Motion for Reconsideration of Document #78 at 5, filed April 10, 2009 (Doc. 97).  Next, the Defendants argue that the only knowledge that Mountain Highlands says it did not have involved the Ski Rio Partners being upset, but that this information is the information that Mountain Highlands was given.  See id. at 6.  Finally, the Defendants contend that Smith's deposition reveals that the only potential alleged misrepresentations about commercial viability involve a seller's "'laudatory expressions'" at most and not factual representations, and that, moreover, any factual representations were true.  Id. at 8 (quoting Berrendo Irrigated Farms Co. v. Jacobs, 23 N.M. 290, 301, 168 P. 483 (1917)).

At the hearing, Donald Walcott, the Defendants' counsel, reiterated that he believed the evidence now showed that Smith learned about Ski Rio Partners being upset over notice in the foreclosure process after a telephone call with Ski Rio Partners, and that Smith conveyed this information to Mountain Highlands and spoke with Hendricks about it.  See Transcript of Hearing at 58:5-60:23 (taken June 5, 2009)(Walcott).[1]  Steven Scholl, Mountain Highlands' attorney, argued

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

that the evidence showed that Hendricks has concealed information beyond Ski Rio Partners' being

upset about notice issues.  He asserted that Hendricks also concealed that the Defendants were

continuing negotiations with Ski Rio Partners, making them believe that they would still work with

them, and that there were delays that also upset Ski Rio Partners.  See id. at 63:1-64:22 (Court &

Scholl).

<u>**ANALYSIS**</u>

All of the 2003 claims are ultimately dependent upon the existence of undisclosed

information.  Without any relevant and material undisclosed information, there is no evidence to

support fraud, to save the breach of warranty claim, or to support a prima-facie tort.  Although the

Court agrees that there remains a dispute whether any representations of commercial viability were

made, Smith's deposition testimony now reveals that there was no undisclosed information.  That

fact undermines all the 2003 claims.

**I.    THERE IS EVIDENCE THAT THE DEFENDANTS REPRESENTED TO MOUNTAIN HIGHLANDS THAT THE SKI RIO PROPERTY WAS <u>IMMEDIATELY ECONOMICALLY OR COMMERCIALLY VIABLE</u>.**

When the Court previously found a genuine issue of material fact regarding whether there

was a misrepresentation about commercial or economic viability, it did so on the basis of testimony

from Smith.  See MOO at 7.  The Defendants attempt to eliminate any issue of material fact with

testimony from a new deposition of Smith.  This approach is inherently difficult, because it will not

necessarily erase the evidence which the Court has already found sufficient to create a triable issue.

As a general rule, it is difficult to, by adding more evidence, eliminate a genuine issue of material

fact that already is present from preexisting conflicting evidence.  And given the new testimony

presented to the Court, the Court concludes that this scenario helps illustrate the general rule.

Smith's new testimony is more favorable to the Defendants' position, but it does not nullify the

evidence on which the Court has already found a genuine factual dispute.

At the February 17, 2009 deposition, Smith was asked about his conversation with Hendricks on July 8, 2003. He was asked: "Was there something different about the property that made it more shovel ready on July 8th, 2003, than it was on June 4th, 2003, other than the fact that the redemption period expired?" Exhibit 1 to Motion, Deposition of Lawrence Smith, Vol. II at 288:12-15 (taken February 17, 2008)(Doc. 87-2)("II Smith Depo."). Smith responded: "I don't recall." Id. at 288:16. He was also asked whether there was anything other than the expiration of the redemption period that led to a price increase between the pre-foreclosure sale price and the post-redemption expiration price. Again, Smith said that he could not "recall anything right now." Id. at 297:21. When pressed about whether "it's just the expiration of the redemption period and the completion of the foreclosure sale, that was the reason for the change in price," Smith said: "I'm not saying it is just that. That's all I recall right now." Id. at 298:20-24.

Based on this exchange, the Defendants argue that the only relevant evidence of representations that Hendricks made to Smith about the property relate to the expiration of the redemption period, which is a title issue. Smith does not, however, say that he was not told anything else. Instead, he says that he cannot remember. Lack of memory would be a problem for Mountain Highlands if this were the only testimony Smith had given. Smith, however, had already been deposed once before the February 17, 2009 deposition. And at that earlier deposition he displayed a better memory, making statements that the Court found created a genuine factual issue. As the Court wrote in its earlier opinion on this topic:

> Smith testified that Hendricks told Mountain Highlands that "everything was supposed to be clean and green and ready to rock-and-roll," [Deposition of Lawrence Smith, Vol.I] at 207:14-16 [(taken October 23, 2008)(Doc. 58-8)], that the title was clean, and that "the property is worth more money because you can proceed on development tomorrow," id. at 208:13-14. These statements occurred in the context

of what Smith believed -- although he was not completely certain about the full scope of discussions -- were talks about Mountain Highlands' development plans. See id. at 208:22-209:7. While some of these alleged representations concerned title, a fair inference can be drawn from them that Hendricks also stated that the Ski Rio property would be ready for Mountain Highlands' development purposes. In light of the evidence of omissions, there is a disputed issue of material fact whether misrepresentations were made.

MOO at 7.

The new deposition testimony that Mountain Highlands cites does not wipe out Smith's earlier testimony and it does not undermine the Court's holding. If Smith cannot remember any details other than the redemption period's expiration anymore, then it might not bode well for his persuasiveness at trial, but it does not change the fact that there is evidence in the record supporting the view that Mountain Highlands advances. Jurors might be unconvinced, but the Court's role is more restrained here. Smith's later lack of memory does not cancel out his earlier comments. While this latest testimony might make it more persuasive that any representations Hendricks made were about title issues, such as the end of the redemption period, Smith's statements at the latest deposition that he could not recall anything other than the redemption period ending which made the property ready does not rule out the possibility that there were other representations about non-title issues. His earlier testimony fills in that gap. Taking all reasonable inferences in Mountain Highlands' favor, as the Court must here, the Court remains persuaded that, "[w]hile some of these alleged representations concerned title, a fair inference can be drawn from them that Hendricks also stated that the Ski Rio property would be ready for Mountain Highlands' development purposes." MOO at 7.

The Defendants make several arguments that, even if there were evidence of a representation of viability, such a representation is not actionable. The Court will address one of these contentions, which is persuasive and which ultimately undermines not only the

misrepresentation theory but all of Mountain Highlands' 2003 claims: that there is no evidence that any material information was not disclosed to Mountain Highlands.

## II.     THERE IS NO EVIDENCE TO SUPPORT A CLAIM THAT THE DEFENDANTS' CONCEALED MATERIAL INFORMATION.

The Defendants challenge Mountain Highlands' fraudulent concealment theory and its underlying factual foundation: whether the Defendants in fact possessed information that was not disclosed to Mountain Highlands.  Mountain Highlands' contentions regarding concealed information are relevant for two reasons.  As the Court has already noted, Mountain Highlands' misrepresentation and fraudulent concealment theories work in tandem.  See MOO at 6.  Although they are intertwined, there are separate issues involved.  The fraudulent-concealment theory can potentially stand alone on the grounds that the Defendants failed to disclose material information. This approach, however, requires the Defendants to have had a duty to disclose such information, which in turn, in this case, depends upon them possessing superior knowledge.  See id. at 10-11. The omission issue is also tied up with the misrepresentation theory.  For Mountain Highlands to have a claim for fraud based upon a misrepresentation about economic viability, there must not only be a representation regarding viability, but that representation must, of course, be a mis-representation and one upon which Mountain Highlands could have reasonably relied.  In this case, any power to mislead in a representation about viability will be because of non-disclosed information about Lau's reaction to the foreclosure.  Moreover, if Mountain Highlands was aware of the information about Lau, then Mountain Highlands could not reasonably rely upon a representation about commercial viability and then later bring a fraud claim when the only information contrary to commercial viability was information Mountain Highlands knew.  All these legal issues are thus ultimately dependent upon a single factual issue for the purposes of this motion.

-8-

If, as the Defendants contend, Lau's reaction was disclosed to Mountain Highlands, then both the fraudulent concealment and misrepresentation theories fail. Fraudulent concealment could not work here both because there would be no concealment and because the disclosure would place all the parties on a level field, eliminating the superior knowledge necessary to create a duty to disclose. Misrepresentation could not work because the disclosure would deprive the alleged representations of any power to mislead and would render any reliance unreasonable.

The Court previously found that there was a genuine issue of material fact on the disclosure issue, reasoning that

> Hendricks testified at his deposition that he was aware that Lau was, at a minimum, not pleased with the foreclosure and that Lau considered the Defendants' actions "very unfair." Hendricks Depo. at 275:6-16. Janes' affidavit indicates that Lau was unaware why there was a foreclosure against the Ski Rio property, see Janes Aff. ¶ 4, at 2, as do portions of Lau's deposition testimony, but not others, compare Lau Depo. at 56:10-17 (stating that Lau did not know of foreclosure until after sale), with id. at 62:19-22 (stating that Lau was aware the Defendants were foreclosing on interest).

MOO at 6-7. In addition, the Court stated, in considering whether Mountain Highlands waived its claim for fraud rather than in the context of the disclosure issue, that there was evidence, based upon Janes' affidavit, "that Mountain Highlands did not fully learn about the Defendants actions' in the foreclosure on the Ski Rio property until the discovery in this case." MOO at 12. The Defendants contend that Smith's recent testimony establishes that Mountain Highlands was informed about Lau's displeasure over the foreclosure. The Court reproduces in their entirety the portions of the deposition to which the Defendants cite.

> Q. During this time period that you were acting as the go-between or the water boy with these parties, did you ever have conversations with Mr. Hendricks when he talked to you about any concerns he had with the foreclosure action that was pending against Mr. Lau and Ski Rio Partners?
>
> A. We had conversations regarding the redemption period. We had conversations

regarding notices to John La[u], Ski Rio.

Q. What do you remember about conversations you had with Mr. Hendricks about notices to John Lau and Ski Rio?

A. I had expressed a concern and Mitch Brown and the buyers had expressed concern that all of the notices were properly given.

Q. And did you raise those concerns with Mr. Hendricks?

A. Yes, I did.

Q. What did he tell you about that?

A. He said that he had checked with his attorneys, and all notices were properly given.

II Smith Depo. at 274:4-24.

Q. Before the closing, though, of the deal between David Hendricks and Mountain Highlands, did Mr. Hendricks ever come to you and say anything that suggested he was aware that Mr. Lau was upset or had any kind of problems with the way the foreclose [had] gone?

A. No.  I think we had one conversation that I can recall that I believe was around one of John Lau's guys calling me and kind of going off about the notice and saying, "We didn't get notice.  We were told we had time, and we didn't get notice."  I know David and I - I addressed that.  I said, "You know, I've gotten word that they are not happy with the notice."  He said, "I'll check it out."  He came back and said, "We gave proper notice."

Q. Do you know when that was?

A. I honestly couldn't recall.

Q. Do you recall if it was before or after closing?

A. Before.

Q. Before closing?

A. Yes.

Id. at 275:22-276:17.

-10-

Q. Okay.  And then at some point, prior -- you testified just a little bit ago that you had a conversation with David Hendricks prior to closing when you talked about the notices because of -- and your concern was because of somebody at Ski Rio Partners going off about the notices; right?

A. That's right.

Q. Was that George Wollmann that you talked to at Ski Rio Partners?

A. Yes, it was.

Q. What do you recall George Wollmann said in that conversation?

A. His comments were, "We were not given notice.  We were told we had more time."  That's the general gist of it.

Id. at 300:5-19.

Q. Okay.  Then you got the impression from your conversation with George Wollmann that he was upset?

A. No.  I got the impression that he and John Lau were both upset.

Q. Both he and John Lau were upset at that point?

A. Yes.

Q. Then you had a conversation with David Hendricks after that?

A. Yes.

Q. And that's prior to closing on this sale?

A. Yes.

Q. And you're asking David, "Look" – telling him, "I had this conversation.  These guys are upset.  They don't think they got notices.  Did you give them all the notices they needed?"

A. Yes.

Q. He said yes?

A. Yes.

Q. Came back to you and said yes?

A. Correct.

Q. Do you recall, did you relay all of this information to Mitch Brown?

A. My recollection is that I had discussions with Shepherd, Mitch and with David over the conversation.

Q. And in your prior deposition, you indicated everyone was concerned with the prior owner, meaning everyone was concerned with Ski Rio Partners; right?

A. Yes.

Q. This was a topic of conversation prior to closing?

A. Yes.

Id. at 303:8-304:13.

Smith's testimony indicates that he was aware -- not from Hendricks, but from other sources, specifically Ski Rio Partners itself -- that Ski Rio Partners was upset over not getting notice about the foreclosure. Although Hendricks was not the origin of this information, Smith discussed the issue with Hendricks. Hendricks, after consulting with attorneys, assured Smith that proper notice had been given. After learning from Ski Rio Partners that they were upset over notices, Smith also conveyed that information to Brown at Mountain Highlands. Thus, Smith's new testimony shows that he, Mountain Highlands, and Hendricks were all aware about Ski Rio Partners being upset over the way the foreclosure was happening, and were also all aware that each other knew this fact. Unless Mountain Highlands is able to point to some contradictory evidence, there is no basis for finding that material information was concealed from Mountain Highlands.[2]

---

[2] Unlike whether there was a representation about commercial viability, this scenario demonstrates how more evidence can reverse a denial of summary judgment. Instead of attempting to eliminate a conflict between pieces of evidence, on this issue the Defendants are presenting evidence on an issue that heretofore was largely a blank spot. See MOO at 6 (noting that the Defendants did not, for the most part, significantly challenge Mountain Highlands' non-disclosure theory in their initial motion and statement of undisputed facts).

In its Response, Mountain Highlands contends that the new evidence fails to show that Mountain Highlands was aware that Lau "had repeatedly contacted Defendants to complain about the 'morally unfair' way they had handled the entire foreclosure process." Response at 4. Mountain Highlands makes several other references to repeated complaints. Most of these references are without citation to any supporting evidence in the record. The deposition testimony that Mountain Highlands cites once in its briefing does not mention any repeated complaints. It only reveals that Hendricks talked with Lau on July 8, 2003 and that Lau, hearing about the foreclosure, was "not happy," although Hendricks did not "think he was mad." Hendricks Depo. at 275:11-13. Hendricks then acknowledges that Lau said the foreclosure was "very unfair and morally unfair." Id. at 275:14-15. Reviewing the remainder of the excerpt of Hendricks' deposition -- which is attached to Mountain Highlands' earlier response, although not specifically cited in that response or in the present Response -- also fails to reveal any indication of repeated complaints from Lau or any evidence of "Mr. Lau repeatedly reviling" the Defendants' conduct. Response at 5.

During the hearing, Mr. Scholl made a more expansive argument about what was being concealed, referring to deceitful negotiations and delays. None of these contentions, which are contentions about the evidence, were made in the briefing and nothing has been submitted to the Court in support of these contentions. Although it is a party's obligation to adduce evidence and to point the Court to anything in the record they wish the Court to consider, the Court has nonetheless independently reviewed the exhibits attached to the various briefs for this motion, the briefing on the earlier Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2003 Claims, filed December 16, 2008 (Doc. 57), and the briefing on the Counterclaimants' Motion for Partial Summary Judgment for Monies Due, filed December 12, 2008 (Doc. 55). After conducting this inquiry, the Court was unable to find any evidence supporting Mountain Highlands'

-13-

contentions about the Defendants not disclosing other material information.  During the earlier motion for summary judgment, the issue was whether the Defendants disclosed their "underhanded practices" in the foreclosure.  MOO at 2 (internal quotation marks omitted).  The closest the record comes to providing evidence of underhanded tactics, however, is Lau's reaction.  This was the conclusion the Court reached in its earlier consideration of the record, and nothing has been introduced to make that record more favorable to Mountain Highlands.  The only new information cuts the other way, showing that Mountain Highlands was aware of the lone information that the record reveals was not disclosed.  There is thus, in the record, no evidence that Mountain Highlands engaged in any particular tactics which needed to be disclosed.

Although Mountain Highlands has not pointed out this piece of evidence, its best case seems to lie with Janes' affidavit, which might, at first glance, be construed to create a genuine issue of material fact.  In his affidavit, Janes asserts that Mountain Highlands was not made aware of all the details surrounding the foreclosure until discovery in this litigation.  See Janes Aff. ¶ 19, at 4-5. Janes contends that Mountain Highlands was not aware "that Defendants had duped" the Ski Rio Partners into not contesting foreclosure and that it was not "until years later" that Mountain Highlands "began to realize what Defendants had actually done." Id.  These statements seem to indicate that the Defendants failed to disclose material information.  These statements, however, are wholly conclusory, making only vague accusations of impropriety.  Nowhere in the affidavit or elsewhere in the record is it revealed "what Defendants had actually done."  The only indication of anything improper or anything that might need to be disclosed is, as the Court held previously, Lau's reaction.  Mountain Highlands, however, was aware that Lau and Ski Rio Partners were not happy about the foreclosure or the notice they received.

Thus, Mountain Highlands is left with, at most, the slim assertion that the Defendants did

-14-

not disclose Lau's "emotional tone."  Response at 6.  Assuming that a failure to disclose emotional tone is a sufficient basis for a claim of fraud, there is no indication in the record, however, of any negative emotional tone that was not disclosed.  Instead, the only evidence -- as opposed to argument of counsel -- is that Lau was "not happy," although Hendricks did  not "think he was mad."  Hendricks Depo. at 275:11-13.  And Smith, from his conversation with Ski Rio Partners, was aware that they were "upset."  II Smith Depo. at 302:20-303:13.

The only basis on which the Court previously found a possible factual dispute was whether the Defendants concealed Lau's reaction to the foreclosure.  See MOO at 5-8.  Smith's new testimony reveals that he was, however, aware of Lau's -- and Wollman's -- displeasure before the sale between Mountain Highlands and the Defendants was completed, that he communicated this information to Mountain Highlands, and that he discussed the matter with Hendricks.  There is no new evidence of any other potentially material concealed facts.  Given Smith's conversations, Mountain Highlands was in as good a situation as the Defendants were regarding how Ski Rio Partners was reacting.  Without some contrary evidence, there is nothing to support a fraud claim based on either misrepresentation or fraudulent concealment.

Mountain Highlands' fraudulent concealment theory depends upon the Defendants having concealed material information about Ski Rio Partners.  Because Mountain Highlands was aware of the supposedly concealed information and discussed that information with Hendricks, there is no undisclosed information to support a claim.  Moreover, an omission is actionable as fraud only if the defendant had a duty to disclose.  Here, the only basis for such a duty is superior knowledge, but the new deposition testimony reveals that the Defendants did not have superior knowledge and thus did not have any duty to disclose regardless.  See MOO at 9-10; Krupiak v. Payton, 90 N.M. 252, 253, 561 P.2d 1345, 1346 (1977).

-15-

Mountain Highlands' misrepresentation theory also fails in light of its knowledge about the Ski Rio Partners' reaction to the foreclosure.  There are several ways to view why there can be no fraud here.  Mountain Highlands' knowledge might be considered to make the statements about viability not misleading, to make the statements not material, or to make reliance unreasonable. New Mexico cases have not discussed this particular issue much, but it appears that reliance is the best lens through which to view the issue.  A person is justified in relying on a misrepresentation, and "has no duty to make inquiries or examination of the misrepresentation, <u>unless</u> he had knowledge of his own or of facts which should arouse suspicion and cast doubt upon the truth of the statement made."   <u>Gaston v. Hartzell</u>, 89 N.M. 217, 219, 549 P.2d 632, 634 (Ct. App. 1976)(emphasis added).   Other courts have also reached similar conclusions.  <u>See</u>, <u>e.g.</u>, <u>Chicago Export Packing Co. v. Teledyne Industries, Inc.</u>, 207 Ill.App.3d 659, 663 566 N.E.2d 326, 329 (Ill. App.)("A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another."); <u>Goff v. American Sav. Ass'n of Kansas</u>, 1 Kan.App.2d 75, 81, 561 P.2d 897, 903 (1977)(holding that plaintiff could not bring fraud claim when he had been aware of actual facts supposedly misrepresented).  Indeed, it is a basic principle of tort law that "[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him."  <u>Restatement (Second) of Torts</u> § 541 (1977).  Mountain Highlands had not just knowledge of facts that might arouse suspicion, it had actual knowledge of the facts that it contends made the Defendants' representations false before it completed its transaction with the Defendants.  This actual knowledge makes any reliance upon the alleged misrepresentation unreasonable and makes a fraud claim unsustainable.

-16-

**III.    THE LACK OF EVIDENCE OF UNDISCLOSED INFORMATION REQUIRES DISMISSAL OF THE NON-FRAUD CLAIMS AS WELL.**

As the Court previously held, Mountain Highlands' breach-of-warranty claim is dependent upon its fraud claim.  If the fraud claim is viable, then the warranty disclaimers and integration clause in the written contract will not defeat Mountain Highlands' claim of an oral warranty. See MOO at 15-16.  If the fraud claim is not viable, however, then Mountain Highlands' warranty claim will also fail.  Because the Court now finds that there is no evidence to support a fraud claim arising out of the 2003 events, the Court will also dismiss the breach-of-warranty claim.

With these rulings, the only remaining issue is Mountain Highlands' claim for prima-facie tort.  Although this claim receives minimal attention in the Defendants' motion, they ask the Court to dismiss that claim as well, on the same grounds that they ask the other claims be dismissed: that there is no undisclosed information to support a claim that they did anything wrong.  The Court agrees.

"Prima-facie tort is a doctrine of last resort."  MOO at 18.  It serves to provide a cause of action for conduct that might otherwise fall through the gaps between different causes of action. The Court previously found a genuine dispute of material fact regarding the factual basis for the prima-facie tort claim, which is the same as for the other 2003 claims, namely a failure to disclose information.  See id. at 18-19.  This basis is no longer available.  Although prima-facie tort is an alternative cause of action, it still must have some factual support.  Here, without any undisclosed information, the Court does not see any lawful action which Mountain Highlands can reasonably contend injured it.  In sum, based upon the new testimony from Smith, the Court does not see any evidentiary support for Mountain Highlands' remaining three claims, for fraud, breach of warranty, and prima-facie-tort, that arise from events in 2003.

**IT IS ORDERED** that the Defendants' Motion to Reconsider Memorandum Opinion and Order Document #78 is granted.


_____
UNITED STATES DISTRICT JUDGE




Counsel:

Steven S. Scholl
Dave M. Wesner
Dixon Scholl & Bailey, P.A.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff/Counterdefendant*

Charles V. Henry, IV
Donald A. Walcott
Charlotte Hetherington
Scheuer, Yost, & Patterson, P.C.
Santa Fe, New Mexico

     *Attorneys for the Defendants/Counterclaimants*