# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN HIGHLANDS, LLC,
an Oregon Limited Liability Company,

        Plaintiff/Counterdefendant,

vs.                                        No. CIV 08-0239 JB/ACT

DAVID HENDRICKS, and MAGNOLIA
MOUNTAIN LIMITED PARTNERSHIP,
a Texas limited partnership,

        Defendants/Counterclaimants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Second Motion to Reconsider Grant of Partial Summary Judgment on 2007 Claims, with Points and Authorities, filed May 1, 2009 (Doc. 101)("Plaintiff's Motion"); and (ii) the Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2007 Claims, filed June 5, 2009 (Doc. 107)("Defendants' Motion"). The Court held a hearing on June 5, 2009 on the Plaintiff's Motion, and a hearing on June 18, 2009 on the Defendants' Motion. The primary issues are: (i) whether the Court should allow Plaintiff Mountain Highlands LLC's claims arising out of the 2007 bankruptcy proceedings to go forward based upon either of the theories that the Court has previously dismissed; (ii) whether the Court should allow Mountain Highlands to proceed on its 2007 claims based upon a theory it articulated during a hearing on a motion to reconsider; and (iii) whether the statements of the Honorable James Starzynski, Chief United States Bankruptcy Judge for the District of New Mexico,[1] at a bankruptcy hearing, are inadmissible hearsay. Because the Court continues to conclude that there is no evidence

---

[1] During the times in question here, Chief Judge Starzynski had not yet been elevated to the chief judgeship of the Bankruptcy Court.

supporting Mountain Highlands' theories that the Defendants' actions caused Chief Judge Starzynski to deny Mountain Highlands' Plan for Reorganization ("Plan"), the Court will not reverse its earlier opinions on those claims. Because Mountain Highlands' latest theory, that the Defendants' objection to a proposed sale during the bankruptcy proceedings resulted in Mountain Highlands reaching an unfavorable deal with Signature Capital Funding, Inc., is mentioned in the Complaint and supported with evidence, the Court will allow that theory to proceed in tort, although not on a claim for breach of the covenant of good faith and fair dealing. Finally, with respect to whether Chief Judge Starzynski's transcribed statements are inadmissible hearsay, the Court concludes that the statements are admissible under the residual exception to the rule against hearsay.

## PROCEDURAL BACKGROUND

On September 3, 2008, the Defendants filed a motion for summary judgment targeting what the Court and the parties have called the 2007 claims. See Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2007 Claims (Doc. 19). Finding "insufficient evidence that any action attributable to the Defendants led to the" failure of Mountain Highlands' plan for reorganization in bankruptcy "either directly or by causing Signature Capital Funding, Inc. to continue with its objection to the Plan," the Court granted the motion and dismissed the claims. Memorandum Opinion and Order at 1, entered November 17, 2008 (Doc. 51)("November 17, 2008 MOO"). Subsequently, on December 8, 2008, Mountain Highlands filed its Motion to Reconsider Grant of Partial Summary Judgment With Points and Authorities. See Doc. 53.

On February 3, 2009, the Court conducted a hearing on the motion to reconsider. During the hearing, Steven Scholl, Mountain Highlands' attorney "contended that the Defendants breached the Exchange Agreement, placing Mountain Highlands, who had relied on the agreement, in a bargaining disadvantage over the Motion to Sell." Memorandum Opinion and Order at 8, entered

February 5, 2009 (Doc. 75)(citing Transcript of Hearing at 18:5-7, 26:21-29:4 (Court & Scholl)(taken February 3, 2009))("February 5, 2009 MOO").  The Court observed that

> [t]his cause of action does appear to avoid the problem of circling back to the denial of the Plan. This particular issue was not briefed -- either in the present motion or in the original motion for summary judgment -- and the Court does not understand its grant of partial summary judgment to extend to such a claim. The Court also does not, however, express any opinion at this point whether Mountain Highlands' Complaint pleads such a theory or whether this theory is supported with sufficient evidence.

February 5, 2009 MOO at 8-9.

Also during the February 3, 2009 hearing, Mountain Highlands questioned -- for the first time -- whether Chief Judge Starzynski's statements were admissible.  After the hearing, but before the Court's opinion was entered, Mr. Scholl sent a letter to the Court, addressing his comments at the hearing questioning the admissibility of the transcript of Judge Starzynski's statements and asking to be allowed to submit supplemental briefing on the hearsay question.  See Letter from Steven Scholl to the Court at 1-2, dated February 4, 2009, filed February 11, 2009 (Doc. 76).  The Court did not see the letter until after entering its opinion.  See Order at 1, entered February 13, 2009 (Doc. 79)("February 13, 2009 Order") On February 13, 2009, the Court held a conference to discuss the letter and ultimately ruled that,

> if Mountain Highlands desires to change its position on whether the Court can consider Judge Starzynski's statements, after two motions and two hearings, and after the Court has written two memorandum opinions, it should move formally rather than submit supplemental briefing on what is now a decided motion.  While the Court does not routinely require formal proceedings to bring matters to its attention, the proposed change in Mountain Highlands' position is so significant that the Court needs complete briefing on the subject.  If Mountain Highlands moves to reconsider, it should brief legally the issue, including the availability of the residual exception.  See Fed. R. Evid. 807.  The Court would also like the parties to explore whether the Court could use Judge Starzynski's statements if he had written them in an opinion or order.  The Court would also like the parties to consider the statement by the Honorable Judge Minor Wisdom, United States Circuit Judge, in Dallas County v. Commercial Union Assur. Co., 286 F.2d 388, 397 (5th Cir. 1961), that

"[t]here is no procedural canon against the exercise of common sense in deciding the admissibility of hearsay evidence."  The parties should explain whether it makes sense to exclude Judge Starzynski's statements, even if they are hearsay.

See February 13, 2009 Order at 1-2 (footnote omitted).

The Defendants then asked the Court to reconsider this February decision.  See Motion to Reconsider Memorandum Opinion and Order Document #75, filed February 27, 2009 (Doc. 85).  The Court denied the motion, but allowed the Defendants to file a motion for summary judgment out of time, to "place the issue squarely before the Court about whether any of the 2007 claims should survive at this point."  Memorandum Opinion and Order at 3, entered June 22, 2009 (Doc. 117)("June 22, 2009 MOO").  Now Mountain Highlands moves the Court again to reconsider its initial dismissal of the 2007 claims, while the Defendants have moved for summary judgment on Mountain Highlands' third potential theory for the 2007 claims.

1.    **Mountain Highlands' Motion.**

Mountain Highlands' motion is devoted to the admissibility of Judge Starzynski's statement.  Mountain Highlands contends that, without those statements, genuine issues of material fact should preclude the dismissal of the claims.  According to Mountain Highlands, the Defendants seek to use Judge Starzynski's statements for the truth of his statements, making them hearsay and not within in any exception.  See Plaintiff's Motion at 8-9.  Rule 807's residual exception does not apply, Mountain Highlands argues, because the statements resulted from an "unexpected, one-sided and irrelevant" discussion with the Defendants' counsel.  Plaintiff's Motion at 13.  Mountain Highlands also contends that, if Chief Judge Starzynski's statements were in a written opinion, they would remain hearsay.  See id. at 15-16.  Mountain Highlands further contends that excluding the statements is appropriate and comports with common sense because of their untrustworthiness as evidence.  See id. at 17-24.  Finally, Mountain Highlands asserts that it does not need to  rely on

Chief Judge Starzynski's statements to support its 2007 claims but that the Defendants require those statements to get summary judgment.  See id. at 25-27.

In response, the Defendants point out that the Court's grant of summary judgment was based not just upon Chief Judge Starzynski's statements, but upon a lack of any evidence supporting Mountain Highlands' theory how the Defendants helped cause the denial of the Plan.  See Response to Plaintiff's Second Motion to Reconsider Grant of Partial Summary Judgment at 2-3, filed May 18, 2009 (Doc. 103)("Response").  The Defendants argue that none of the evidence on which Mountain Highlands relies, including several affidavits, provide evidentiary support for Mountain Highlands' claims.  See id. at 3-5.  The Defendants also contend that Chief Judge Starzynski's comments may be considered because they were not elicited by the Defendants' counsel and because Mountain Highlands' counsel was present at the hearing.  See id. at 6-11.  They also maintain that Chief Judge Starzynski's oral comments are consistent with his memorandum opinion denying Mountain Highlands' plan.  See id. at 11-12.

In reply, Mountain Highlands contends that the Defendants' briefing largely ignores the legal analysis regarding whether Chief Judge Starzynski's statements are hearsay.  See Plaintiff's Reply in Support of its Second Motion to Reconsider Grant of Partial Summary Judgment on 2007 Claims at 2-6, filed June 2, 2009 (Doc. 105)("Reply").  Mountain Highlands maintains that the Court granted summary judgment "largely, if not entirely, because of" those comments.  Id. at 7.  Lastly, Mountain Highlands argues that the Defendants are asking the Court to weigh the credibility of various witnesses and that genuine issues of material fact require the 2007 claims to proceed to a jury.  See id. at 7-11.

At the June 5, 2009 hearing, the Court asked Mr. Scholl to address how it was that he could prove that Chief Judge Starzynski denied the Plan without relying on Chief Judge Staryznski's

statements and without engaging in sheer speculation.  Mr. Scholl contended that Mountain Highlands' experts provided reasoned explanations of what a bankruptcy judge might have done differently.  See Transcript of Hearing at 30:3-6, 39:4-25 (Scholl)(taken June 5, 2009).[2]  Mr. Scholl asserted that such opinions were acceptable, similar to experts offering opinions in a legal malpractice case on what would have happened in court proceedings had a lawyer done something different.  See id. at 40:17-42:9 (Court & Scholl).

      **2.**      **The Defendants' Motion.**

In response to the Court's invitation, the Defendants move for summary judgment, asking that the Court dismiss all of Mountain Highlands' 2007 claims.  They contend that it would be highly prejudicial to allow Mountain Highlands to assert a new theory at this time, after the close of discovery and after extensive motion practice, and that it is unclear what claims Mountain Highlands is bringing.  See Defendants' Motion at 2-3.  They also contend that there is no evidence that Signature Capital ever changed its bargaining position.  See id. at 3.

In response, Mountain Highlands first criticizes the Defendants for the form of their motion and contends that Mountain Highlands' claims are plainly stated in the Complaint.  See Response to Motion for Partial Summary Judgment Regarding Plaintiff's 2007 Claims at 3-4, filed June 12, 2009 (Doc. 112)("MSJ Response").  Mountain Highlands then quotes several pages of its Complaint, contending that its claims do not depend upon the denial of the Plan.  See MSJ Response at 4-9.  Next, Mountain Highlands briefly notes that it has attached affidavits that it contends provide sufficient support for its claims.  See id. at 9.  Mountain Highlands then surveys New Mexico contract and tort law.  See id. at 10-16.  Finally, Mountain Highlands contends that any prejudice

---

      [2] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain different page and/or line numbers.

to the Defendants stems from their own litigation tactics.  See id. at 16-17.

In reply, the Defendants note that their motion for summary judgment incorporated their earlier motions against the 2007 claims.  See Reply in Support of Defendants' Motion for Partial Summary Judgment at 2-3, filed June 17, 2009 (Doc. 113)("MSJ Reply").  They focus on the new affidavits Mountain Highlands has offered and argue that the affidavits are conclusory, false, and otherwise flawed.  See id. at 4-9.  Lastly, they contend that Mountain Highlands' damages are speculative because the damages are contingent on ongoing litigation Mountain Highlands has brought to recover what it paid to Signature Capital and that it has no real damages because it paid Signature Capital less than the amount owed.  See id. at 9-10.

At the hearing on June 18, 2009, David Walcott, the Defendants' attorney, argued that Mountain Highlands had failed to state a cause of action because the Exchange Agreement did not impose any legal duties on the Defendants that they could have violated and that any damages were speculative.  See Transcript of Hearing at 5:16-6:17 (Walcott)(taken June 18, 2009).  Mr. Scholl emphasized that the weakening of Mountain Highlands' bargaining position with Signature Capital had nothing to do with the denial of the Plan.  See id. at 22:11-23:5, 27:4-28:1 (Scholl).  Mr. Walcott argued that there was no evidence, only speculation, about Signature Capital changing its bargaining with Mountain Highlands.  See id. at 29:1-30:9 (Walcott).

## ANALYSIS

The Court is consolidating the two outstanding motions regarding Mountain Highlands' 2007 claims.  As to the first motion, the Plaintiff's Motion, the Court continues to find no evidence supporting the theory that the Defendants' contributed to the denial of the Plan.  Although the bulk of this motion focuses on the admissibility of Chief Judge Starzynski's comments, for the Court to reverse its earlier holding, Mountain Highlands must present evidence in support of its claims, which

it has failed to do.  With respect to the second motion, in which the Defendants ask the Court to hold

that an alternative theory for the 2007 claims is not part of the case, the Court finds that the theory

is pled in the Complaint and supported with evidence, but that there is no basis for Mountain

Highlands proceeding with a claim for breach of the covenant of good faith and fair dealing.

Instead, Mountain Highlands will be allowed to proceed only in tort.  Because there will thus be

2007 claims going to trial, it is a possibility that one of the parties will seek to use Chief Judge

Starzynski's statements at trial.  The Court will therefore address their admissibility at this time and

hold that such statements fall within the scope of rule 807's exception.

**I.     THE COURT CONTINUES TO FIND THAT THERE IS NO EVIDENCE
SUPPORTING THE THEORY THAT THE DEFENDANTS CAUSED CHIEF JUDGE
<u>STARZYNSKI TO REJECT THE PLAN.</u>**

Mountain Highlands characterizes the Court's granting summary judgment as being based

"largely, if not entirely," on Chief Judge Starzynski's statements.  Reply at 7.  That understanding

is incorrect.  In the Court's original opinion granting summary judgment, the Court first discussed

Chief Judge Starzynski's statements, but then considered whether Mountain Highlands had offered

evidence in support of its theory about Chief Judge Starzynski not being fully apprised of the

situation.  <u>See</u> November 17, 2008 MOO at 10-15.  On the other hand, after discussing Chief Judge

Starzynski's comments, the Court closed that topic by stating that "Mountain Highlands also seems

to acknowledge that their original position is untenable in light of Judge Starzynski's statements,"

and that Mountain Highlands said "that its claim is better understood as being that Judge Starzynski

was not apprised of all the facts when he made his decision -- specifically, that he did not know that

Signature Capital was prepared to withdraw its objection until the Defendants' raised their own

objection."  November 17, 2008 MOO at 12.  The Court then addressed Mountain Highlands' "new

theory . . . that Judge Starzynski was not misled but rather was unaware of certain key

developments." Id. at 13.  This new theory was "that Signature Capital was planning to withdraw its objection to the Plan," when "the Defendants' unexpected objection caused them to reconsider." Id.   It was in the context of this new theory that the Court considered the affidavits Mountain Highlands submitted, but ultimately held that Mountain Highlands' theory "finds no support in the record that would allow it to survive summary judgment."   Id.   The upshot is that the Court's consideration whether Mountain Highlands had evidence supporting its claim was limited to an alternative theory, while the Court dismissed Mountain Highlands' initial theory because of Chief Judge Starzynski's comments.

In ruling on Mountain Highlands' first motion to reconsider, the Court retraced this ground. It also discussed the expert statements of Paul Fish and George Moore, observing that both rested on the flawed assumption that Signature Capital's objection would have been withdrawn.  See February 5, 2009 MOO at 6.  Again, however, the Court did not specifically discuss the affidavits with respect to Mountain Highlands' initial theory that the Defendants' actions directly influenced Chief Judge Starzynski's denial of the Plan.

While the Court does not believe that it has weighed evidence in determining that there was no genuine issue of material fact whether Chief Judge Starzynski denied the Plan because of something the Defendants did, the Court did not perhaps fully address whether Mountain Highlands' first theory was supported with evidence.  Some of these omissions are the product of Mountain Highlands relying mainly on the Court's earlier opinion on a motion to dismiss, see Memorandum Opinion and Order at 49-50, entered August 29, 2008 (Doc. 17)("August 29, 2008 MOO"), which held that Chief Judge Starzynski's opinion disclaiming having been influenced by recent actions did not require dismissal of the 2007 claims, see id.  Since that motion to dismiss, the parties and the Court have focused largely on whether Chief Judge Starzynski's comments and opinion ruled out

the possibility that the Defendants contributed to the Plain's failure.  That approach is flawed because it tends to ignore whether there is evidence supporting Mountain Highlands' claims. Instead of parsing Chief Judge Starzynski's statements, the better approach is to see if there is any evidence contradicting those statements and supporting Mountain Highlands' claims.  For the first time, then, the issue is directly presented to the Court whether there is evidence supporting Mountain Highlands' theory that the Defendants' objection or other actions caused Chief Judge Starzynski to reject the Plan.  In resolving this issue, the Court will put aside Chief Judge Starzynski's statements. Putting those statements aside, however, does not help Mountain Highlands.  There is no evidence supporting the theory that the Defendants caused Chief Judge Starzynski to reject the Plan.

Before addressing this initial theory which the Court has not fully analyzed to date, however, the Court will address the first alternative theory that was raised during the initial motion for summary judgment.  On this theory, that the Defendants influenced Signature Capital into not withdrawing its objection, thereby causing Chief Judge Starzynski to deny the Plan, the Court continues to find, as it has twice before, that there is no supporting evidence in the record.  Nothing in the record indicates that Signature Capital was about to withdraw its objection to the Plan but changed its mind upon learning about the Defendants' stance.

Turning to the initial theory, the evidence that Mountain Highlands advances in support of its claims consists of expert statements.  At the hearing, Mr. Scholl referred the Court to Fish's and Moore's affidavits.  In his affidavit, Fish makes a straightforward assertion that, in Fish's opinion, "had Magnolia Mountain L.P. consented to the Plan for Reorganization . . . a competent Bankruptcy Judge would have confirmed the Plan for Reorganization."  Affidavit of Paul M. Fish ¶ 2, at 1, filed November 5, 2008 (Doc. 45)("Fish Aff.").  Standing alone, this statement is somewhat conclusory, but if otherwise acceptable would provide evidence to defeat summary judgment.  This assertion is

-10-

a summation of Fish's expert report, however, and so cannot stand alone.  Fish states that the basis

for this conclusion is explained in his report.  See id. ¶ 3, at 1-2.  This report is the same report that,

as the Court has noted before, relies upon a hypothetical scenario that the evidence in this case does

not support.  See February 5, 2009 MOO at 5-6.  Fish assumes that Signature Capital would have

withdrawn its objection, but Signature Capital did not, and, as the Court has repeatedly noted,

Mountain Highlands, despite ample opportunity, has never come forward with any evidence that the

Defendants had anything to do with Signature Capital standing firm with its objection.  See id.  The

report, however, also has a more serious flaw.

The basic conclusion of Fish's expert report is that, had Defendant Magnolia Mountain

Limited Partnership not objected to incorporating the sale of the Ski Rio property into the Plan, then

a plan would have incorporated that sale and been approved by the Bankruptcy Court.  See Letter

from Paul Fish to Steven Scholl at 5-8,  filed November 5, 2008 (Doc. 45)("Fish's Report").

Although assuming that Signature Capital was going to withdraw its objections, Fish later states that,

even if Signature Capital objected, "a competent bankruptcy court would have confirmed the plan

over any objection."  Id. at 7.  This statement tends to alleviate some of the problem with the

hypothetical situation assumed in the report, but does not remedy a more serious flaw.

The problem with Fish's analysis is that he concludes that the Bankruptcy Court would have

approved a plan incorporating the sale of the Ski Rio property.  No such plan was apparently ever

considered directly.  Chief Judge Starzynski rejected a plan for reorganization that did not include

the proposed sale.  What can be learned from Fish's report is that, were it not for the Defendants,

a new plan could have been presented to Chief Judge Starzynski and approved.  Mountain

Highlands, however, apparently never took the step of attempting to present such a plan.  There is

no evidence about it  in the record, Fish's report indicates that it is a hypothetical plan that should

have been approved, and the pleadings in the Complaint indicate that it is the denial of the Plan --

that is to say, the original plan that did not include the sale of the Ski Rio property -- over which

Mountain Highlands is aggrieved.  Fish's report, however, does not conclude that the denial of the

Plan was the product of the Defendants' actions with respect to the Motion to Sell.  By pointing to

Fish's report, Mountain Highlands apparently wishes the Court to approve a claim involving a plan

that it never presented to the Bankruptcy Court, with or without the Defendants' backing.  In effect,

Mountain Highlands is attempting to recover damages for the denial of a plan of reorganization that

was never denied, on the grounds that had Mountain Highlands presented the plan, the Defendants'

actions would have wrongly ensured its failure.  Even if a cause of action can be based on such

speculation, the Complaint does not plead such a claim.  Mountain Highlands seeks damages for the

denial of the Plan on December 14, 2007.  Fish's report does not support that theory.

Moore's report is similarly deficient, as the Court has noted before.  Moore's report relies

even more heavily upon Signature Capital withdrawing its objection.  See Statement of George M.

Moore Pursuant to F.R.Civ.P. 26(a)(2)(B) ¶ (i), at 1, filed November 5, 2008 (Doc. 46).  Unlike

Fish's report, however, Moore makes no statement whether, without Signature Capital withdrawing

its objection, the Plan would have failed. Because the Defendants cannot be held responsible for

Signature Capital not withdrawing its objection, Moore's report does not support the theory that the

Defendants caused Chief Judge Starzynski to deny the Plan.

Ultimately, none of the evidence Mountain Highlands adduced supports the idea that the

Defendants' actions factored into Chief Judge Starzynski's denying the Plan on December 14, 2007.

The Court will therefore, once again, not change its earlier grant of summary judgment on this

theory. This result does not depend upon Chief Judge Starzynski's comments, but upon the failure

of Mountain Highlands to present any evidence to support its claim.  Once the Defendants have

made a prima-facie showing, Mountain Highlands bears the burden on summary judgment of producing evidence showing a genuine dispute of fact.  Even without Chief Judge Starzynski's oral comments, the Defendants are able to carry their burden of assembling a prima facie case because of Chief Judge Starzynski's order, which disclaims being influenced by the events on which Mountain Highlands relies.  That order is not sufficient to defeat contrary allegations on a motion to dismiss, as the Court has previously held, see  August 29, 2008 MOO at 49-50, but on summary judgment, that order requires Mountain Highlands to rebut with evidence and not rest on its pleadings.  Because Mountain Highlands has once again failed to carry its burden in this respect, the Court will not reverse its earlier decision.

II.     **MOUNTAIN HIGHLANDS' THEORY THAT THE DEFENDANTS' OBJECTION TO THE SALE OF THE SKI RIO PROPERTY REDUCED THEIR LEVERAGE WITH SIGNATURE CAPITAL IS IN THE COMPLAINT AND SUPPORTED WITH EVIDENCE.**

Mountain Highlands has articulated a third theory involving the 2007 claims, one which potentially avoids the problem of being dependent upon the denial of the Plan.  The Court has held that its earlier grant of summary judgment does not extend to this theory, but also did not say whether the Complaint or the record supported that theory.   After the Defendants moved to reconsider that decision, the Court denied reconsideration, holding that the better approach was "to directly address whether Mountain Highlands' new theory is a feasible one" by allowing the Defendants to file a new motion for summary judgment. June 22, 2009 MOO at 3.  The Defendants have taken up the Court's offer.

A.     **THE COURT SHOULD KEEP DISTINCT AND SEPARATE THE RECONSIDERATION OF THE MOTION FOR SUMMARY JUDGMENT AND WHETHER THERE IS UNDUE PREJUDICE IN ALLOWING THE 2007 CLAIMS.**

Mountain Highlands contends that it has three causes of action arising out of the 2007

-13-

bankruptcy proceedings: (i) for breach of the covenant of good faith and fair dealing; (ii) for interference with prospective economic advantage; and (iii) for prima-facie tort.  Mountain Highlands quotes its Complaint for four pages, asserting that its 2007 claims do not depend upon the Plan.  See MSJ Response at 4-8.  It does not highlight which particular allegations avoid this problem, although that direction would be useful because a number of the quoted paragraphs expressly depend upon the Plan and its rejection.  Nor does Mountain Highlands later, when discussing the law regarding the causes of action it is pleading, explain which facts support which causes.  Despite these deficiencies, the Court finds that the claims  for interference with prospective economic advantage and for prima-facie tort may proceed.

A threshold issue that must be addressed is whether allowing the claims to proceed, even if they are otherwise legally viable, would be unfairly prejudicial to the Defendants.  As the Court will explain more thoroughly below when examining the individual causes of action, the Complaint alleges, at least for the tort claims, that the Defendants harmed Mountain Highlands because the objection to the Motion to Sell resulted in Mountain Highlands paying more to Signature Capital.  Thus, although the progress of this case has tended to obscure issues, the Complaint contains some allegations giving notice of the theory Mountain Highlands is now espousing.  And while the issues emphasized during the motion practice in this case were not the ones now being raised, the Court has found that the Defendants' original motion for summary judgment did not cover the theory now at issue.  See February 5, 2009 MOO at 7-11.  The Court left open whether the Complaint pled that theory or whether the evidence supported it.  Given that the Court has found that the first motion for summary judgment was insufficient to cover the theory now in question and given that the theory is, for some causes of action, pled in the Complaint, the Court does not find sufficient prejudice here to cut off any otherwise viable claims.  This situation is unlike one in which a party has affirmatively

given up a particular position.  See Pedroza v. Lomas Auto Mall, Inc., 2009 WL 1562748 at *18-19 (D.N.M.)(Browning, J.).  Although the Defendants contend that they will need additional discovery, particularly of Signature Capital, to rebut these contentions, the claims were partially pled in the Complaint and the Defendants have had notice of the possibility of those claims since at least February 5, 2009, when the Court held that its grant of summary judgment did not extend to the theory now at issue.  The Defendants could have used the intervening time to seek further discovery on this issue.[3]

### B.   THE COURT WILL DISMISS THE CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

On the merits of the causes of action, the Court will begin with the claim for breach of the covenant of good faith and fair dealing.  This claim fails because of the lack of an underlying contract and also because of its reliance upon the Plan.  With respect to the 2007 claims, Mountain Highlands contends that the Defendants breached the covenant of good faith and fair dealing in the Exchange Agreement.  See Complaint ¶¶ 82-86, at 17.  The Exchange Agreement, however, was subject to the Bankruptcy Court's approval and the approval of the Plan.  See Exhibit B to Complaint, Exchange Agreement ¶ 21, at 4 (Doc. 1-10).  Without the Plan being approved, the Exchange Agreement would not have taken effect.  And without a contract to generate it, there would be no covenant of good faith that the Defendants could breach.  See WXI/Z Sw. Malls v. Mueller ¶ 25, 137 N.M. 343, 350, 110 P.3d 1080, 1087 (Ct.App. 2005)("Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract.").  If the Defendants engineered the failure of the

---

[3] In any case, the remedy is not to dismiss Mountain Highlands' claim, but to consider any request for additional discovery.  The Defendants have not made such a request, and the Court offers no opinion here whether it would grant such a request.

Plan, then Mountain Highlands might have an argument that the Defendants should not be allowed to avoid a contract whose failure they caused.  See Restatement (Second) of Contracts § 255, at 291 (1981)(stating that a non-occurrence of a condition is excused when repudiation materially contributes to the failure of the condition).  There is no evidence, however, to support the Defendants causing Judge Starzynski to reject the Plan, as the Court has explained.  Any alleged repudiation did not materially contribute to the failure of the condition.

Potentially, the Exchange Agreement's condition of court approval might not be fatal to the existence of a more limited agreement.  Although Mountain Highlands has not pressed this issue, it could be that some form of promissory estoppel might be raised.  Even if that were a possibility, however, the covenant claim would still fail because no cause of action for promissory estoppel is in the Complaint and because, moreover, this cause of action is tied to the Plan regardless.

Mountain Highlands' pleading contains two separate theories about the covenant.  The first theory is that the Defendants refused to comply with the Exchange Agreement to cause the Plan to fail.  As the Court has noted, there is no evidence the Defendants caused the Plan to fail.  The second theory is a variation of the first, stating that the Defendants intended their objections to cause the Plan to fail as a means of escaping from the Exchange Agreement.  Again, there is no evidence to support this theory.

Mountain Highlands' arguments that the claim for breach of the covenant covers the theory that the Defendants weakened Mountain Highlands' bargaining position is not apparent in the Complaint.  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Mountain Highlands incorporates all the preceding paragraphs into the cause of action for breach of the covenant, the Complaint must still "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)(internal quotation marks omitted).  There is a difference between simply re-alleging the same facts over and over, and giving notice of the claims those facts are meant to support.  While someone could construct this theory based upon the Complaint, no one reading the Complaint would assume that Mountain Highlands was raising such a claim.  Mountain Highlands needs to explain what it is that the Defendants are supposed to have done wrong.  A defendant should not need to comb through a complaint, imagining every potential cause of action those allegations might support. Instead, a plaintiff should explain what the alleged wrong is.  The obligation on the plaintiff is not a difficult task.  Mountain Highlands has shown it is capable of doing it.  Count IV expressly lays out two theories of harm, each in a succinct paragraph.  Neither of the theories that are pled in the Complaint, however, find support in the record.

**C.   THE COURT WILL NOT DISMISS THE CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS.**

Turning to the claim for interference with prospective economic relations, the Court concludes that the claim may go forward.[4]  The Complaint pleads a theory that tracks the one Mountain Highlands now urges.  Paragraph 72 of the Complaint alleges that the "Defendants orchestrated an objection to Plaintiff's sale of the Ski Rio property associated assets at a time and in a manner wrongfully designed to threaten Plaintiff's sale, with the intention of usurping a portion of the sale proceeds to which Defendants were not entitled."  Complaint ¶ 72, at 15.

_____

[4] This tort is known by several slightly different labels.  It is has been referred to in New Mexico cases as interference with prospective economic relations, see Key v. Chrysler Motors Corp., 121 N.M. 764, 772, 918 P.2d 350, 358 (1996), with prospective contractual relations, see Zarr v. Washington Tru Solutions, LLC ¶ 6, 208 P.3d 919, 921 (N.M. Ct. App. 2009), and with prospective economic advantage, see Murken v. Deutsche Morgan Grenfell, Inc. ¶ 7, 140 N.M. 68, 71, 139 P.3d 864, 867 (Ct. App. 2006).

New Mexico recognizes a tort for interference with prospective contractual relations.  See M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. 449, 452, 612 P.2d 241, 244 (Ct. App. 1980).  M & M Rental Tools, Inc. v. Milchem, Inc. adopted the Restatement (Second) of Tort's basic definition of interference:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. at 453, 612 P.2d at 245 (quoting Restatement (Second) of Torts § 766B).  Evidence of either improper means or improper motive can support improper interference.  See Zarr v. Washington Tru Solutions, LLC ¶ 6, 208 P.3d 919, 921 (N.M. Ct. App. 2009).  Recently, the New Mexico Court of Appeals held that, although sole motive to harm was required if a plaintiff sought to proceed under an improper-motive theory, see id. at *3, such a showing was not necessary under an improper-means theory, see id. at *2.  "What may qualify as 'improper means' depends to some degree on context and can include, but is not limited to predatory behavior, violence, threats or intimidation, deceit or misrepresentation, bribery, economic pressure, unfounded litigation, defamation, unlawful conduct, and perhaps violation of business ethics and customs."  Id.

There is evidence in the record that at least superficially supports the Defendants' actions reducing Mountain Highlands' bargaining power with Signature Capital.  Mountain Highlands has submitted two nearly identical affidavits from Robert Janes and Moore.  Moore says that he is both a fact witness and an expert witness for this case.  See Affidavit of George M. Moore ¶ 2, at 1, filed

June 12, 2009 (Doc. 112-3)("Moore Aff."). Moore states that Signature Capital being the only objector to the Plan gave him leverage in negotiating with Signature Capital, see Moore Aff. ¶¶ 12, 22, at 3, 4, and that Magnolia Mountain's "objection to the sale, threats to withdraw support for the Plan and repudiate the Exchange Agreement immediately stripped [him] of [his] bargaining position with respect to Signature," Moore Aff. ¶ 27, at 5. According to Moore, absent Magnolia Mountain's objection, the sale would have been approved during a preliminary hearing. See id. ¶ 31, at 5. Instead a final hearing was set for January 2008 and the prospective buyers expressed their displeasure at the plan not being approved and "indicated they might walk away from the purchase." Id. ¶¶ 32-33, at 5-6. Moore states that the objection to the sale, as well as the threat to withdraw support for the Plan and repudiation of the Exchange Agreement, deprived Mountain Highlands of its leverage in negotiations with Signature Capital, see Moore Aff. ¶ 34, at 6, and strengthened Signature Capital's position, see id. ¶ 36, at 6. This loss of bargaining power arose because Hendricks, who was not a party in the bankruptcy, owned land that was part of the Exchange Agreement and which was subject to the proposed sale. Without the Defendants' consent, the sale could not be forced through in the bankruptcy court because the court had no power over Hendricks. See Moore Aff. ¶ 38, at 6. As a result, Moore states: "Mountain Highlands was forced to acquiesce to Signature's demand for payment in full of its entire claimed amount in order for the sale to go through as planned." Id. ¶ 39, at 7. Janes' affidavit is almost identical in every material respect.

　　　Both affidavits make a number of references to the Plan providing leverage. There remains, however, no evidence that the Defendants actually jeopardized the Plan or caused its denial. Yet there are sufficient indications in the affidavits that, in addition to the Plan, the Defendants' objection to the Motion to Sell, which was separate from the Plan, weakened Mountain Highlands' bargaining posture. On the surface, those statements provide evidence that the Defendants' position

on the sale of the Ski Rio property deprived Mountain Highlands of leverage.

The primary challenge the Defendants raise to the evidence is that the new affidavits Mountain Highlands has submitted are insufficient to show that Mountain Highlands had any bargaining leverage over Signature Capital from the beginning and whether the Defendants' actions reduced that leverage. The Court disagrees. Despite flaws in the affidavits, the Court finds that the affidavits are sufficient to create a genuine dispute of material fact.

The Defendants argue that one problem with the affidavits is that the affiants lack personal knowledge about what Signature Capital would do. They are able, however, to comment on Signature Capital's behavior in negotiations.[5]  Intent and thoughts are often proved with indirect evidence and not with a declaration from the person in question what he or she was thinking. It may be difficult for Mountain Highlands to prove its case to a jury without testimony from people at Signature Capital and it would probably have made life easier for the Court had Mountain Highlands conducted depositions on which Mountain Highlands could rely in opposing summary judgment, but Mountain Highlands is not required to take these steps. Mountain Highlands must only create a genuine issue of material fact to defeat summary judgment.

The Defendants also criticize the affidavits as being false or conclusory. The affidavits state that Mountain Highlands believed it lost leverage based upon how the negotiations played out, and also indicate that, after approval of the sale was postponed, the buyers threatened to walk away. The affidavits present a plausible theory about loss of bargaining power, and indicate that Mountain Highlands observed a change in negotiations that fits with the time line of events in the affidavits

---

[5] At least Moore is able to do so. It is unclear whether Janes has personal knowledge of some of these events, but Moore's affidavit indicates that he was personally negotiating with Signature Capital. See Moore Aff. ¶ 20, at 4.

and the theory about loss of bargaining power.  Although the affidavits contain several references to bankruptcy proceedings, without citation to any transcripts, Moore at least, who was an attorney for Mountain Highlands during the proceedings, can report his observations of the Defendants and the Defendants' attorneys actions in the proceedings.  His observations might be in tension to some degree with the transcript, but the Court does not believe they can be fairly characterized as outright false.  The Court agrees with the Defendants that there are, as the Court has noted, many statements in Moore's affidavit relating to the Plan providing leverage or other events that the Court does not see as supporting a cause of action.  There are also a number of statements that border on the conclusory.  In the end, however, there are several statements that can support the claim that the Defendants' objection to the sale resulted in Mountain Highlands losing ground in its dealings with Signature Capital.

At the hearing, the Defendants also pressed the idea that causing someone to lose bargaining leverage does not state a cause of action.  This argument is probably best understood, in the context of interference with prospective economic relations, as going to improper means.  There is at least some evidence supporting a showing of improper means.  Between the Defendants' rather general argument and Mountain Highlands' not indicating how it believes the facts fit within the confines of the tort, the Court is somewhat hampered in analyzing this question.  Nonetheless, it appears that, based upon the affidavits, Mountain Highlands is relying heavily upon the Exchange Agreement. Given the failure of a condition of that agreement, this presents some problems for Mountain Highlands.  Even if the contract failed, however, Mountain Highlands might be able to show that it reasonably relied on the agreement requiring the Defendants to exchange properties for the purpose of negotiation.  There could be a basis for a limited promissory estoppel even if the Exchange Agreement itself ultimately failed because of a condition.  Promissory estoppel requires:

(1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

Magnolia Mountain Ltd., Partnership v. Ski Rio Partners, Ltd. ¶ 25, 139 N.M. 288, 295-96, 131 P.3d 675, 682-83 (Ct. App. 2005)(quoting Strata Prod. Co. v. Mercury Exploration Co., 121 N.M. 622, 628, 916 P.2d 822, 828 (1996)).   The Exchange Agreement required an exchange of property, it appears that the Defendants were aware of the negotiations and the proposed sale, and it is possible that, in bargaining with Signature Capital, Mountain Highlands might have reasonably relied on that agreement to some extent, even though the overall contract remained subject to conditions.  Neither side has directly discussed this possibility, so it is difficult for the Court to say one way or the other, but there appears to be some basis for this scenario in the record.  This theory has problems.  It is hard to see what Mountain Highlands' change in position was.  While it would have liked to complete the sale on favorable terms that limited what it had to pay to Signature Capital, Mountain Highlands never had to give up anything it had in hand.  Improper means, however, does not require a violation of an independently actionable legal duty.  Instead, improper means is a more nebulous concept, and the Court cannot rule out that a jury could find that the Defendants' objection violated a business norm or custom.  See Zarr v. Washington Tru Solutions, LLC ¶ 11, 208 P.3d at 921 (noting that violation of business customs could support a finding of improper means).  There is also a timing problem, although again the Court finds that the problem is not sufficient to require summary judgment.  There was limited time between the Defendants' objection and the denial of the Plan.  Once the Plan was denied and it was clear that the Defendants had no obligations under the Exchange Agreement, it becomes very difficult to see how the Defendants' objection can be

viewed as improper means.  On the other hand, the affidavits indicate that Mountain Highlands believed that, absent the objection, the sale could have been approved at the preliminary hearing on November 26, 2007, which was before the denial of the Plan.  Despite the compressed time frame, there is thus some evidence that, before the Plan was rejected, Mountain Highlands might have been able to close the sale on favorable terms while the Defendants were still arguably under some duty, either of estoppel or a more general sense of fairness in business, to go along with the sale.

Another argument the Defendants raise is that Mountain Highlands has no damages, because ultimately it had to pay slightly less than what Signature Capital was legally due.  The Defendants cite no authority for this proposition, and the Court does not see a legal obstacle to Mountain Highlands being able to show damages.  While Signature Capital may have been able to collect the full amounts due to it, people and companies can negotiate to discharge debts for less.  Bankruptcy of course helps facilitate these processes.  Signature Capital's legal entitlements may make Mountain Highlands' case a harder sell to a jury, but Mountain Highlands' argument that it could have had an agreement with Signature Capital to settle for less is not implausible.  The difference between what Signature Capital was owed and what Mountain Highlands can show it would have had to pay absent the Defendants' actions is a legitimate measure of damages.[6]

The Defendants also argue that any damages are speculative because Mountain Highlands

_____

[6] On the subject of damages, the affidavits Mountain Highlands has submitted assert a number of different damages flowing from the Defendants' actions.  Many of these damages claims in the affidavit are inconsistent with the evidence in this case.  The only theory that is pled in the Complaint and supported by the record is that the Defendants' actions reduced Mountain Highlands' bargaining power, causing them to pay more to Signature Capital than it would have had to pay absent the objections to the sale.  If successful at trial, Mountain Highlands could thus recover for the difference in those amounts, but it appears that it could not recover for other damages mentioned in the affidavits, such as for failure of the Plan or for the Exchange Agreement not being performed.

has brought claims against Signature Capital in an effort to recover the money Mountain Highlands paid.  Ongoing litigation of this nature will not render damages speculative.  Mountain Highlands has paid money to Signature Capital.  There is no speculation about that fact or about the money it had to pay.  What is speculation is whether Mountain Highlands might receive an award in either this case or the case against Signature Capital, or in both.  That issue is a matter of double recovery and not of speculative damages.  Double recovery is not allowed in New Mexico.  See Hood v. Fulkerson, 102 N.M. 677, 680, 699 P.2d 608, 611 (1985).  Mountain Highlands has yet to recover anything in either case, and the ban on double recovery can be dealt with when and if it becomes an issue.

### D.   THE COURT WILL NOT DISMISS THE PRIMA-FACIE TORT CLAIM.

Mountain Highlands' final potential cause of action is for prima-facie tort.  The parties did not devote much attention to this count, either at the hearing or in the briefing.  Mountain Highlands gives a summary of the law in is briefing, see Response at 14-16, but does not explain how that law applies to this case.  The Defendants' briefing does not even mention the phrase prima-facie tort. From what the Court can discern, however, the prima-facie tort claim is viable for now.

To prove a prima-facie tort, a plaintiff must prove:

1. That defendant intentionally [did some act] [failed to act];

2. That defendant intended that the [act] [failure to act] would cause harm to the plaintiff or that defendant knew with certainty that the [act] [failure to act] would cause harm to the plaintiff;

3. That the defendant's [act] [failure to act] was a cause of plaintiff's harm; and

4. That defendant's conduct was not justifiable under all the circumstances.

Civ. UJI 13-1631, NMRA (brackets in original).  What Mountain Highlands will need to prove for prima-facie tort is similar to what it must prove for interference with prospective contractual

-24-

relations. This similarity means that the same evidence supporting its other claim will also suffice for prima-facie tort. Mountain Highlands has presented evidence that the Defendants' objection to the sale resulted in a loss of bargaining power, leading to Mountain Highlands paying more to Signature Capital than Mountain Highlands would have had to pay otherwise. The intent element is a heavy burden, and the Court does not see any evidence of a deliberate intent to harm, but there is evidence that the Defendants were aware of the negotiations. From this evidence, it would be reasonable to infer to they acted with an awareness of the effect the objection would have on negotiations. Prima-facie tort labors under a strict standard, requiring proof that a defendant "knew with certainty that" an act or omission "would cause harm to the plaintiff." Civ. UJI 13-1631, NMRA (emphasis added). This heightened standard, however, will largely affect jury deliberations. The Court's role is primarily to decide if there is a genuine issue of material fact. See Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591 JB/RHS, Memorandum Opinion and Order at 7, entered June 1, 2009 (Doc. 465)(finding that, although fraud must be proven with clear and convincing evidence, a court's role is primarily determining whether a genuine dispute of material fact exists). The other potential difficulty with the claim is that the Defendants' actions must be unjustifiable. For the same reasons that the Court believes that a jury may find improper means on the interference claim, however, it appears that a jury would be able to find unjustifiable conduct.

Prima-facie tort is a doctrine of last resort, and the Court has held that the same facts underlying the prima-facie tort support a cause of action for interference with prospective economic relations. As the Court has held previously, when a prima-facie tort claim depends upon the same supporting facts as another tort, the appropriate action is to allow the claims to proceed, but to submit only one of the claims to a jury. See Memorandum Opinion and Order at 16-19, entered February 13, 2009 (Doc. 78). Accordingly, although the Court will allow the prima-facie tort claim

-25-

to proceed at this time, it will not submit both the interference claim and the prima-facie tort claim to a jury.[7]

## III.   THE TRANSCRIPT OF CHIEF JUDGE STARZYNSKI'S COMMENTS ON THE RECORD IS ADMISSIBLE EVIDENCE.

In determining whether any of the 2007 claims may go forward, the Court has avoided using Chief Judge Starzynski's statements.  The focus on these statements that has predominated much of this case has tended to obscure the central question: whether there is evidence supporting Mountain Highlands' claims.  The admissibility of these statements, however, may become a trial issue now that the Court is allowing some 2007 claims to go forward.  While the theory on which the Court is allowing the claims to proceed is not as tied up with Chief Judge Starzynski's comments as the theories the Court is rejecting, his comments may nonetheless be important at trial.  Neither side has displayed an interest in trying to get Chief Judge Starzynski to be a witness at trial, making the admissibility of the transcript of the hearing a potentially important issue.

### A.   JUDGES' COMMENTS AT A HEARING ARE CANDIDATES FOR ADMISSION UNDER THE RESIDUAL EXCEPTION.

The Defendants do not dispute that the statements are hearsay.  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to

---

[7] The Defendants also ask for attorney's fees in connection with their motion.  See Reply at 10-12.  They base this request on the Exchange Agreement, which has a clause entitling the prevailing party to recover costs and attorney's fee from litigation over the Exchange Agreement. As the Court has noted before, a request for attorney's fees is usually premature until final judgment is entered.  See February 5, 2009 MOO at 11 n.2; D.N.M.LR-Civ. 54.5(a) (providing that motion for attorney's fees must be filed within thirty days of judgment).  Moreover, the Defendants' position has been, and the Court has held, that a condition of the Exchange Agreement has failed. Finally, a motion for attorney's fees should be accompanied by supporting affidavits and time records.  See D.N.M.LR-Civ. 54.5(a).  In any case, after the Court has entered final judgment, should the Defendants still believe they have a contractual or other basis for fees, they may file a motion in accordance with rule 54.5 of the Local Rules of Civil Procedure.

prove the truth of the matter asserted." Fed. R. Evid. 801(c). The statements are not sworn testimony, and the Defendants want to use the statements for the purpose of showing that what Chief Judge Starzynski said about why he denied the Plan was true. Nor do the statements easily fit within the contours of any of the codified exceptions to the hearsay rule. The primary question is therefore whether the statements fall within the residual exception.

Under the residual exception to the hearsay rule, a court may admit a hearsay statement that is not covered by one of the specific exceptions in rule 803 or rule 804 if the statement has "circumstantial guarantees of trustworthiness" equivalent to those two rules and

> the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807. Use of the residual exception to admit hearsay is only for "extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice." United States v. Tome, 61 F.3d 1446, 1452 (10th Cir. 1995)(internal quotation marks omitted). The Court asked that Mountain Highlands, if it wished the Court to exclude any reliance on Chief Judge Starzynski's statements, address several issues, including the residual exception. It is the exception that governs whether the Court can admit the evidence, so that is the ultimate question, but the Court's inquiry will also be guided by the other issues that the Court identified in its earlier order: (i) what the result would be if the statements were in a written opinion or order; and (ii) Judge Wisdom's observation that the ban on hearsay is not a rule against common sense.

Beginning with the general requirements of rule 807, two of the requirements are readily met here. While the purpose of the Court's present examination is more general than whether Chief

Judge Starzynski's statements can be admitted to show why he denied the Plan, at least some of the statements are likely to go to a "material fact." Fed. R. Evid. 807.  And given that the statements concern the reasons for Chief Judge Starzynski's actions, it is hard to imagine better evidence than what the judge himself has had to say on the topic.  The question turns on the resolution of the remaining two elements: (i) whether the statements have sufficient "circumstantial guarantees of trustworthiness"; and (ii) whether the "general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."  Id.

As a general matter, the Court believes that statements made on the record by a sitting judge and then reproduced in a transcript bear guarantees of trustworthiness similar to those in the other hearsay exceptions.  With professional court reporters or recording equipment, there is little chance of error in the actual words used, and while judges are not giving testimony under oath during a hearing, the requirements of judicial oaths of office and the formality of a hearing give a judge's comments similar indicia of trustworthiness to that accompanying testimony under oath.  Also, a judge, if he or she is sitting on a case, does not have a financial interest in the case, and has made a decision that he or she can be fair and impartial.  See 28 U.S.C. § 455(b)(1) (requiring recusal where judge has personal bias or prejudice); id. § 455(b)(4) (requiring recusal where judge or judge's spouse or minor child has financial interest in the controversy).  A judge's statements thus have indicia of reliability similar to those for former testimony under rule 404(b)(1).  Moreover, both counsel and parties appearing before the judge rely upon transcripts of judges' statements and appellate courts rely upon them in their appellate review.  Part of the foundation of our system of justice presumes that a transcript can be trusted and that if a judge gives a reason for doing something the judge is taken at his or her word.  The reason that judge gives may be incorrect or

unreasonable, but that the reason was the basis for a particular action is accepted.[8]

Stepping back, admitting a judge's statements on the record into evidence accords with common sense.  As the parties' conduct in this case highlights, litigants are generally reluctant to depose sitting judges or subpoena them to testify at trial and, furthermore, requiring judges to act as witnesses can interfere with their judicial duties.  Without depositions or live testimony at trial, however, courts will be excluding what may be the best and possibly only evidence unless courts accept judicial statements on the record as admissible evidence.  Necessity has long been viewed as one of the hallmarks of the hearsay exception.  See G. & C. Merriam Co. v. Syndicate Pub. Co., 207 F. 515, 518 (2d Cir. 1913)(discussing how the traditional requisites for exceptions to the hearsay rule are necessity and circumstantial guarantees of trustworthiness).  The working of this principle is embodied in several of the codified hearsay exceptions in the Federal Rules of Evidence, such as the exceptions for ancient documents or dying declarations.  See Fed. R. Evid 803(16), 804(b)(2). The scenario confronting the Court underscores how admitting into evidence judicial statements made on the record is appropriate as a matter of necessity.  If the Court excluded the statements, it would be excluding the most direct evidence of why Chief Judge Starzynski held as he did and would be leaving the question largely to conjecture.

_____

[8] In addressing the Court's question about what the result would be if Chief Judge Starzynski's statements were contained in a written order, Mountain Highlands argues that the comments would be unlikely to appear because they would be unrelated to the subject of the hearing and that, if they did, the result would not change because "[n]o matter how it was packaged" the comments would still be hearsay.  Plaintiff's Motion at 15.  The Court would not be surprised, however, if such comments appeared in a written order.  When deciding whether to dismiss the bankruptcy case, Chief Judge Starzynski might have hypothetically decided to look to the strength of the case being filed in district court.  Moreover, a written order would tend to increase the indicia of reliability.  It seems odd to call a formal court order inadmissible hearsay.  The reason for this oddity is likely because a written order reduces the possibility of error and also because it tends to indicate that the contents of the order are the product of careful reflection on what is included in that order.

These factors lead the Court to conclude that, as a baseline, a judge's statements on the record would fall within the residual exception.  Particular circumstances, however, may pull such statements back out of the exception.  Mountain Highlands' arguments address these matters and can be grouped into three main categories: (i) that Chief Judge Starzynski was not subject to cross-examination; (ii) that the Defendants elicited the statements; and (iii) that the statements involve complex issues of memory and interpretation, rather than straightforward factual observations such as whether or not a fire occurred.

### B. CHIEF JUDGE STARZYNSKI WAS, IN EFFECT, SUBJECT TO SOME QUESTIONING.

One reason that Mountain Highlands contends favors exclusion is that the circumstances surrounding the statements are inherently unfair and indicate untrustworthiness, because the Defendants essentially conducted a deposition of Chief Judge Starzynski by ambush.  According to Mountain Highlands, the questions asked of Chief Judge Starzynski were sudden and unrelated to the hearing, and Mountain Highlands' counsel was deprived of any opportunity to conduct the equivalent of a cross-examination or otherwise probe the statements.  Mountain Highlands argues that these facts undermine the trustworthiness that might otherwise be present when a sitting judge makes statements on the record.

All of the hearsay exceptions that are based upon the existence of previous testimony have a cross-examination requirement.  Rule 804(d)(1) provides for an exception for unavailable witnesses "if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  Fed. R. Evid. 804(b)(1).  Prior statements are exempted from the definition of hearsay, but only where the declarant is subject to cross

examination in the proceeding in which the prior statement is offered.  <u>See</u> Fed. R. Evid. 801(d)(1).
Cross-examination has an important place in the American legal system because it allows a party
to uncover subtleties, distinctions, and contradictions that are not readily apparent in unexamined
statements.  If Chief Judge Starzynski were not subject to what could amount to cross-examination,
that omission would tend to weaken the case for allowing his statements in to evidence.

      The Defendants contend that there is no cross-examination problem because Chief Judge
Starzynski was effectively subject to cross-examination.  According to the Defendants, Mountain
Highlands had counsel at the hearing, and the litigation that Mountain Highlands had brought in this
Court was one of the topics of discussion because Mountain Highlands was advocating the case as
grounds for dismissing the bankruptcy case.  <u>See</u> Response at 9-10.  If this characterization of the
hearing were true, then Chief Judge Starzynski would have been effectively subject to some
questioning -- not cross-examination in the formal sense, but a functional equivalent of examination
because Mountain Highlands' counsel could have probed Chief Judge Starzynski's comments.

      As the transcript of the March 11, 2008 hearing shows, Mr. Moore, an attorney for Mountain
Highlands was present at the hearing.  The relevant discussion begins when the Defendants' counsel
started discussing the Complaint in this case.  Thus, Chief Judge Starzynski's comments were
prompted by the Defendants' statements, and there is no indication that Chief Judge Starzynski
would not have entertained Mountain Highlands' questions.  Mountain Highlands does not clearly
indicate why it could not therefore, in effect, cross-examine Chief Judge Starzynski at the hearing,
but it appears that the arguments are that Mr. Moore did not have a copy of the Complaint in this
case before the hearing and that there was no indication that this topic would be addressed at the
hearing.  The Defendants have provided a copy of an e-mail containing a draft copy of the
Complaint which was sent to gmm11usc@swcp.com, an address that the Defendants represent is

George Moore's.  See Exhibit 1 to Appendix to Response to Plaintiff's Second Motion to Reconsider Grant of Partial Summary Judgment (No. 103), E-mail from Lawrence Smith to various recipients, filed May 20, 2009 (dated February 7, 2008)(Doc. 104).  This communication indicates that Mr. Moore had been sent a version of the Complaint, although it does not indicate that he read it or was prepared to address it during the March bankruptcy hearing.

The primary issue, however, is that, according to Mountain Highlands, neither it nor Mr. Moore were prepared to question Chief Judge Starzynski about his reasons for denying the Plan.  The Defendants counter that the existence of this case was a main issue the parties addressed when briefing whether the bankruptcy case should be dismissed.  Again, it appears to be the case that the parties , although the more narrow and specific issue about the basis of the Plan's denial was not.  From what the Court can tell from the documents provided, it appears that Mountain Highlands had an opportunity to question Chief Judge Staryznski about why he had done what he had done, but did not have any notice or reason to prepare in detail for such an opportunity.

This conclusion weakens somewhat the case for allowing the statements in to evidence.  Chief Judge Starzynski was not subject to cross-examination to the same degree he would have been had the hearing been noticed as a hearing about Chief Judge Starzynski's reasons for rejecting the Plan.  If that notice were given, Mountain Highlands' counsel could have spent time preparing what questions he wanted to ask on that subject.  On the other hand, the Court cannot say that Chief Judge Starzynski was not subject to questioning at all.  Mountain Highlands had counsel present,  issues related to this case in District Court were going to be discussed because of the grounds Mountain Highlands was advancing for dismissal of the bankruptcy case, and when Chief Judge Starzynski, after a comment from the Defendants' counsel, began discussing why he denied the Plan and asserting that the Complaint was wrong, Mountain Highlands' attorney could have asked questions

about that denial, even if the questions would not be as pointed as they would with more preparation. In sum, there is no indication that Chief Judge Starzynski would not have answered Mountain Highlands' questions as he had the Defendants' questions.

### C.   CHIEF JUDGE STARZYNSKI'S COMMENTS WERE NOT ELICITED IN A MANNER THAT MAKES THEM UNTRUSTWORTHY.

Another argument that Mountain Highlands makes is that the Defendants elicited the statements, and that the discussions were jumbled and interrupted by other matters.  While the Defendants' counsel participated in the discussion, it appears to the Court that Chief Judge Starzynski volunteered a significant amount of information.  And the Court does not see anything about the statements that the Defendants' counsel made which might be considered to be leading statements that might have slanted what Chief Judge Starzynski said.  Nor does the Court see the proceedings involving a variety of matters and having been interrupted at one point as being significant.  The Court's review the transcript of the hearing indicate that Chief Judge Starzynski's comments were thought out and lucid and not offhand or made while distracted.  The Court does not see anything from the overall context of the hearing that would deprive the circumstances of the trustworthiness that a formal hearing on the record possesses.

On a related point, the Defendants also argue that the proposition for which the Defendants cite Chief Judge Starzynski's comments was not what he was asked.  Mountain Highlands characterize the questions as involving the Defendants asserting that aspersions were being cast on the conduct of the Defendants' counsel in the bankruptcy, not as involving why the Plan was denied. This argument, however, goes to the weight of the statements if offered as evidence.  The Court is ruling only on the admissibility of such statements and not relying on the statements to reach any of the rulings in this opinion.

**D.      ADMISSION OF THE STATEMENTS IS CONSISTENT WITH <u>DALLAS COUNTY V. COMMERCIAL UNION ASSUR. CO.</u>**

The last principal argument that Mountain Highlands makes, in response to the Court's order that Mountain Highlands address Judge Wisdom's observation that "'[t]here is no procedural canon against the exercise of common sense in deciding the admissibility of hearsay evidence,'" February 13, 2009 Order at 2 (quoting <u>Dallas County v. Commercial Union Assur. Co.</u>, 286 F.2d at 397)(alteration in Order), is that Chief Judge Starzynski's comments involve issues, such as memory and his reasons for his actions, that are too complex and problematic to qualify for the residual exception. <u>Dallas County v. Commercial Union Assur. Co.</u> is the source of Judge Wisdom's aphorism and is also probably one of the most famous examples of admitting hearsay that is outside a traditional exception. While the Court agrees that the situation here differs from <u>Dallas County v. Commercial Union Assur. Co.</u> and that the nature of the comments favors application of the ban on hearsay, the problems with allowing the statements here are problems that are addressed by questioning at Chief Judge Starzynski's hearing, which the Court has already noted was a possibility.

In <u>Dallas County v. Commercial Union Assur. Co.</u>, the clocktower of a courthouse had collapsed one Sunday afternoon, significantly damaging the courthouse. <u>See</u> 286 F.2d at 390. An investigation turned up charred timbers in the fallen tower. Based upon the char and witnesses who reported seeing lightning strike the tower, Dallas County, the courthouse's owner, determined that the tower fell because it had been hit by lightning. <u>See id.</u> Lightning damage was covered under Dallas County's insurance policy, but the insurer found that the tower collapsed under its own weight. <u>See id.</u> To account for the charred timber, one piece of evidence the insurer introduced at trial was an unsigned newspaper article from almost sixty years earlier reporting that a fire had

broken out in the courthouse while it was under construction.  See id. at 390-91.  Despite no formal

exception to the hearsay rule applying, the United States Court of Appeals for the Fifth Circuit

upheld the trial judge's admitting the evidence.  See id. at 397-98.

Mountain Highlands notes that Judge Wisdom rested the decision largely on the

circumstantial trustworthiness of the article -- that it was difficult to fathom why the reporter would

have fabricated a story about a fire at the courthouse.  In particular, Mountain Highlands quotes

Judge Wisdom stating, in reliance on Wigmore on Evidence, that when a statement is "'made under

such conditions of publicity that an error, if it had occurred, would probably have been detected and

corrected,'" that publicity is "enough to serve as a practicable substitute for the ordinary test of

cross-examination."  Dallas County v. Commercial Union Assur. Co., 286 F.2d at 397 (quoting 5

Wigmore, Evidence, § 1422 (3rd ed.)).  Mountain Highlands contrasts the report in the local paper

with the bankruptcy hearing, which it casts as a "*de facto* private setting" in which Mountain

Highlands' lawyers "had no opportunity to detect and correct" errors in the statements, or to "expand

on them with follow-up questions."  Plaintiff's Motion at 19.

This reasoning depends upon the lack of cross-examination or some functional equivalent.

Mountain Highlands had some opportunity for questioning, although not a complete one.  Moreover,

the hearing does have circumstantial guarantees of trustworthiness.  Though not as public as a

newspaper report, the hearing was on the record.  It is hard to imagine what reason Chief Judge

Starzynski might have had for being dishonest or evasive in his statements.  His statements referred

to his own mental states and thought processes.  The statements are consistent with his opinion.

See United States v. Harrison, 296 F.3d 994, 1004 (10th Cir. 2002)(stating that consistency among

different hearsay statements is an indicia of reliability under rule 807).

There are problems with admitting the statements, but these problems are better illustrated

-35-

with Mountain Highlands' second attempt to distinguish <u>Dallas County v. Commercial Union Assur.</u> <u>Co.</u> from this case.  As Mountain Highlands notes, the article in <u>Dallas County v. Commercial Union</u> <u>Assur. Co.</u> was offered to prove a binary proposition -- there either was a fire at the courthouse in 1901 or there was not.  The article was meant to prove a straightforward and objective fact that was likely contemporaneous with the article.  By contrast, Chief Judge Starzynski's statements involved him recalling what he had done several months before and concerned the reasons for his decision.  Such statements implicate, as Mountain Highlands argues, "'the classic hearsay dangers of faulty perception, memory, and narration.'"  Plaintiff's Motion at 20 (quoting <u>Jacobson v. Deutsche Bank,</u> <u>A.G.</u>, 206 F.Supp.2d 590, 596 (S.D.N.Y. 2002)).

These dangers are not as great here as they might be in some circumstances.  While the statements required Chief Judge Starzynski to rely on memory, he was recalling his own personal reasons and was not trying to recall details about particular occurrences.  Mountain Highlands' argument that Chief Judge Starzynski mis-remembered certain facts, such as the amount of deposited funds, <u>see</u> Plaintiff's Motion at 12, thus does not have much weight here.  Additionally, the dangers inherent in this situation are not the dangers of dishonesty but rather the dangers of omission and of coloring the truth in the retelling.  Cross-examination is particularly well-suited to address these dangers.  The limited questioning that Mountain Highlands could have conducted alleviates some of these dangers, although given the lack of a full opportunity for cross-examination, the Court cannot say that the dangers are completely dispelled.

In addition, <u>Dallas County v. Commercial Union Assur. Co.</u> does not state that only hearsay involving binary facts is admissible.  One of the cases that Judge Wisdom relied on in his opinion was <u>G. & C. Merriam Co. v. Syndicate Pub. Co.</u>  In that case from the United States Court of Appeals for the Second Circuit, the hearsay at issue was a statement in the preface of a dictionary

written over sixty years before in which the writer purported to base his dictionary on Webster's. Judge Learned Hand, then a district judge, admitted the statement in an opinion that the Second Circuit reproduced and adopted in its decision.  Judge Hand found that the statement was admissible because of necessity and trustworthiness: necessity because of the passage of time, and trustworthiness because the author of the preface had "no motive for fabrication."  Id. at 518.  The statement admitted in G. & C. Merriam Co. v. Syndicate Pub. Co. was not about a binary event, but, similar to the statements here, an assertion about the basis of a work product.

If Chief Judge Starzynski had been potentially subject to a thorough cross examination, then deciding to admit those statements would be a relatively easy call.  Because Mountain Highlands' opportunity for cross examination was more circumscribed, the question requires more analysis. In the end, however, the Court believes that Chief Judge Starzynski's statements have sufficient indicia of reliability, and that admission of those statements would be consistent with the interests of justice and common sense.  Lack of a full opportunity for cross examination is not a fatal defect. Chief Judge Starzynski's statements, which are statements made on the record at a formal hearing and reproduced in a professional transcript, have substantial indicia of reliability.  The only circumstance detracting from that general circumstantial trustworthiness is that Mountain Highlands did not have a full opportunity for cross examination.  In light of the other indicia of trustworthiness, however, and given that Mountain Highlands was not completely precluded from questioning, the Court finds that the statements satisfy the test for admission under rule 807.  It is important to remember that the Court is holding that certain evidence could be admissible at trial, not finding that the evidence is "conclusive as matter of law, a circumstance which," Judge Hand observed, "many judges seem to forget in discussing the dangers of unsworn testimony."   G. & C. Merriam Co. v. Syndicate Pub. Co., 207 F. at 518.  Nor does the Court's ruling prohibit Mountain Highlands from

arguing to the jury that the various problems it has pointed out with Chief Judge Starzynski's statements are reasons for jurors to reject or give less weight to those statements.

**IT IS ORDERED** that the Plaintiff's Second Motion to Reconsider Grant of Partial Summary Judgment on 2007 Claims, with Points and Authorities is denied and the Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2007 Claims is granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Steven S. Scholl
Dave M. Wesner
Dixon Scholl & Bailey, P.A.
Albuquerque, New Mexico

    _Attorneys for the Plaintiff/Counterdefendant_

Charles V. Henry, IV
Donald A. Walcott
Charlotte Hetherington
Scheuer, Yost, & Patterson, P.C.
Santa Fe, New Mexico

    _Attorneys for the Defendants/Counterclaimants_