## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN HIGHLANDS, LLC,
an Oregon Limited Liability Company,

      Plaintiff/Counterdefendant,

vs.                                                                      No. CIV 08-0239 JB/ACT

DAVID HENDRICKS, and MAGNOLIA
MOUNTAIN LIMITED PARTNERSHIP,
a Texas limited partnership,

      Defendants/Counterclaimants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' First Motion in Limine, filed July 1, 2009 (Doc. 119). The Court held a hearing on July 24, 2009. The primary issue is whether the Court should allow Robert Janes, who is the Vice President of Shepard's Group, Inc., the entity serving as managing member of Plaintiff/Counterdefendant Mountain Highlands, LLC, to offer testimony about the value of certain property. Because Janes is the representative of a property owner, he may offer opinion testimony about land that Mountain Highlands owned. The property Mountain Highlands owned, however, does not include the property that the Defendants contributed to the sale of the Ski Rio property, and Janes will not be allowed to testify on that property's value. In addition, the Court will not allow Janes to use the rule about owner testimony to repeat the valuations or opinions of others without such statements being subject to the hearsay rule.

## PROCEDURAL BACKGROUND

The Defendants have moved in limine to preclude Janes from offering testimony about the value of certain pieces of property. The Defendants' first challenge is to any testimony from Janes

about the value of property that the Defendants contributed to the sale that Mountain Highlands did

not own.  In addition, the Defendants ask the Court to exclude testimony previously submitted in

Janes' affidavit regarding: (i) a power line which allegedly contributed $1.5 million to the value of

the Ski Rio properties; (ii)  the value of the Silvertree lodge; (iii) the value of certain water rights;

and (iv) the value of the approximately 161 acres that the Defendants contributed to the sale.

See Motion at 7-8.  Mountain Highlands counters that it was the equitable owner of the contributed

property under the Exchange Agreement and thus Janes can testify as an owner, and also that Janes,

as the negotiator of the sale, can offer his testimony about the negotiations and the values established

during the progress of that deal.  See Response to Defendants' First Motion in Limine at 1-4, filed

July 20, 2009 (Doc. 137)("Response").

## ANALYSIS

The Court will first address about which property Janes may offer value opinions under the

rule that owners may testify as to value.  Next, the Court will address four lines of potential

testimony expressed in an earlier affidavit from Janes that Mountain Highlands submitted to the

Court.  Finally, the Court emphasizes that its rulings on the scope of opinion testimony and the

owner rule does not restrict Janes' ability to testify as a fact witness.  Some of the areas require a

detailed factual analysis that the Court lacks the foundation to conduct at this time.  While the Court

can outline the standards for these areas, definitive rulings must wait until trial, when the Court can

hear the testimony, including voir dire of Janes which might be conducted outside the jury's

presence, to gain a better grasp of the basis of the testimony.

## I.   JANES CAN TESTIFY ABOUT THE VALUE OF PROPERTY THAT MOUNTAIN HIGHLANDS OWNED.

Property owners can generally offer opinion testimony about the value of property they own

without needing to otherwise qualify as an expert.  See United States v. 10,031.98 Acres of Land, 850 F.2d 634, 636 (10th Cir. 1988).  Officers of corporate owners are counted among those allowed to take advantage of this rule.  See id. at 639 n. 4 (noting that designated representative of corporation may testify about the property the corporation owns).  At the hearing, the Defendants clarified that they were not arguing that Janes could not give testimony about property that Mountain Highlands had undisputedly owned.  See Transcript of Hearing at 5:6-9 (Walcott)(taken July 24, 2009).[1]  Instead, the Defendants stated that there were three sets of parcels of land at issue: (i) land that Mountain Highlands transferred to Desert Highlands, a company with an identical membership to Mountain Highlands, and of which Mountain Highlands is a past owner; (ii) land that was conveyed directly to the Helaman Group, which is a member of Mountain Highlands, but in which Janes does not have any interest; and  (iii) the land for which the Defendants are seeking monies due based upon the contribution of the land to the sale and in which Mountain Highlands asserts it had an equitable ownership stake.  See id. at 5:10-6:9.  Given the clarification and the case law from the United States Court of Appeals for the Tenth Circuit, the Court sees no sound reason to preclude Janes from testifying about land Mountain Highlands owned other than the three categories the Defendants identify.  Those three categories each requires a separate inquiry.

First, with respect to the land Mountain Highlands owned but passed along to Desert Highlands, the Court believes that Janes should be able to testify regarding that land's value during the time Mountain Highlands owned it.  Desert Highlands apparently has the same membership as Mountain Highlands.  If Janes plays a role in Desert Highlands similar to his position with Mountain Highlands, then the Court would likely allow his testimony to encompass more recent time periods

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

-3-

as well.  The facts surrounding these particular parcels remain somewhat murky, so whether this

testimony would be admissible will have to wait until trial, when a further foundation can be laid

about the matter.

Next, with respect to the land transferred to the Helaman Group, Mountain Highlands does

not appear to have ever been in a position of ownership over the land.  Without such ownership,

Janes may not offer opinion testimony about the value of that property.  This ruling, however, does

not prevent Janes from giving testimony about any facts he knows about the property or transactions

related to it.

Finally, there is the land for which the Defendants are seeking to recover money for

contributing to the sale.  Mountain Highlands contends that it was the equitable owner of the land

under the Exchange Agreement.  According to Mountain Highlands, once the parties agree to a

contract of sale, the purchaser becomes the equitable owner of the property.  See Response at 2

(citing Lentz v. Mason, 961 F.Supp. 709, 715 (D.N.J. 1997)).  While it acknowledges that the

Exchange Agreement is not a contract of sale, Mountain Highlands contends that an exchange of

property is sufficiently similar to such an agreement that it would have been considered an equitable

owner at the time.  See Response at 2 (citing Matter of Georgian Villa, Inc., 10 B.R. 79, 83 (Bkrtcy.

Ga. 1981)).

Mountain Highlands argues that this equitable ownership entitles it to the same right that a

standard property-owner would enjoy to testify about the value of the property.  To support this

point, it has cited several cases from state courts -- Wall v. Thalco, Inc., 614 S.W.2d 803, 806

(Tenn.App. 1981), Minerva Enterprises Inc. v. Howlett, 824 S.W.2d 377, 382 (Ark. 1992), and

Meyer v. Benko, 55 Cal.App.3d 937, 947, 127 Cal.Rptr. 846, 851 (Cal.App. 1976).  In Wall v.

Thalco, Inc., the Tennessee Court of Appeals held that a former owner was competent to testify

about a land's value because, though he "had temporarily loaned the title to defendant's corporation, he remained the equitable owner because he was contractually entitled to reconveyance."  614 S.W.2d at 806.  In Minerva Enterprises Inc. v. Howlett, the Supreme Court of Arkansas held that it was within a trial court's discretion to admit the testimony about value of the equitable owner of a mobile home because she "had exclusive possession of the mobile home . . . [and] had personal knowledge of the mobile home and its condition."  824 S.W.2d at 382.  In Meyer v. Benko, the California Court of Appeal stated that it could not find any case law whether equitable owners were entitled to testify as owners of property would but found that an equitable owner's testimony on value "was properly admitted, determining that the witness' familiarity with such values goes to the weight rather than the admissibility of the testimony."  55 Cal.App.3d at 946 n.3.

These cases show that at least some states allow equitable owners to give testimony about their property's value.  Federal law and the Federal Rules of Evidence, however, govern this case. See Sims v. Great American Life Ins. Co., 469 F.3d 870, 874 (10th Cir. 2006)(holding that, as a general matter, admissibility of evidence in a diversity case is determined under federal rules).  The Court has been unable to locate any federal cases discussing whether equitable owners may offer their opinions on the value of their land.

Even if the Court assumed that federal law allows for such testimony, the Court is not convinced that this scenario is an appropriate one for applying the rule.  Calling Mountain Highlands a former equitable owner is a stretch.  As the Court has already held, the Exchange Agreement was subject to a condition precedent that failed, rendering the contract unenforceable.  See Memorandum Opinion and Order at 15-16, entered July 14, 2009 (Doc. 131).  Attempting to alleviate the problems this lack of a contract creates for its position, Mountain Highlands points out that many real-estate agreements are subject to purchasing conditions and similar restrictions.  A purchasing condition,

however, strikes the Court as markedly different than the court approval of the Plan upon which the Exchange Agreement was conditioned. Moreover, even those cases that Mountain Highlands cites are not examples of situations where the witness was an equitable owner for a short time, if at all, before having any such status stripped as a result of the failure of the agreement conferring equitable status. Finally, the underlying principle for allowing owners, equitable or otherwise, to testify about value is that with ownership comes a presumption of familiarity with the property. See United States v. 10,031.98 Acres of Land, 850 F.2d at 636. Mountain Highlands' potential equitable ownership under the Exchange Agreement before that agreement failed was at most fleeting, in contrast with situations such as the ones in Wall v. Thalco, Inc. and Minerva Enterprises Inc. v. Howlett, which involved an owner who has temporarily relinquished title and an equitable owner who was in possession of the property in question. Allowing Janes to given an opinion on the value of the property that the Defendants contributed to the sale would amount to an unwarranted expansion of a doctrine that, while firmly rooted in American law, has also suffered under heavy criticism about its validity.

II.   **JANES' TESTIMONY MUST BE BASED UPON PERSONAL KNOWLEDGE.**

In addition to the possibility of testimony about general value of various groups of land, the Defendants challenge several specific examples of testimony found in Janes' earlier affidavit. See Exhibit A to Plaintiff's Response to Motion for Partial Summary Judgment for Monies Due, Affidavit of Robert M. Janes (executed January 7, 2009)(Doc. 63-2)("Janes Aff."). Three of the potential lines of testimony challenged -- regarding water rights, a power line, and the Silvertree lodge -- are all ultimately within the purview of an owner's testimony. All three, however, are also subject to the same potential flaw. If Janes is only repeating what an appraiser told him about the value of those items, then Janes is not expressing an opinion or personal knowledge. This issue,

however, is one that the Court will only be able to resolve when it hears the full basis for Janes' testimony in these areas.  With regards to the fourth challenged line of testimony, concerning the per acre value of the property the Defendants contributed, the Court believes that this area of testimony is likely an expert opinion that needed to have been disclosed.  Again, however, the Court will need to hear more about the opinion and its basis before definitively classifying it as such.

Regarding whether Janes can testify about the value of Mountain Highlands' water rights, the Court does not see a sound reason to treat the testimony about water rights differently than any other testimony about land.  Only one case, federal or state, that the Court has found addresses the issue directly.  That case, Knox Lime Co. v. Maine State Highway Commission, 230 A.2d 814 (Me. 1967), addressed the issue directly and found that a corporate president who was familiar with a company's operations was allowed to opine on the value of minerals.  See id. at 828.  Another case, Thibadeau v. Clarinda Copper Mining Co., 272 P. 254, mentioned the rule that owners can testify about value in the context of valuing water rights, implying that the rule applied to such rights, although the case dealt with a non-owner's testimony.  See id. at 257.  Though the case law is scarce, it reflects what the Court believes is the proper answer to this question.  Valuing real estate is generally a matter of valuing the variety of components making up the real estate, which can include water rights.  An owner who can give his opinion on land as a whole may give his opinion on an aspect of that property.  For the same reasons, the Court concludes that Janes would be able to opine on the value of the power line serving the Ski Rio properties, which is not a government-owned or installed line, but a power line that Mountain Highlands paid for and built itself, and also on the value of the lodge Mountain Highlands owned.

There is, however, one wrinkle with Janes' potential testimony about all three of these matters.  This particular difficulty is one the Court cannot definitely decide at this time.  Janes'

-7-

affidavit indicates that the water rights, the power line, and the lodge all had various appraised values. <u>See</u> Janes Aff. ¶¶ 4-5, at 2. An owner testifying about his own opinion about his property's value is one thing. An owner parroting an appraiser's opinion is another. Being an owner by itself is not enough to automatically allow the owner to give opinion testimony on property values; there must still "be a basis for the landowner's valuation." <u>United States v. 10,031.98 Acres of Land</u>, 850 F.2d at 637. As the Honorable Richard Posner, United States Circuit Judge, recently put it: "What an owner is not allowed to do is merely repeat another person's valuation." <u>Cunningham v. Masterwear Corp.</u>, 569 F.3d 673, 676 (7th Cir. 2009). If Janes is doing nothing more than passing along an appraiser's valuation, then he is not giving an opinion or expressing a valuation from his personal knowledge; he is repeating potential hearsay and the statement is subject, as is any statement, to the rule against hearsay. At this time, the Court cannot say what the full basis for Janes' opinion is. If the valuations he gives are based upon a more robust personal experience or evaluation of the property, then they will likely be admissible.

With respect to the assessment that the 161 acres contributed to the sale were worth between $400.00 and $500.00 an acre, the Court also believes that there is an additional problem beyond the ownership problem the Court has already discussed. Janes' apparently comprehensive opinion about the acreage value of the contributed property sounds more like an expert opinion triggering disclosure requirements than a lay opinion based upon personal knowledge. An owner's opinion is generally lay opinion under rule 701. <u>See</u>, <u>.e.g.</u>, <u>Christopher Phelps & Associates, LLC v. Galloway</u>, 492 F.3d 532, 542 (4th Cir. 2007); <u>United States v. Conn</u>, 297 F.3d 548, 554 n.2 (7th Cir. 2002). Lay opinion is not subject to the elaborate disclosure and report requirements of rule 26 of the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 26(a)(2)(A) (requiring disclosure of witnesses who will give testimony under rule 702, 703, or 705 of the Federal Rules of Evidence).

By contrast, expert opinions are subject to disclosure.  <u>See</u> Fed. R. Civ. P. 26(a)(2)(A).  Because Janes was not timely disclosed as an expert, this opinion is likely inadmissible.  As with much of the potential testimony, however, the Court will have to wait until trial to hear the basis of Janes' testimony before definitively ruling whether the potential opinion is admissible lay opinion testimony or inadmissible expert testimony.

## III.   JANES MAY TESTIFY ABOUT THE NEGOTIATIONS IN WHICH HE PARTICIPATED.

While the Court is precluding Janes from testifying about certain aspects of the value of the various properties involved, the Court emphasizes that Janes may still testimony as a normal fact witness about specific facts within his personal knowledge.  At the hearing, Mountain Highlands stressed this particular point, arguing that much of Janes' testimony was based upon his role in negotiations, which determined the value and ultimate sale price of the properties.  Janes testifying about what he did and about his personal observations of those negotiations would be normal fact testimony and is likely to be admissible at trial.

**IT IS ORDERED** that the Defendants' First Motion in Limine is granted in part and denied in part as explained in this memorandum opinion and order.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Steven S. Scholl
Dave M. Wesner
Dixon Scholl & Bailey, P.A.
Albuquerque, New Mexico

   *Attorneys for the Plaintiff/Counterdefendant*

Charles V. Henry, IV
Donald A. Walcott
Charlotte Hetherington
Scheuer, Yost, & Patterson, P.C.
Santa Fe, New Mexico

*Attorneys for the Defendants/Counterclaimants*