## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN HIGHLANDS, LLC,
an Oregon Limited Liability Company,

        Plaintiff/Counterdefendant,

vs.                                                            No. CIV 08-0239 JB/ACT

DAVID HENDRICKS, and MAGNOLIA
MOUNTAIN LIMITED PARTNERSHIP,
a Texas limited partnership,

        Defendants/Counterclaimants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Expedited Motion to Reconsider Memorandum Opinion and Order Document #131, filed July 15, 2009 (Doc. 132). The Court held hearings on July 17, 2009 and July 21, 2009. The primary issue is whether the Court should reconsider its denial of summary judgment on Plaintiff Mountain Highlands, LLC's two remaining claims, for interference with prospective contractual relations and for prima-facie tort. Because the Court believes that there is insufficient evidence of intent on these claims to send them to a jury, the Court will grant the motion and dismiss Mountain Highlands' remaining claims.

### PROCEDURAL BACKGROUND

This case has seen several motions to dismiss or for summary judgment, followed by motions to reconsider. By the Court's count, this is the seventh motion addressing the claims stemming from Mountain Highlands' bankruptcy proceedings. Currently, Mountain Highlands' claims have been reduced to two claims arising out of its 2007 bankruptcy proceedings: one claim for interference with prospective contractual relations and another for prima-facie tort. In its

Complaint, Mountain Highlands bases Count II, Interference With Prospective Economic Advantage, on the allegation that the Defendants "intentionally blocked Plaintiff's Plan for reorganization," and "orchestrated an objection" to the sale of the Ski Rio property "at a time and in a manner wrongfully designed to threaten Plaintiff's sale."   Exhibit A to Notice of Removal, Complaint for Damages and Equitable Relief ¶ 71, ¶ 72, at 15 (filed in state court February 14, 2008)(Doc. 1-3)("Complaint").   Mountain Highlands also alleges that this objection caused the Honorable James Starzynski, United States Bankruptcy Judge, to deny confirmation of the Plan. See id. ¶ 73, at 15.   For its prima-facie tort claim, Mountain Highlands alleges that it "incurred substantial additional costs . . . in conveying the Ski Rio property and its associated assets under the unfavorable terms to which it became subject as a result of the Defendants' wrongful repudiation of the Exchange Agreement and interference with Plaintiff's efforts to have its Plan confirmed." Complaint ¶ 100, at 19-20.

Finding "insufficient evidence that any action attributable to the Defendants led to the" failure of Mountain Highlands' plan for reorganization in bankruptcy "either directly or by causing Signature Capital Funding, Inc. to continue with its objection to the Plan," the Court granted the Defendants' motion for summary judgment on the 2007 claims.   Memorandum Opinion and Order at 1, 10, entered November 17, 2008 (Doc. 51).   Contending that the issues addressed in the motion for summary judgment were too narrow to encompass all its 2007 claims, Mountain Highlands then moved the Court to reconsider its grant of summary judgment.   See Mountain Highlands filed its Motion to Reconsider Grant of Partial Summary Judgment With Points and Authorities at 2, filed December 8, 2008 (Doc. 53).   On February 3, 2009, the Court conducted a hearing on the motion to reconsider.   During the hearing, Steven Scholl, Mountain Highlands' attorney, "contended that the Defendants breached the Exchange Agreement, placing Mountain Highlands, who had relied on

the agreement, in a bargaining disadvantage over the Motion to Sell."  Memorandum Opinion and

Order at 8, entered February 5, 2009 (Doc. 75)(citing Transcript of Hearing at 18:5-7, 26:21-29:4

(Court & Scholl)(taken February 3, 2009)[1])("February 5, 2009 MOO").  In its subsequent opinion

on the motion, the Court observed that

> [t]his cause of action does appear to avoid the problem of circling back to the denial
> of the Plan. This particular issue was not briefed -- either in the present motion or in
> the original motion for summary judgment -- and the Court does not understand its
> grant of partial summary judgment to extend to such a claim. The Court also does
> not, however, express any opinion at this point whether Mountain Highlands'
> Complaint pleads such a theory or whether this theory is supported with sufficient
> evidence.

February 5, 2009 MOO at 8-9.  The Court stated "that it is not ruling on the sufficiency of such

claims at this point, but only clarifying that its previous grant of summary judgment would not

extend that far."  Id. at 11.

Shortly after the Court narrowed the scope of its grant of summary judgment, the Defendants

filed a motion to reconsider, asking the Court to find all the 2007 claims dismissed.  See See Motion

to Reconsider Memorandum Opinion and Order Document #75 at 2, filed February 27, 2009 (Doc.

85).  The Court denied the motion, but allowed the Defendants to file a motion for summary

judgment out of time, to "place the issue squarely before the Court about whether any of the 2007

claims should survive at this point."  Memorandum Opinion and Order at 3, entered June 22, 2009

(Doc. 117)("June 22 MOO").  The Defendants then filed a new motion for summary judgment on

the 2007 claims.  See Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2007

---

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original,
unedited versions.  Any final transcripts may contain different page and/or line numbers.

Claims, filed June 5, 2009 (Doc. 107).[2]

On July 14, 2009, the Court ruled on the new motion for summary judgment, thus expressing for the first time the Court's conclusion whether the theory articulated in February 2009 could go to a jury. In the Court's Memorandum Opinion and Order, entered July 14, 2009 (Doc. 131)("MOO"), the Court dismissed Mountain Highlands' claim for breach of the covenant of good faith and fair dealing. See id. at 15-17. The Court also held, however, that two causes of action could proceed to trial. See id. at 17-26.

First, the Court found that the Complaint stated a cause of action for interference with prospective contractual relations on an improper-means theory. See MOO at 17, 21-23. The Court observed that, under Zarr v. Washington Tru Solutions, LLC ¶ 6, 208 P.3d 919, 921 (N.M. Ct. App. 2009), an interference claim could be based on either improper means or on improper motive, and a plaintiff could choose between the two. See MOO at 18. The Court also held that Mountain Highlands could proceed on a claim for prima-facie tort. The Court stated:

> Mountain Highlands has presented evidence that the Defendants' objection to the sale resulted in a loss of bargaining power, leading to Mountain Highlands paying more to Signature Capital than Mountain Highlands would have had to pay otherwise. The intent element is a heavy burden, and the Court does not see any evidence of a deliberate intent to harm, but there is evidence that the Defendants were aware of the negotiations. From this evidence, it would be reasonable to infer [] they acted with an awareness of the effect the objection would have on negotiations. Prima-facie tort labors under a strict standard, requiring proof that a defendant "knew with certainty that" an act or omission "would cause harm to the plaintiff." Civ. UJI 13-1631, NMRA (emphasis added). This heightened standard, however, will largely affect jury deliberations. The Court's role is primarily to decide if there is a genuine issue of material fact. See Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591 JB/RHS, Memorandum Opinion and Order at 7, entered June 1, 2009 (Doc. 465)(finding that, although fraud must be proven with clear and

---

[2] The Court's written opinion was not released until June 22, 2009, but the Court orally told the Defendants they could file a motion for summary judgment during the June 5, 2009 hearing. See Clerk's Minutes at 2, filed June 5, 2009 (Doc. 110).

> convincing evidence, a court's role is primarily determining whether a genuine dispute of material fact exists). The other potential difficulty with the claim is that the Defendants' actions must be unjustifiable. For the same reasons that the Court believes that a jury may find improper means on the interference claim, however, it appears that a jury would be able to find unjustifiable conduct.

MOO at 25. Thus the Court allowed the prima-facie tort claim to proceed, although the Court noted that, because of the factual overlap between the two surviving claims and because of prima-facie tort's nature as a last-resort doctrine, it would not submit both remaining claims to the jury. See id. at 25-26.

Now the Defendants have filed the present motion, asking once again that the Court dismiss the remaining 2007 claims. At the pretrial conference on July 17, 2009, the Court raised the Defendants' recently filed motion to reconsider. Donald Walcott, the Defendants' counsel, conceded that his argument that Mountain Highlands was required to prove that the Defendants acted with a sole motive to harm was based upon an improper reading of New Mexico law caused by his need to get a motion before the Court promptly. See Transcript of Hearing at 7:5-21 (Walcott & Court)(taken July 17, 2009)("July 17 Tr."). Mr. Walcott agreed that the thrust of his motion was thus principally factual. See id. at 7:22-24 (Court & Walcott). Similarly, the Court informed the parties that its primary concern was whether the Court, in stating that there was evidence that the Defendants were aware of the negotiations with Signature Capital, assumed a fact that was not in the record and that the absence of evidence on this fact would be fatal to Mountain Highlands' remaining claims. See id. at 8:9-13 (Court). At the parties' request, the Court scheduled a hearing on the motion for July 21, 2009, and allowed Mountain Highlands to respond orally without a written response if it was not able to file a written response in time.

Before the hearing, the Defendants filed a supplemental brief reiterating their concession. See Supplemental Brief to Motion to Reconsider Memorandum Opinion and Order Document #131

at 2, filed July 20, 2009 (Doc. 135)("Supplement").  They also asserted that their actions in the bankruptcy proceeding were privileged and could not give rise to a claim.  See id. at 2-6.  Mountain Highlands filed a written response before the hearing as well, primarily arguing that the privilege defenses that the Defendants raised were inapplicable.  See Defendants' Expedited Motion to Reconsider Memorandum Opinion and Order Document #131 and Defendants' Supplemental Brief to Motion to Reconsider Memorandum Opinion and Order Doc. No. 131, filed July 21, 2009 (Doc. 138).

At the hearing on July 21, 2009, Mr. Scholl argued that the Defendants were aware that Mountain Highlands had "an ongoing relationship in litigation with Signature Capital."  Transcript of Hearing at 12:25-13:1 (Scholl)(taken July 21, 2009)("July 21 Tr.").  Mr. Scholl maintained that it was intuitive that where there was litigation there would be negotiations.  See id. at 13:4-16.  He also contended that, to prove interference, Mountain Highlands did not need to show that there was knowledge of negotiations, or even negotiations at all, but only the potential of a future contractual relationship.  See id. at 20:4-12.  Mr. Scholl stated that the model jury instructions on which he planned to rely in proposing jury instructions required, as the second element of the claim, that the defendant knew or should have known of the relationship or expectancy.  See id. at 24:25-25:7.  In response to the Court's concerns, Mr. Scholl argued that this second element did not require proof of negotiations, only proof of a relationship, which he maintained was present because of the litigation in which Mountain Highlands and Signature Capital were involved.  See id. at 25:19-24 (Court & Scholl).

## NEW MEXICO LAW REGARDING INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

New Mexico recognizes a tort for interference with prospective contractual relations.  See M

& M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. 449, 452, 612 P.2d 241, 244 (Ct. App. 1980).  M

& M Rental Tools, Inc. v. Milchem, Inc. adopted the Restatement (Second) of Torts' definition of

interference:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. at 453, 612 P.2d at 245 (quoting Restatement

(Second) of Torts § 766B).  "[T]he tort can be accomplished by either of two methods: improper

motive solely to harm the plaintiff or improper means. If proven, either basis standing alone will

support liability."  Zarr v. Washington Tru Solutions, LLC ¶ 6, 146 N.M. 274, 208 P.3d 919, 921

(Ct. App. 2009).

One issue raised in Zarr v. Washington Tru Solutions, LLC, which is the most recent New

Mexico case on interference claims, was when courts should require a plaintiff to prove a sole

motive to harm as the impetus for a defendant's "interfering with a plaintiff's opportunity to enter

into prospective contracts."  Id. ¶ 25, 208 P.3d at 924.  Sole motive to harm requires "a strong

showing . . . that the defendant acted not for legitimate business reasons but from some motive such

as personal vengeance or spite. . . .  If the  accused can show a legitimate business for the action,

even if there also may have been a motive to harm the plaintiff," then sole motive has not been

shown. Id. (citing Anderson v. Dairyland Insurance Company, 97 N.M. 155, 158, 637 P.2d 837, 840

(1981), and Kelly v. St. Vincent Hospital, 102 N.M. 201, 207, 692 P.2d 1350, 1356 (Ct. App.

1984)).  In Fikes v. Furst, 134 N.M. 602, 81 P.3d 545 (2003), the Supreme Court of New Mexico

held that the sole motive test applied only to claims for interference with prospective contracts and not to interference with existing contracts. See id. ¶¶ 21-23, 134 N.M. at 609-10, 81 P.3d at 552-53; Zarr v. Washington Tru Solutions, LLC ¶ 7, 208 P.3d at 921 (noting Fikes v. Furst's holding).

In Zarr v. Washington Tru Solutions, LLC, the plaintiff appealed a trial court's ruling that she had to show, on her improper means theory, a sole motive to harm. See Zarr v. Washington Tru Solutions, LLC ¶ 10, 208 P.3d at 921. The trial court had followed Los Alamos National Bank v. Martinez Surveying Services, LLC, 140 N.M. 41, 139 P.3d 201, "which required the plaintiff to show, as an alternative to improper motive, that the defendant used improper means with the sole intention of harming the plaintiff by interfering with a prospective business advantage." Zarr v. Washington Tru Solutions, LLC ¶ 11, 208 P.3d at 921 (citing Los Alamos National Bank v. Martinez Surveying Services, LLC ¶ 13, 140 N.M. at 46, 139 P.3d at 206). The New Mexico Court of Appeals found that Los Alamos National Bank v. Martinez Surveying Services, LLC "overstated the test" and that showing sole motive to harm on an improper means theory was not required. Zarr v. Washington Tru Solutions, LLC ¶ 11, 208 P.3d at 922. The Court of Appeals rejected the defendant's argument that the higher standard should be retained on improper-means claims "in recognition of the lesser protection our cases afford prospective contractual relations." Id. Only for an improper motive theory did the Court of Appeals hold that the sole-motive test applied, observing that "the sole-motive-to-harm-requirement is now enshrined in our Supreme Court authority." Id. ¶ 16, 208 P.3d at 923.

## ANALYSIS

Though trial is near in this case, the Court believes that, because of the basis for the Defendants' motion, an expedited reconsideration of the Court's recent decision is appropriate. The Defendants advance both legal and factual grounds why the Court's ruling was incorrect.

Reconsidering its opinion, the Court concludes that the Defendants' legal arguments are unpersuasive but finds that Mountain Highlands' remaining claims should be dismissed nonetheless because of a lack of evidence of intent.

## I.    THE COURT WILL GRANT THE DEFENDANTS' REQUEST FOR EXPEDITED RECONSIDERATION OF THE DECISIONS IN ITS JULY 14, 2009 MEMORANDUM OPINION AND ORDER.

The Defendants request that the Court hear this motion on an expedited basis.  According to the Defendants, the Court's July 14, 2009 MOO was the Defendants' "first notice of the actual claims the Court would allow to proceed to trial."  Motion at 3.  This motion was filed the day after the Court's ruling on July 14, 2009, with trial set to begin in this case on July 27, 2009.  Given the compressed time frame and the nature of the motion, the Court will hear the motion on an expedited basis.

The Court differs somewhat with the Defendants' characterization of the chronology of the proceedings.  The Court timely ruled on the Defendants' motions for summary judgment, but Mountain Highlands and the Defendants have filed various motions to reconsider the Court's rulings. Nonetheless, expedited reconsideration is appropriate here.  This close to trial, new dispositive motions are usually improper.  This case, however, has followed a somewhat unusual path for the last several months.  The case has gone through several successive rounds of motions for summary judgment and then motions for reconsideration by both sides.  And the Court agrees with the Defendants that it has been difficult at times to pin down precisely what theories Mountain Highlands is asserting.  See June 22 MOO at 3.  The Defendants' motion for summary judgment on the 2007 claims, however, was also filed relatively early on in this case, before the end of discovery, see Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's 2007 Claims, filed September 3, 2008 (Doc. 19), which may have contributed to the confusion.  As discovery and the

case has progressed through several stages of motions to reconsider, the relevant facts and issues in this case have been revealed to the Court a fraction at a time.

The rather piecemeal progress of this case, which has made it difficult to definitively address many issues, favors allowing reconsideration now.  More importantly, the Defendants have pointed out that the Court's most recent holding may have rested on an unwarranted factual assumption, one which may be contradicted by evidence they have now put into the record.  Forcing a party to endure a trial because of what may potentially be an oversight would be unfair and inappropriate. Reconsideration is therefore warranted, and, given the looming trial date, such reconsideration must be expedited to be useful.  The primary issue with which the Court is concerned -- which is a single factual issue -- is relatively straightforward and involves a matter that Mountain Highlands would need to be addressing as part of trial preparation anyway, so it will not unduly prejudice Mountain Highlands for the Court to entertain the Defendants' motion.  Furthermore, the Court is allowing Mountain Highlands  to respond orally in lieu of preparing a written response if it chooses, to allow Mountain Highlands to fully present its side of events without any concern about waiving an argument.  In these circumstances, the Court believes that expedited reconsideration is justified and so will grant the Defendants' request for prompt consideration of their motion.

II.     **THE COURT WILL NOT DISMISS THE TWO CLAIMS ON THE GROUNDS THAT THEY ARE NOT STATED IN THE COMPLAINT.**

One argument the Defendants raise is that the claims that the Court found were supported with sufficient evidence are not claims pled in the Complaint.  The Court disagrees, at least in part. The Court has found the interference claim is sufficiently pled in the Complaint and sees no sound reason to alter that holding.  The prima-facie tort claim presents a closer question, but the Court finds a lack of evidence to support that claim.

Count II of the Complaint states the prospective interference claim.  This count alleges that the Defendants wrongfully orchestrated their objection to the sale in an effort to usurp some of the sale proceeds.  See Complaint ¶ 72, at 15.  The Court has already found that this paragraph "pleads a theory that tracks the one Mountain Highlands now urges."  MOO at 17.  The Court continues to believe that the allegations regarding this claim comply with rule 8(a) of the Federal Rules of Civil Procedure and gave the Defendants sufficient "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)(internal quotation marks omitted).

Count VI pleads a claim for prima-facie tort.  Among other allegations, this count alleges that Mountain Highlands "incurred substantial additional costs . . . in conveying the Ski Rio property and its associated assets under the unfavorable terms to which it became subject as a result of the Defendants' wrongful repudiation of the Exchange Agreement and interference with Plaintiff's efforts to have its Plan confirmed."  Complaint ¶ 100, at 19-20.  While the Court's recent opinion noted that "[t]he parties did not devote much attention to this count, either at the hearing or in the briefing," the Court did not expressly discuss the language of the Complaint in that decision.  MOO at 24.  This count does not unambiguously express the theory that the Court has indicated is a theory on which Mountain Highlands might proceed.  Count II mentions the objection as a basis for an interference claim.  By contrast, Count VI alleges the particular harm Mountain Highlands is pressing now and which the Court approved in its earlier opinion, but traces that harm back to two grounds that the Court has found not supported by the record.  This count thus gives some indication of Mountain Highlands' most recent theory, although not a full picture.  In addition, the count incorporates all preceding paragraphs.  Incorporation is a practice the Court has discouraged with respect to giving notice of particular claims.  See MOO at 16-17.  Whether the somewhat tangential

references here are sufficient to give adequate notice of the claims is a close question.  On the one hand, the precise theory is not fully articulated.  On the other hand, there is some indication of the nature of the harm and, charitably read, the allegation regarding the "repudiation of the Exchange Agreement" can be seen as encompassing the objection on the motion to sell. In any case, the Court is finding that there is no evidence to support it.  The ambiguity surrounding this claim, however, further supports the Court undertaking an expedited reconsideration of its earlier opinion.

## III.   THE COURT WILL NOT DISMISS THE REMAINING CLAIMS ON LEGAL GROUNDS.

The Defendants raise two legal grounds that they contend require dismissal of Mountain Highlands' last claims: (i) that the interference claim requires proof that the Defendants acted with a sole motive to harm Mountain Highlands; and (ii) that the Defendants' actions were privileged. Neither theory persuades the Court.  The first theory the Defendants conceded, an appropriate concession given the Court's reading of the state of New Mexico law.  While the Defendants continue to support the second theory, the Court does not believe that this theory is persuasive.

### A.   A CLAIM FOR INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS DOES NOT REQUIRE PROOF OF SOLE MOTIVE TO HARM.

Initially, the Defendants contended that Zarr v. Washington Tru Solution, LLC requires that, for prospective-contractual relationships, Mountain Highlands must prove that the Defendants' sole motive in filing the objection was to harm Mountain Highlands.  During the hearing, the Defendants conceded this point, a concession they reiterated in their supplemental brief.  See July 17 Tr. at 7:5-21 (Walcott & Court); Supplement at 2.  This concession is sound given the state of New Mexico law. See Zarr v. Washington Tru Solutions, LLC ¶ 11, 208 P.3d at 921-22 (holding that a plaintiff does not have to show sole motive to harm to prove a claim for interference with prospective contractual relations on an improper-means theory).

-12-

Some of the confusion likely arises from interference with contractual relations being divisible into two torts -- interference with prospective contracts and interference with existing contracts -- each of which can be proven two different ways -- by showing improper motive or by showing improper means. There are thus effectively four related, but distinct, causes of action, each with its own variations on what must be proven. The requirement of sole motive to harm applies to only one of these four variations, the improper-motive method of proving interference with a prospective contractual relationship. See id. ¶ 16, 208 P.3d at 923. Motive to harm -- as opposed to intent -- is not an element of an improper-means claim nor must the motive to harm be the sole motive when the improper-motive claim is for an existing rather than a prospective contract.

## B.    THE DEFENDANTS' PRIVILEGE ARGUMENTS ARE UNAVAILING.

The Defendants raise two arguments that their actions were privileged and that they cannot be held liable for those actions. First, they maintain that the allegations set forth in the Complaint assert that the Defendants did not act solely to harm, but rather had a profit motive for their actions. Second, they argue that because their alleged actions involve actions taken in the course of a judicial proceeding and are thus absolutely privileged. The Court is not persuaded that either of these privilege arguments present grounds to dismiss the remaining claims against the Defendants.

While the Defendants acknowledge that New Mexico law does not require a sole motive to harm as an element of an improper-means-interference-with prospective-contractual-relations claim, they maintain that acting from a profit motive is a privilege in an interference claim. In particular, the Defendants contend that Fikes v. Furst supports this proposition. In that case, the Supreme Court of New Mexico stated:

> Privilege is defined as a good faith assertion or threat by the one interfering to protect a legally-protected interest of his or her own which he or she believes might otherwise be impaired or destroyed by performance of the contract. A motive to protect one's

own interest does not need to be the exclusive motive for the conduct to be privileged. One acting to protect his or her property rights is privileged to interfere even if he does so with malice. As a general rule, justification for interfering with the business relations of another exists where the actor's motive for doing so is to benefit himself or herself, and it does not exist where his or her sole motive is to cause harm to such person. This rule is in keeping with the Restatement formulation that more conduct will be privileged for interference with prospective contracts than will be privileged for interference with existing contracts. A person may be privileged to interfere with a prospective contract unless the sole motive is to harm a third party; in contrast, a person may not be privileged to interfere with an existing contract, even if the person has mixed motives. The inquiry, in the end, should be to determine the party's primary motivation for the interference. If it was primarily improper, then the person has no privilege. If it was primarily proper, then liability should not attach.

Fikes v. Furst ¶ 23, 134 N.M. at 609, 81 P.3d at 552 (internal quotation marks, brackets, and citations omitted). Though couched in the language of privilege, the Court believes that the privilege is also directed at an improper-motive theory of interference, rather than improper means. This discussion of privilege that the Court has quoted comes during a separate section of the opinion in Fikes v. Furst that discussed improper motive. Following that section, the Supreme Court of New Mexico, in a separately labeled section of the opinion, discussed improper means. The language of the discussion, with its emphasis on motive, and specifically on sole motive in the case of prospective contracts, but on mixed motive for existing contracts, indicates that this privilege relates to improper-motive claims.

M & M Rental Tools, Inc. v. Milchem, Inc., which first recognized the tort of interference with prospective contractual relations, further clarifies the matter. In that case, the New Mexico Court of Appeals followed the Restatement (Second) of Torts in abandoning the original Restatement's focus on privilege in favor of the improper-interference standard set forth in the Restatement (Second) of Torts. See M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. at 452-53, 612 P.2d at 244-45. The Court of Appeals observed that improper interference was, however, equivalent with lack of privilege, and that either improper motive or improper means might support liability. See id. at 454, 612 P.2d at 246. For an improper-means claim, as opposed to an improper-

-14-

motive claim, it appears to the Court that the improper-means analysis effectively substitutes for a privilege analysis and that, even if the Defendants were acting out of a profit motive, they could be liable if they did so by employing improper means.  Indeed, it is hard to see how there could be an interference tort based on improper means that is distinct from an improper motive tort if a plaintiff must nonetheless prove bad motive.

The Defendants' second theory of privilege is that their objection to the Motion to Sell during the bankruptcy proceeding was privileged.  To support this contention, they cite <u>Superior Construction v. Linnerooth</u>, 103 N.M. 716, 719, 712 P.2d 1378, 1381 (1986), <u>Penny v. Sherman</u>, 101 N.M. 517, 520, 684 P.2d 1182, 1185 (Ct. App. 1984), and <u>Romero v. Prince</u>, 85 N.M. 474, 476, 513 P.2d 717, 719 (Ct. App. 1973).  All these cases concern the absolute privilege against liability in defamation that is given to participants in a judicial proceeding.  This privilege is peculiarly related to defamation law.  None of the cases cited apply the privilege beyond the realm of defamation law. Other doctrines of liability, such as legal malpractice and malicious prosecution, potentially subject people to liability for actions taken in court proceedings.  While the Court understands the Defendants' concerns, and their argument that actions taken in a court should be entitled to special protection to ensure that lawyers are encouraged to undertake vigorous advocacy on behalf of their clients, the Court does not believe that it would be appropriate to extend the doctrine beyond the contours that New Mexico courts have defined, which is to apply the privilege in cases of defamation.

**IV.  THE DEFENDANTS HAVE MET THEIR INITIAL BURDEN ON SUMMARY JUDGMENT OF SHOWING AN ABSENCE OF EVIDENCE.**

In their motion to reconsider, the Defendants put forth for the first time testimony from George Moore, Mountain Highlands' bankruptcy attorney, which they maintain shows that Mountain Highlands was keeping the negotiations with Signature Capital a secret.  The Defendants contend that

they have an obligation to supplement the record and inform the Court of material facts which had not been necessary to brief or to highlight until this time.  While the Court is not convinced that the Defendants had no reason to introduce this testimony earlier, as the Court has stated, reconsideration of this issue is appropriate.  Moreover, the Court agrees with the Defendants to a degree.  Mountain Highlands' briefing in response to the Defendants' most recent motion for summary judgment quoted the Complaint and surveyed New Mexico law, but Mountain Highlands did not, in its briefing, make any significant effort to tie the two together.  See Response to Motion for Partial Summary Judgment Regarding Plaintiff's 2007 Claims at 4-16, filed June 12, 2009 (Doc. 112).  Thus, the Court can see how the Defendants may have reasonably been uncertain whether certain evidence would be useful or not.

The Defendants contend that Mr. Moore's testimony cannot support the inferred intent the Court thought Mountain Highlands might be able to prove.  See MOO at 22 (noting that the Defendants appeared to be "aware of the negotiations and the proposed sale"); id. at 25 (stating that this awareness would support a showing of intent).  According to the Defendants, Mr. Moore is the only witness for Mountain Highlands who possesses the requisite personal knowledge to testify about Mountain Highlands' intent.  At his deposition, Mr. Moore gave the following testimony that the Defendants highlight:

> Q. I'm not asking you whether it's an issue in the order. Okay. We had talked about an agreement for Signature Capital to withdraw its objection to the plan?
>
> A. Um-hum.
>
> Q. And you said that they had agreed?
>
> A. Yes, in principle.
>
> Q. I want to know if you reached that agreement with them before or after you submitted that order to the judge?

-16-

A. I think before. I'd have to again look at my e-mails with Ms. Gottlieb and the draft modification of the plan.

Q. And those e-mails are among the documents produced here today?

A. Yes.

Q. Did you inform me or anyone representing Magnolia or Hendricks about the deal you had with Signature prior to getting our agreement to this motion?

A. No, I don't recall advising you.

****

Q. Okay. So prior to submitting the interim order allowing the sale of the property, you were drafting a withdrawal of Signature's objection?

A. Prior to submitting the sale order, yes.

**Q. Okay. Had you informed me or anyone from Magnolia or Hendricks that you had a deal with Signature to withdraw their objection at the time you obtained our agreement to the stipulated sale order?**

**A. No, I don't believe I advised you.**

**Q. Okay. You don't think that would have been important information to know?**

**A. Well, it might have been important. I don't know that you would have been entitled to know it.**

Q. Well, if Magnolia -- well, what was the purpose of withdrawing the objection?

A. To get the plan confirmed.

Q. And to make sure that Magnolia and Hendricks had to do the exchange agreement of land; right?

A. Yes, that would be an objective.

Exhibit 1 to Motion, Deposition of George Moore at 22:21-23:16, 32:13-33:8 (taken November 21, 2008)(Doc. 132-1)(quoted in Motion at 8-9)(emphasis in Motion).

The Defendants contend that this testimony establishes that they were unaware of any

negotiations and that Mountain Highlands was concealing the existence of those negotiations. Mountain Highlands counters that this testimony refers to a separate deal with Signature Capital regarding whether it would withdraw its opposition to the Plan.  See July 21 Tr. at 14:5-15:18 (Scholl).  While Mr. Moore's testimony at first glance is affirmative evidence that the Defendants did not know about the Signature Capital negotiations, Mountain Highlands' rejoinder has some merit.  On the other hand, it is not entirely clear to the Court that the negotiations about which Mr. Moore was speaking about are unrelated to the negotiations with which Mountain Highlands alleges the Defendants interfered.

Regardless whether Mr. Moore's testimony supports the proposition that the Defendants did not know about the negotiations, Mountain Highlands must produce evidence to support that the Defendants were aware of the negotiations.  "A movant has the 'initial burden to show that there is an absence of evidence to support the nonmoving party's case.'"  Mirzai v. State of N.M. Gen. Services. Dep't, 506 F.Supp.2d 767, 774 (D.N.M. 2007)(Browning, J.)(quoting Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)).  The Court believes that the Defendants have made a sufficient showing to shift the burden to Mountain Highlands to adduce evidence to support its position.  Once the Defendants have met that initial burden, Mountain Highlands bears the burden of setting "forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  At the hearing on July 21, 2009, Mountain Highlands argued that, as the non-moving party, it was entitled to have inferences drawn in its favor and that, under this standard, it should have the opportunity to proceed to trial.  See July 21 Tr. at 21:12-23 (Scholl).  This assertion is true up to a point.  The Court resolves all doubts about the evidence in the favor of the non-moving party, see id. at 255, but the Court draws only reasonable inferences, and Mountain Highlands is not relieved of its obligation to introduce some evidence in

support of its position.

## V.     THERE IS NO EVIDENCE THAT THE DEFENDANTS HAD THE REQUISITE INTENT TO BE HELD LIABLE.

The Defendants argue that, because there is no evidence that there were negotiations between Signature Capital and Mountain Highlands before the Defendants filed an objection to the motion to sell, and because there is contrary uncontroverted evidence showing that the Defendants were not informed of or aware of the negotiations that were held between Signature Capital and Mountain Highlands, the Court should reconsider the decision to allow the prima-facie tort claim to proceed to trial. Upon closer inspection, the affirmative evidence supporting the Defendants' stance that they had no knowledge of negotiations is ambiguous. There is, however, no evidence supporting Mountain Highlands' assertion that the Defendants were aware of the negotiations, nor is the alternative showing that Mountain Highlands contends it must make legally accurate. Accordingly, the Court will dismiss Mountain Highlands' claims for prima-facie tort because there is no evidence of intent to harm by the Defendants.

At the July 17, 2009 hearing, the Court told Mountain Highlands that its primary concern was that it had assumed the Defendants were aware of Mountain Highlands' negotiations with Signature Capital without support in the record. The Court explained that Mountain Highlands should, if possible, provide evidence to support the Defendants being aware of the negotiations. Though Mountain Highlands filed a written response, this response did not contain any new evidence to support the proposition. Instead, Mountain Highlands has argued that the long litigation in state and bankruptcy court involving Mountain Highlands and Signature Capital is sufficient evidence. As the Court interprets this contention, Mountain Highlands is making two distinct arguments: (i) that this evidence is sufficient to give rise to a rational inference that Mountain Highlands and Signature

Capital were engaged in negotiations; and (ii) that Mountain Highlands does not need to prove that the Defendants were aware of any negotiations, but only that they were aware more generally of a relationship between Mountain Highlands and Signature Capital.

The first argument, that the evidence is sufficient to allow for an inference of negotiations, is not the argument that Mountain Highlands presses strongly. Nor does the Court view the argument as having much merit. Mountain Highlands and Signature Capital have been adverse parties in state court litigation, see July 21 Tr. at 13:11-13 (Scholl), and were debtor and creditor in the bankruptcy proceedings. Taking the fact that the two were involved in litigation in postures adversarial to each other and extrapolating from that fact to the conclusion that the two were involved in negotiations requires a significant leap of logic. Such a conclusion is not a reasonable inference that follows from the evidence. At best for Mountain Highlands, the existence of the litigation is not inconsistent with Mountain Highlands being involved in negotiations with the Defendants, but a lack of inconsistency is insufficient to support an inference of negotiations or similar activities.

The second argument, which is the argument Mountain Highlands has emphasized, is that requiring Mountain Highlands to prove that the Defendants knew about the negotiations with Signature Capital places a burden on it that is beyond what the law requires. According to Mountain Highlands, it need only show that the Defendants were aware of a relationship that had a potential for pecuniary gain. See July 21 Tr. at 20:4-12 (Scholl); id. at 24:25-25:7 (Scholl). Mountain Highlands contends that its litigation relationship with Signature Capital satisfies this requirement. See id. at 25:19-24 (Court & Scholl). This formulation of the tort of interference with prospective contractual relations, however, substantially expands the reach of the tort beyond what New Mexico law allows.

New Mexico has adopted the Restatement (Second) of Torts' definition of interference with

prospective relations:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
>> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>>
>> (b) preventing the other from acquiring or continuing the prospective relation.

M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. at 453, 612 P.2d at 245 (quoting Restatement (Second) of Torts § 766B).  Mountain Highlands will thus be required to prove an intentional interference.  An act is intentional when the "actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it."  Restatement (Second) of Torts § 8A (cited in id. § 766B cmt. d).  As the Restatement explains: "The interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action."  Id. § 766B cmt. d.  It follows from this basic understanding of intent that, for the Defendants to have intentionally interfered with any prospective contractual relationship Mountain Highlands might enjoy, they must have be aware of that relationship.  Otherwise, they could not "desire[] to cause [the] consequences of" their action, id. § 8A, or desire to bring about the interference or know "that the interference is certain or substantially certain," id. § 766B cmt. d.  Mountain Highlands does not seem to take issue with this basic point -- it planned to propose an instruction that had as an element that the Defendants knew or should have known of the relationship in question, see id. at 24:25-25:7 -- but rather disputes the nature of the relationship that the Defendants must have known about.

The commentary to the Restatement (Second) of Torts describes the relationships that will

support an interference tort:

> The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts. Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included. Also included is interference with a continuing business or other customary relationship not amounting to a formal contract. In many respects, a contract terminable at will is closely analogous to the relationship covered by this Section.

> The expression, prospective contractual relation, is not used in this Section in a strict, technical sense. It is not necessary that the prospective relation be expected to be reduced to a formal, binding contract. It may include prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation.

Id. § 766B cmt. c.  Mountain Highlands contends that prospective contractual relations that would be of pecuniary value should be understood as including its litigation relationship with Signature Capital.  The Court disagrees.

The phrase "prospective contractual relations" implies a certain degree of probability about a future contract or agreement.  Although the tort covers more than just future contracts -- it can include a "continuing business or other customary relationship not amounting to a formal contract," or an agreement that is not reduced to writing, id. § 766B cmt. c -- it requires at least some consensual economic relationship.  All the variations listed in the Restatement, which includes future contracts, future informal agreements, and business relationships, involve some form of agreement or cooperation between parties.  And they all imply, at a minimum, some form of concrete step towards the realization of some economic value.  By contrast, the litigation relationship that Mountain Highlands is advocating is both adversarial, at least to a degree, and cannot be considered, without more, any substantial step towards a beneficial economic relationship.  Litigation might

result in parties reaching some agreement, but saying that litigation by itself is a sufficient step towards such a relationship is unreasonable.

New Mexico case law has not analyzed the nature of the prospective relationship that must be shown.  All the situations that have arisen in the New Mexico cases, however, involve more concrete expectancies than the benefits that might materialize from a litigation relationship.  In M & M Rental Tools, Inc. v. Milchem, Inc., for instance, the case first adopting the tort in New Mexico, the plaintiff was discussing selling a pump to a company when the defendant, who was visiting the plaintiff's premises, asked to talk to the buyer and offered to sell a pump.  See id. at 94 N.M. at 451, 612 P.2d at 243.  In a similar vein, the other New Mexico cases on interference with prospective contractual relations involve a more definite relationship or economic prospect than the nebulous concept Mountain Highlands is advancing.  See, e.g., Zarr v. Washington Tru Solutions, LLC ¶ 17, 208 P.3d at 923 (at-will employment relationship); Los Alamos National Bank v. Martinez Surveying Services, LLC ¶ 3, 140 N.M. at 43, 139 P.3d at 203 ("ongoing, voluntary relationship" in which company regularly bought surveys from another company); Salter v. Jameson, 105 N.M. 711, 713-14, 736 P.2d 989, 991-92 (Ct. App. 1987)(employee-dentist who copied down patient information and induced patients to wait to get dental work until employee left and started his own practice).

In addition to being at odds with the Restatement and New Mexico case law, Mountain Highlands' view of the relationship that will sustain an interference claim clashes with common sense.  If the possible economic benefits a party might theoretically extract from a party in litigation were grounds for an interference claim, then the tort would cover an unreasonably large amount of behavior.  There is always a possibility that any two parties with any kind of relationship might enter into an agreement or that one might gain an economic advantage from the other.  That speculative possibility cannot be enough to support a cause of action without making an extremely broad cause

of action that would sweep in a significant amount of conduct without any sound reason for doing so.

In keeping with New Mexico law and the Restatement, for a relationship to support an interference-with-prospective-contractual-relations claim, that relationship must have at least some reasonable possibility of leading to a consensual and economically beneficial relationship or contract. Mountain Highlands' negotiations with Signature Capital would satisfy these criteria. There is no evidence, however, that the Defendants were aware of those negotiations, and thus they could not have intentionally interfered with the negotiations. The Defendants were aware that Mountain Highlands and Signature Capital were in litigation together and had been in the past as well, but that relationship alone will not support an interference claim. In other words, what the Defendants knew was not about a relationship that would support an interference tort, and the relationship that could support a tort was not one about which the Defendants knew. There is no evidence that the Defendants intentionally interfered with any prospective contractual relationship, and the Court will dismiss that claim.

That ruling leaves prima-facie tort. As has been true throughout most of this case, the parties devoted minimal attention to this claim. Prima-facie tort, however, falls for reasons similar to those that caused the interference claim to fail. Like the interference claim, prima-facie tort is an intentional tort. To prove its prima-facie tort claim, Mountain Highlands must prove that the Defendants intentionally acted, and "intended that the [act] . . . would cause harm to the plaintiff or . . . knew with certainty that the [act] . . . would cause harm to the plaintiff." Civ. UJI 13-1631, NMRA (brackets in original). The only basis for finding an intent to harm that the Court identified was the same evidence it identified underlying the interference claim, namely that the Defendants knew about the negotiations with Signature Capital. See MOO at 25. This assumption regarding

what the Defendants knew has since proven to lack a basis in the record, and Mountain Highlands has not identified any other evidence or articulated any alternative theory for the prima-facie tort claim.  Without knowledge of the negotiations, the Court does not see any sound basis for finding that Mountain Highlands had an intent to harm that will support a prima-facie tort claim.  The Court will dismiss that claim as well.  With that ruling, the Court has dismissed all of Mountain Highlands' remaining claims.

**IT IS ORDERED** that the  Defendants' Expedited Motion to Reconsider Memorandum Opinion and Order Document #131 is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Steven S. Scholl
Dave M. Wesner
Dixon Scholl & Bailey, P.A.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff/Counterdefendant*

Charles V. Henry, IV
Donald A. Walcott
Charlotte Hetherington
Scheuer, Yost, & Patterson, P.C.
Santa Fe, New Mexico

     *Attorneys for the Defendants/Counterclaimants*