## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MOUNTAIN HIGHLANDS, LLC,
an Oregon Limited Liability Company,

      Plaintiff,

vs.                                                                 No. CIV 08-0239 JB/ACT

DAVID B. HENDRICKS, and
MAGNOLIA MOUNTAIN LIMITED
PARTNERSHIP, a Texas limited
partnership,

      Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on the Defendants' Motion for Costs

and Attorneys' Fees, filed August 14, 2009 (Doc. 188).   The Court held a hearing on

November 12, 2009.  The primary issues are: (i) whether Defendants David B. Hendricks and

Magnolia Mountain Limited Partnership ("MMLP") are entitled to attorneys' fees arising from 2007

litigation based on a provision in the Exchange Agreement to which that litigation related; and

(ii) whether the Defendants are entitled to costs for the deposition of Mitchell Brown, a potential

witness in this case, and/or the videotaping of the depositions of several deponents.  Because the

attorneys' fees provision in the Exchange Agreement was severable from the remainder of the

agreement, and because Plaintiff Mountain Highlands, LLC does not contest that the attorneys' fees

are reasonable and necessary, the Court will award the Defendants attorneys fees under that

provision.  The Court will also allow the Defendants to recover costs of deposing Brown because

---

[1] The Court has previously entered an Order granting in part and denying in part the Defendants' Motion for Costs and Attorneys' Fees.  See Order, filed March 31, 2010 (Doc. 209). This opinion is intended to explain more fully the Court's reasoning for its previous Order.

the Defendants used that deposition, but will deny costs for the videotape recording of any depositions because such costs are duplicative and without reasonable purpose.

## FACTUAL BACKGROUND

The case underlying this fee dispute regards the Defendants' entitlement to payment on two promissory notes, and dates back to Mountain Highlands' filing of a Chapter 11 bankruptcy proceeding on or around January 7, 2006. See Defendants' Motion to Dismiss at 1, filed March 14, 2008, (Doc. 2)("Motion to Dismiss"). MMLP was forced to employ attorneys to collect the amounts due under the promissory notes. See Motion at 3. In early 2007, Mountain Highlands proposed a bankruptcy reorganization plan that included an exchange of real property. In exchange for certain lands that the Defendants owned, the satisfaction of the two promissory notes, and the release of two mortgages on Mountain Highlands' real property that secured the notes, Mountain Highlands offered property owned by a related entity, Shepard's Highlands, to the Defendants. The notes contained severability provisions that read: "If a court . . . determines that any provision of this Note or any other Collateral Document is invalid or unenforceable, then the remaining provisions of this Note and the other Collateral Document will continue in full force and effect." Promissory Note at 2, filed August 14, 2009 (Doc. 188-8). The notes also contained language that defined a collateral document as "any other document evidencing, securing or executed in connection with the indebtedness evidenced hereby." Promissory Note at 1. The Exchange Agreement was executed at least in part "regarding the amounts due to MMLP from [Mountain Highlands] pursuant to the Promissory Notes . . ." and contained an attorney's fees provision that entitled the prevailing party to "recover all of its costs and fees including reasonable attorney's fees." Exchange Agreement at 1, 3, filed August 14, 2009, (Doc. 188-10).

Performance of the Exchange Agreement was contingent on the approval of Mountain

Highlands' chapter 11 reorganization plan by the United States Bankruptcy Court for the District of New Mexico. The Honorable James Starzynski, United States Bankruptcy Judge for the District of New Mexico, rejected Mountain Highlands' bankruptcy reorganization plan, making the Exchange Agreement unenforceable. <u>See</u> Motion at 4.

While MMLP and Hendricks sought recovery of all other amounts due in the bankruptcy proceeding, Mountain Highlands sought dismissal of its bankruptcy and commenced this litigation. <u>See</u> <u>id</u>. at 4. Despite the Defendants' opposition, Judge Starzynski dismissed the bankruptcy case without determining how much Mountain Highlands owed to MMLP and Hendricks. <u>See</u> <u>id</u>. at 4.

## PROCEDURAL BACKGROUND

Mountain Highlands filed this suit in an apparent effort to avoid paying amounts owed to MMLP. <u>See</u> Complaint at 21. Among the documents attached as exhibits to the Complaint are: (i) the Purchase and Option Agreement (Doc. 188-7); (ii) the $450,000.00 Promissory Note (Doc. 188-8); and (iii) the Exchange Agreement (Doc. 188-10). All three documents contain attorneys' fees provisions.[2] The Complaint also requests "voiding of the Plaintiff's agreement to pay the $500,000 note," which also contains an attorneys' fees provision. Complaint ¶¶ 59-100, at 13-21. The Complaint sought damages for fraud, interference with prospective economic advantage, breach of the covenant of good faith and fair dealing, breach of express and implied warranties, and prima-facie tort.

This case involved significant discovery and motion practice. The Defendants insist, with some justification from the Court's vantage, that Mountain Highlands' claims have been moving

---

[2] The attorney's fees provisions in all three documents read: "In the event of litigation between the parties arising from any terms, conditions, obligations under any provisions of this Agreement, the prevailing party shall be entitled to recover all its cost, fee including reasonable attorney fees."

targets throughout the case.  Discovery included the initial disclosures, interrogatories, requests for production of documents, depositions (both taped and untaped) of several individuals, and informal discovery by the Defendants' attorneys, which included internet research and discussions with individuals at Ski Rio.  In addition to the motion to dismiss briefing, there was briefing on four motions for partial summary judgment and on six motions for reconsideration on the motions for partial summary judgment.  There were five hearings on these motions for partial summary judgment.  The legal and factual issues involved in the motion for summary judgment were, at times, complex.  In short, attorneys' fees in this case were not insubstantial.

The Defendants prevailed on their motion for partial summary judgment seeking dismissal of the 2007 claims on November 17, 2008 (Doc. 51), and ultimately on reconsideration motions on July 21, 2009.  See Memorandum Opinion and Order at 1, filed February 5, 2009 (Doc. 75); Memorandum Opinion and Order at 1, filed June 22, 2009 (Doc. 117); Memorandum Opinion and Order at 1, filed July 14, 2009 (Doc. 131); and Memorandum Opinion and Order at 1, filed July 21, 2009 (Doc. 139).  And eventually, on their claims for collection of monies due from the sale of real property, the Defendants received a jury verdict and judgment in their favor.  See Redacted Document, filed July 28, 2009 (Doc. 167), and Judgment, filed July 30, 2009 (Doc. 170).

Now before the Court is the Defendants' motion for costs and attorneys' fees.  In support of their motion, the Defendants attach nine exhibits, which they then incorporate by reference into the motion: (i) a summary of allowable costs; (ii) a summary of fees incurred in Mountain Highlands' bankruptcy proceeding; (iii) a summary of fees incurred in this litigation; (iv) the Affidavit of Donald A. Walcott; (v) the Affidavit of Michael R. Comeau; and (vi) the contracts upon which this motion is based. The Defendants represent that copies of all of the billing records are voluminous, but that they will immediately produce them upon Mountain Highlands' or the Court's request.

On September 1, 2009, the Clerk of the Court issued a minute order taxing costs against Mountain Highlands and in favor of the Defendants.  See Minute Order, filed September 1, 2009, ("Clerk's Order")(Doc. 193).   The Minute Order stated that the total fees recoverable was $11,422.23, and that the taxation of fees was incorporated into the judgment entered July 30, 2009. See id.  That amount apparently included $2,732.99 that the Defendants spent to videotape the depositions of Brown and another witness, Robert Janes.  See Motion Exhibit 1, at 1 (Defendants' Costs Bill).

At the hearing on this motion, David Wesner, Mountain Highlands' attorney, conceded that Mountain Highlands was not challenging the award of costs other than to contest the two issues brought up in the briefing -- the costs associated with Brown's deposition and with all videotape recording of depositions.  See Transcript of Hearing at 10:15-19 (taken November 12, 2009)("Tr.") (Wesner).[3]  The Court asked Mr. Wesner, "what [he] was doing with the reasonableness" of the attorneys' fees charged, and whether they were "reasonably and necessarily incurred."  Tr. at 10:20-11:1 (Court).  Mr. Wesner responded that Mountain Highlands "essentially let that argument go in the briefing," and indicated that Mountain Highlands contests the Defendants' right to attorneys' fees, not whether the fees themselves were reasonably and necessarily incurred.  Tr. at 10:20-12:9 (Wesner).  Mountain Highlands also appears to concede that, if the attorneys-fees provision of the Exchange Agreement is enforceable, the Defendants are entitled to recover fees for the 2007 claims.  See Tr. at 12:16-13:8 (Court, Wesner).

## LAW REGARDING AWARDS OF ATTORNEYS' FEES

"In a diversity action, a party's right to attorney fees under a contract is determined by

---

[3]  The Court's citations to transcripts of hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

reference to state law." Rockwood Ins. Co. v. Clark Equip. Co., 713 F.2d 577, 579 (10th Cir. 1983).

See Mangold v. Calif. Pub. Utils. Comm'n, 67 F.3d 1470, 1478-79 (9th Cir. 1995)(stating that state

law controls the method of calculating attorneys' fees awarded in state-law cases in federal court

under diversity jurisdiction).   New Mexico applies the American Rule regarding attorneys' fees,

where, absent some reason to divert from the general rule, "the prevailing party . . . does not receive

attorney fees."   Key v. Chrysler Motors Co., 128 N.M. 739, 745, 998 P.2d 575, 581 (Ct. App.

2000)(quoting Schroeder v. Mem'l Med. Ctr., 123 N.M. 719, 721, 945 P.2d 449, 451 (1997)).   See

ACLU of N.M. v. City of Albuquerque, 128 N.M. 315, 324, 992 P.2d 866, 875 (1999)("Generally,

absent statutory or other authority, each party is responsible for their own attorney fees.").   The trial

court can, however, award reasonable fees to the prevailing party if permitted by statute.   See, e.g.,

NMSA 1978, § 39-2-1 ("In any action where an insured prevails against an insurer who has not paid

a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's

fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing

to pay the claim."); NMSA 1978, § 39-2-2.1 ("In any civil action in the district court, small claims

court or magistrate court to recover on an open account, the prevailing party may be allowed a

reasonable attorney fee set by the court, and taxed and collected as costs.").[4]   On the other hand,

contracting parties can, and often do, include a provision in their contracts that, if one party sues the

other, and that suit relates to the contract, the winner of the suit will be awarded the fees reasonably

and necessarily incurred in bringing or defending that contract suit.   See Fort Knox Self Storage, Inc.

v. W. Techs., Inc., 140 N.M. 233, 240-41, 142 P.3d 1, 8-9 (Ct. App. 2006)(affirming an award of

---

[4] Although the Court notes that the New Mexico open-account statute's fee provision might apply in this case, the Court awards fees based upon the Exchange Agreement and need not decide whether the promissory notes constitute open accounts under New Mexico law.

attorneys fees under such a clause).  In the face of such a provision, a court has no discretion but to award fees if the contract requires it.  See Hedicke v. Gunville, 133 N.M. 335, 342, 62 P.3d 1217, 1224 (Ct. App. 2002)("The trial court may abuse its discretion if it does not award attorney fees contrary to a contractual provision entitling the prevailing party to reasonable attorney fees.").

Out of fairness to the opposing party, an award of attorneys' fees must be reasonable and necessary to the attorneys' representation of their client in the case.  In Budagher v. Sunnyland Enterprises Inc., 93 N.M. 640, 641, 603 P.2d 1097, 1098 (1979), a contract suit involving a claim for damages, the Supreme Court of New Mexico cited with approval a number of factors set forth in the case of Fryar v. Johnson, 93 N.M. 485, 487, 601 P.2d 718, 720 (1979), which courts consider when determining the reasonableness of a claim for attorneys' fees.  These factors include: (i) the time and labor required -- the novelty and difficulty of the questions involved and skill required; (ii) the fee customarily charged in the locality for similar services; (iii) the amount involved and the results obtained; (iv) the time limitations that the client or the circumstances imposed; and (v) the experience, reputation, and ability of the lawyer or lawyers performing the services.  See State ex rel. Conley Lott Nichols Mach. Co. v. Safeco Ins. Co. of Am., 100 N.M. 440, 446, 671 P.2d 1151, 1157 (Ct. App.), cert. denied, 100 N.M. 327, 670 P.2d 581 (1983).  "Some evidence concerning these factors is required in order to establish a prima facie case for the recovery of attorneys fees as an element of damages in contract actions."  State ex rel. Conley Lott Nichols Mach. Co. v. Safeco Ins. Co. of Am., 100 N.M. at 446, 671 P.2d at 1157.

## LAW REGARDING TAXATION OF COSTS

A prevailing party may move for costs at any time after the court enters judgment.  See 10 J. Moore & F. Smith, Moore's Federal Practice ¶ 54.101[1][a], at 54-141 (3d ed. 2004).  Local rules require the party recovering costs to file a motion to tax costs within thirty days of the entry

of judgment.  See D.N.M. LR-Civ 54.1.  The presumption is that the court should award the prevailing party costs pursuant to rule 54 of the Federal Rules of Civil Procedure.  See Klein v. Grynberg, 44 F.3d 1497, 1506 (10th Cir. 1995).  Only a showing that an award would be inequitable under the circumstances can overcome the presumption in favor of awarding costs to the prevailing party.  See J. Moore & F. Smith, supra ¶ 54.101 [1][b], at 54-152.

Under rule 54(d)(1), "the [court] clerk may tax costs on 14 days notice.  On a motion served within the next 7 days, the court may review the clerk's action."  Fed. R. Civ. P. 54(d)(1).  "[T]he taxing of costs rests in the sound discretion of the trial court, and the exercise of such discretion will not be disturbed on appeal except in case[s] of abuse."  Gabbo Farms & Orchards v. Pode Chem. Co., 81 F.3d 122, 124 (10th Cir. 1996)(quoting U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1245 (10th Cir. 1988)).  "The presumption is that the court should award the prevailing party costs."  A.D. v. Deere & Co., 229 F.R.D. 189, 192 (D.N.M. 2004)(Browning, J.).  Despite, the "presumption that a prevailing party is entitled to costs, there are circumstances in which it is considered inequitable to award costs to the prevailing party."  Id.  For example, "[t]he court may deny an award of costs because the prevailing party was obstructive, acted in bad faith during litigation and incurred unnecessary or unreasonably high costs."  Id.  The Court may also reduce or deny an award of costs based upon a losing party's ability to pay.  See Cantrell v. Int'l Brotherhood of Elec. Workers AFL-CIO Local 21, 69 F.3d 456, 459 (10th Cir. 1995).

## RELEVANT LAW OF CONTRACT SEVERABILITY

A severable or divisible contract is "[a] contract that includes two or more promises each of which can be enforced separately, so that failure to perform one of the promises does not necessarily

put the promisor in breach of the entire contract."  Black's Law Dictionary at 373 (9th ed. 2009).[5]

Another aspect of severability is that, if one portion of a severable contract is deemed invalid, it does

not necessarily render the other, severable portions invalid.  Generally, "[t]he parties' intent to enter

into a divisible contract may be expressed in the contract directly, through a so-called 'severability

clause,' as well as indirectly, as when the contract contains promises to do several things based upon

multiple distinct considerations."  15 R. Lord, Williston on Contracts § 45:6 (4th ed.).  As Professor

Richard Lord has recognized,

> the absence of [a severability] clause has been cited as a factor tending to indicate
> that the contract is entire rather than divisible in the situation where it is alleged that
> a default under one part of a contract does not excuse performance of the other party
> under another part on the ground of divisibility.

Id.  One context in which courts often find that a contract provision is severable is an attorneys-fee

provision, which dictates that the prevailing party in any dispute arising from the contract will be

awarded the attorneys' fees spent in the legal battle.  See UMG, Inc. v. Green, 66 Va. Cir. 232, 2004

WL 2877374, at *2 (Nov. 23, 2004)("[T]he attorneys' fees provision should be read to survive

cancellation in order to give full effect to the intent of the parties.  If the attorneys' fees clause was

not intended to survive the contract's cancellation, it would be rendered virtually without effect.");

Norwood v. Serv. Distrib., Inc., 297 Mont. 473, 485, 994 P.2d 25, 37 (2000)("In identical

circumstances, we upheld an award of attorney's fees pursuant to [an attorneys-fees] provision, even

though the 'prevailing party' had in fact succeeded in rescinding the contract."); Mackintosh v.

---

[5] Black's Law Dictionary also directed the Court to a helpful quote:  "A severable contract
. . . is one the consideration of which is, by its terms, susceptible of apportionment on either side,
so as to correspond to the unascertained consideration on the other side, as a contract to pay a person
the worth of his services so long as he will do certain work; or to give a certain price for every
bushel of so much corn as corresponds to a sample."  I. Horniman, Wharton's Law Lexicon at 215
(13th ed. 1925).

Calif. Fed. Sav. & Loan Ass'n, 113 Nev. 393, 406, 935 P.2d 1154, 1167 (1997)(reversing the trial

court's denial of fees under contractual attorneys-fee clause where a party proved the contract was

rescinded); Grease Monkey Int'l, Inc. v. Godat, 916 S.W.2d 257, 261 (Mo. App. 1995)("[A]ppellant

argues the trial court erred in finding the contract null and void yet premising the attorney's fee

award on a provision of that same contract.  We find the contract was divisible and, therefore, the

trial court did not error.").

## ANALYSIS

Before setting this matter to rest, a few remaining questions must be answered.  As a

threshold consideration, the Court must determine if the fees themselves are allowable under the

attorneys' fees provision of the Exchange Agreement.  Often, when fees are imposed on a party, it

is under the authority of a contractual attorneys-fee clause, such as the ones at issue in this case.

Here, however, there exists a question whether the attorneys' fees provision of the Exchange

Agreement is enforceable.  Mountain Highlands has alleged that the bankruptcy court's rejection

of its bankruptcy reorganization plan rendered the Exchange Agreement unenforceable, and that the

unenforceability extends equally to the Exchange Agreement's attorneys-fee provision.  If the Court

determines it must award fees, it must then decide if the proposed quantity of fees are reasonable

using the Fryar v. Johnson factors.

The final issue then left before the Court is related to costs.  Again, the Clerk of Court issued

a Minute Order taxing costs against Mountain Highlands on September 1, 2009.  On September 8,

2009, within 7 days of the order taxing costs, Mountain Highlands filed its Response to this motion.

See Plaintiff's Response to Defendants' Motion for Costs and Attorneys' Fees at 1, filed September

8, 2009 (Doc 195)("Plaintiff's Response").  At the hearing, Wesner agreed that Mountain

Highlands' Response should be construed as objections to the order taxing costs based on the

arguments made therein.  <u>See</u> Tr. at 8:17-21 (Court, Wesner).  The Court thus must determine if the costs related to the transcribing and video taping of deposition testimony that was not used in the salient proceeding should be awarded, as it is in the Court Clerk's taxation order in favor of the Defendants.  <u>See</u> Minute Order, filed September 1, 2009 (Doc. 193).

Because the attorneys' fees provision in the Exchange Agreement was severable from the remainder of the Exchange Agreement, the Court will award attorneys' fees to the Defendants as the prevailing party.  Furthermore, because Mountain Highlands concedes that the fees are reasonable, the Court will award the amount the Defendants request.  Because, however, the costs directly related to the videotaped record of Brown's deposition are duplicative and without necessary or reasonable purpose, the Court will subtract them from the total costs award.

## I.   THE ATTORNEY'S FEE PROVISION OF THE EXCHANGE AGREEMENT GOVERNS.

The bankruptcy court's rejection of the plan that Mountain Highlands proposed precipitated the Court's eventual finding that the Exchange Agreement was unenforceable.  <u>See</u> Doc. 197. Mountain Highlands has argued that the unenforceable nature of the Exchange Agreement invalidates its attorneys-fees provision.  <u>See</u> Plaintiff's Response at 1.  Mountain Highlands further points to the Defendants' argument that the Exchange Agreement should be deemed unenforceable as evidence that the Defendants are trying to enforce the Exchange Agreement when it "suits their purposes."  Plaintiff's Response at 5.  According to Mountain Highlands, it is inconsistent that the Defendants, now seeking to collect fees under the Exchange Agreement, have argued that it is unenforceable.  On the other hand, the Exchange Agreement and both promissory notes contained attorneys-fee provisions that contemplated that one party might seek to have the contract, in whole or in part, deemed unenforceable.  The Exchange Agreement contained a provision stating:

"29  Attorney Fees.  In the event of litigation between the parties arising from any terms, conditions, obligations under any provision of this Agreement, the prevailing party shall be entitled to recover all of its costs and fees including reasonable attorneys fees."  Motion Exhibit 9 (Doc. 188-10).  The promissory notes contained a similar provision: "9  Court Costs, Attorney Fees and Expenses: If a dispute arises between the Parties respecting this Note and litigation ensues, the prevailing party shall be entitled to reimbursement of its related costs, including attorney's [sic] fees."  Motion Exhibit 7 (Doc. 188-8).  See Motion Exhibit 8 (Doc. 188-9)(containing an attorneys-fee provision similar to Exhibit 7).  If these provisions are unenforceable, the Court could only award fees if some statute gives it authority to do so under New Mexico law; if the provision is enforceable, the Court must award fees.

The Court acknowledges that Judge Starzynski deemed the Exchange Agreement unenforceable, but the Court finds that the attorneys-fee provision survives, because, by the contract's express terms, it was severable from the substantive portion of the contract.  First of all, New Mexico contract law governs the Exchange Agreement.  Like most states, "New Mexico respects party autonomy; [therefore] the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."  Fiser v. Dell Computer Corp., 144 N.M. 464, 467, 188 P.3d 1215, 1218 (2008)(citing NMSA 1978, § 55-1-301(A)).  See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp., 108 N.M. 467, 470, 775 P.2d 233, 236 (1989).  Here, the parties agreed that New Mexico law governed the Exchange Agreement.[6]  The promissory notes

---

[6] The choice-of-law provision reads:

Governing Law. This Agreement is being executed and delivered and is intended to be performed in the State of New Mexico, and the parties . . . consent to the jurisdiction of any Court of Competent Jurisdiction located in New Mexico.  The validity, construction, enforcement, [and] interpretation . . . of this Agreement shall

also contain choice-of-law provisions that declare New Mexico law as the governing law.[7]  Under New Mexico law, courts, "when discerning the purpose, meaning, and intent of the parties to a contract," are duty bound to interpret the "contract that the parties made for themselves." Medina v. Holguin, 145 N.M. 303, 306, 197 P.3d 1085, 1088 (Ct. App. 2008).  Furthermore, "when the terms of the agreement are clear and unambiguous, courts try to ascertain the intent of the parties from the ordinary meaning of the language in the agreement." Heimann v. Kinder-Morgan CO2 Co., L.P., 140 N.M. 552, 557, 144 P.3d 111,116 (Ct. App. 2006).

Neither side argued that the language of the documents is ambiguous. Neither party, furthermore, mentioned Mark V. Inc v. Mellekas, 114 N.M. 778, 845 P.2d 1232 (1993), or asked for any Mark V hearing.[8]  On the record before the Court, the only evidence of the parties' intent is the language of the Exchange Agreement, the promissory notes, and other related documents submitted to the Court.  Thus, without any suggestion that there is more evidence or that a Mark V hearing is needed or desired, the Court will resolve the interpretation of the documents on the record before it.  Moreover, after careful review, the Court finds that the terms of the documents discussed herein are unambiguous.  The Court will, therefore, use the plain language of the Exchange Agreement and other collateral documents to uphold certain of its provisions at issue here.

_____

be governed by the laws of . . . New Mexico . . . .

Exchange Agreement at 3 (Doc. 188-10).

[7] Those provisions read: "Governing Law. This Note will be governed as to validity, interpretation, construction, effect, enforceability and in all other respects by the laws of New Mexico." Promissory Note at 2 (Doc. 188-8).

[8]According to the Supreme Court of New Mexico in Mark V. Inc v. Mellekas, a district court may take extrinsic evidence to determine whether a contract is ambiguous. See 114 N.M. at 781-82, 845 P.3d at 1235-36.

The language of the Exchange Agreement was designed to facilitate the transfer of assets pursuant to Mountain Highlands' filing of Chapter 11 bankruptcy.  See Exchange Agreement at 3. The Exchange Agreement mentions that MMLP's secured interest in two promissory notes was an impetus for the creation of the agreement.  See Exchange Agreement at 3.  Both notes include clauses entitled "Severability," which state: "[I]f a court of competent jurisdiction determines that any provision of this Note or any other Collateral Document is invalid or unenforceable, then the remaining provisions of the Note and the other Collateral Documents will continue in full force and effect."  Promissory Notes at 2, filed August 14, 2009 (Docs. 188-8 and 188-9)("Promissory Notes").  The notes then define a "Collateral Document" as "any . . . document evidencing, securing, or executed in connection with the indebtedness evidenced hereby."  Id.

The promissory notes anticipated the potential existence of the Exchange Agreement and took precautions to ensure that future documents related to the "execution" of the note would be preserved.  Promissory Notes at 1.  Furthermore, the Court believes that the parties, in the plain language of the Exchange Agreement, intended to reference the promissory notes as property giving rise to the creation of the agreement in the first place.  See Exchange Agreement at 1.  The Court thus finds that the Exchange Agreement qualifies as a "Collateral Document," as the promissory notes define it.

Because the parties' Exchange Agreement qualifies as a Collateral Document within the meaning of the severability clause of the promissory notes, the attorneys-fees provision can be severed from the remainder of the Exchange Agreement, despite the failure of another provision. See Prudential Ins. Co. of Am. v. Virginia C. Anaya, 78 N.M. 101, 106  428 P.2d 640, 645 (1967)("In determining whether or not a contract is divisible, the governing principle is the manifested intention of the parties in view of the nature of the contract . . .").  Many courts have held

that such attorneys-fee provisions are severable from the underlying contracts in which they are included.  See UMG, Inc. v. Green, 2004 WL 2877374, at *2; Norwood v. Serv. Distrib., Inc., 297 Mont. at 485, 994 P.2d at 37; Mackintosh v. Calif. Fed. Sav. & Loan Ass'n, 113 Nev. at 406, 935 P.2d at 1167; Grease Monkey Int'l, Inc. v. Godat, 916 S.W.2d at 261.  The Court finds that the attorneys-fee provision of the Exchange Agreement is severable from the remainder of the agreement and enforceable notwithstanding that the remainder of the contract has been held unenforceable.

Furthermore, finding attorneys-fee provisions severable from the underlying contract makes logical sense.  It must be contemplated that one dispute that might arise between the parties is whether the underlying contract is enforceable.  If an attorneys-fee provision is worded broadly enough to encompass any claims that could arise out of the contract, it should include suits that challenge the enforceability of the underlying agreement.  Several courts have so found.  See UMG, Inc. v. Green, 2004 WL 2877374, at *2 ("[T]he attorneys' fees provision should be read to survive cancellation in order to give full effect to the intent of the parties.  If the attorneys' fees clause was not intended to survive the contract's cancellation, it would be rendered virtually without effect."); Norwood v. Serv. Distrib., Inc., 297 Mont. at 485, 994 P.2d at 37 ("In identical circumstances, we upheld an award of attorney's fees pursuant to [an attorneys-fees] provision, even though the 'prevailing party' had in fact succeeded in rescinding the contract."); Mackintosh v. Calif. Fed. Sav. & Loan Ass'n, 113 Nev. at 406, 935 P.2d at 1167 (reversing the trial court's denial of fees under contractual attorneys-fee clause where a party proved the contract was rescinded); Grease Monkey Int'l, Inc. v. Godat, 916 S.W.2d at 261 ("[A]ppellant argues the trial court erred in finding the contract null and void yet premising the attorney's fee award on a provision of that same contract. We find the contract was divisible and, therefore, the trial court did not error."). Again, the Court

-15-

will allow the Defendants to recover reasonable attorneys' fees under the attorneys-fee provision of the Exchange Agreement.

## II.      **THE FEES REQUESTED ARE REASONABLE.**

If the fees are allowable, the Court must then determine whether they are reasonable.  The determination of reasonableness is done by looking at the Fryar v. Johnson factors.  In this case, however, Mountain Highlands -- the non-prevailing party -- has conceded that the fees, if allowable, were reasonably and necessarily incurred.  See Tr. at 10:20-11:21 (Court, Wesner).  Nevertheless, the Court, in making its own determination of the reasonableness of the fees, also considered the following  Fryar v. Johnson factors:  (i) the time and labor required -- the novelty and difficulty of the questions involved and skill required; (ii) the fee customarily charged in the locality for similar services; (iii) the amount involved and the results obtained; (iv) the time limitations that the client or the circumstances imposed; and (v) the experience, reputation, and ability of the lawyer or lawyers performing the services.

The Court has carefully reviewed the summary of the Defendants' attorneys' fees, Motion Exhibits 1-3 (Docs. 188-2, 188-3, & 188-4), and the total does not appear to be out of line with the cost of commercial litigation in New Mexico and elsewhere.  The litigation involved in this case was complex and time-intensive, involving some complex issues of bankruptcy and contract law.  The Defendants prevailed on several issues, indicating that their counsel performed at least adequately and competently, if not superiorly.

The Defendants attached affidavits attesting to the skill and reputation of the attorneys, both of which are positive.  The Court concurs in their affidavits' assessment of Mr. Walcott's and his firm's skills.  Finally, Mountain Highlands does not argue that the Defendants' counsel charge fees in excess of what is customary.  Mr. Walcott filed an affidavit in which he informed the Court that

-16-

his hourly rate ranged from $170.00 per hour to $210.00 per hour over the course of his representation of the Defendants, and that he charged the Defendants either $70.00 or $75.00 per hour for the work of his paralegals.  <u>See</u> Affidavit of Donald A. Walcott ¶¶ 5-13, at 1-2 (executed August 14, 2009), filed August 14, 2009 (Doc. 188-5).  Mr. Walcott also stated that other attorneys worked on this project at his discretion, and charged the Defendants' their respective hourly rates, but did not inform the Court what those rates were.  <u>See id.</u> ¶¶ 7-12, at 2.  At least as to the fees that Mr. Walcott charged for his work and that of the paralegals he mentions, the Court finds that such fees are reasonable and customary in this District.  <u>See</u> <u>Wiatt v. State Farm Ins. Cos.</u>, No. CIV 07-0526 JB/KBM, 2008 WL 2229630, at **4-5 (Mar. 24, 2008)(holding that a fee of $200.00 per hour for insurance defense work was reasonable); <u>Applied Capital, Inc. v. Gibson</u>, No. CIV-05-0098 JB/ACT, 2007 WL 709054 at *3 (D.N.M. Jan. 30, 2007)(Browning, J.)(approving hourly rate of $210.00 for commercial litigation dispute); <u>Allahverdi v. Regents of Univ. of N.M.</u>, No. CIV05-0277 JB/DJS, 2006 WL 1304874 at *2 (D.N.M. Apr. 25, 2006)(finding hourly rate of $225.00 reasonable); <u>Kelley v. City of Albuquerque</u>, Case No. CIV 03-507 JB/ACT, 2005 WL 3663515, at **15-17 (Doc. 117)(D.N.M. Oct. 24, 2005)(Browning, J.)(finding $250.00 per hour to be a reasonable rate).  Mr. Walcott's work fits squarely within the rate structure the Court has approved, and his work quality was higher and hourly rate lower than some fee awards it has approved.

The Court does not think the total amount sought is out of line with the pre-trial and trial services that Defendants' counsel provided. The Court thus finds that the fees are reasonable. Mountain Highlands' concession as to reasonableness will not be disturbed.

## III.    THE COURT WILL NOT AWARD FEES FOR RESPECT TO THE COSTS OF VIDEOTAPING THE BROWN DEPOSITION.

With respect to costs, Mountain Highlands raises two issues, which, at the parties' request, the Court treats as objections to the Clerk of the Court's Minute Order taxing fees against Mountain Highlands: (i) whether the costs related to the transcription of Brown's deposition are taxable to the non-prevailing party; and (ii) whether the costs of video recording depositions can be taxed to the non-prevailing party.

> Section 1920 of the U.S. Code permits recovery for the costs of taking, transcribing and copying depositions 'necessarily obtained for use in the case.' 28 U.S.C.§ 1920 (2), (4). [The United States Court of Appeals for the Tenth Circuit has] stated that this definition authorizes recovery of costs with respect to all depositions 'reasonably necessary to the litigation of the case.'

Furr v. AT&T Techs., Inc., 824 F.2d 1537,1550 (10th Cir. 1987).  Furthermore, "depositions taken 'solely for discovery are not taxable as costs, but if the depositions were actually introduced in evidence or used at trial for impeachment purposes, then it is proper to conclude that they were necessarily obtained for use in the case.'" Id.

The District of New Mexico Local Rules extends the time period for filing a motion to tax costs to thirty days from the date of entry of judgment.  See D.N.M. LR-Civ 54.1.  The rules also set forth a relatively thorough list of the litigation costs that the Court can tax against a party.  It includes transcripts, deposition costs, witness costs, interpreter or translator costs, costs of copies, and cost of producing miscellaneous physical and demonstrative items.  See D.N.M. LR-Civ 54.2. Relevant to this motion, the rule specifies that the cost of the original or a copy of a deposition transcript is taxable if "reasonably necessary to the litigation."  D.N.M. LR-Civ 54.2(b).

### A.    COSTS TO TRANSCRIBE A DEPOSITION ARE ALLOWABLE.

Along with the Tenth Circuit holding from Furr v. AT&T Techs., Inc., Rule 54 of the Local

Civil Rules of the United States District Court for the District of New Mexico provides for the taxation of costs associated with the transcription of a deposition if "the deposition is reasonably necessary to the litigation."  D.N.M. LR-Civ. 54.2(b).  Furthermore, a deposition is "reasonably necessary to the litigation" where "the deposition is used by the court in ruling on a motion for summary judgment" or the court determines it is reasonably necessary.  Id.

In this case, the Defendants attached Brown's deposition as Exhibit 4 to Defendant's Motion for Partial Summary Judgment.  See Defendant's Motion for Partial Summary Judgment, filed December 16, 2008 (Doc. 58)("2003 Claims Motion").  Its attachment served the purpose of removing the possibility that Defendants made any representations directly to Brown.  This purpose, when coupled with the fact that the Defendants -- the prevailing party here -- eventually won the motion, provides sufficient "use by the court" to meet the requirements of D.N.M. LR-Civ. 54.2(b) and provides sufficient evidence that the transcript was necessarily obtained for use in the case.  See 2003 Claims Motion at 9-10.  The Court finds the transcript was reasonably necessary, and the Court will allow reimbursement of costs associated with the transcript of the Brown deposition.  This objection to the Clerk of Court's Minute Order taxing fees against Mountain Highlands is overruled.

### B.    COSTS OF VIDEO TAPING DEPOSITIONS ARE NOT ALLOWABLE.

Rule 30(b)(3)(B) of the Federal Rules of Civil Procedure states: "With prior notice to the deponent and other parties, any party may designate another method for recording the testimony in addition to that specified in the original notice.  That party bears the expense of the additional record or transcript unless the court orders otherwise."  Fed. R. Civ. P. 30(b)(3)(B).  This preference that the costs of an additional method of recording are borne by the party that arranges for the additional recording  -- the Defendants in this case -- is not overcome here.

The Defendants argue that costs associated with both transcribing and videotaping a

deposition can be awarded, relying on <u>Tilton v. Capital Cities/ABC, Inc.</u>, 115 F. 3d 1471 (10th Cir.

1997).  In <u>Tilton v. Capital Cities/ABC, Inc.</u>, the Tenth Circuit determined that the costs of both a

videotaped deposition and a transcription of such a recording are taxable. <u>See</u> 115 F. 3d. at 1477-78.

The Tenth Circuit qualified this assertion, however, by saying costs associated with transcribing a

videotaped deposition were taxable so long as "necessarily obtained for use in the case," and when

the transcript is put to "a legitimate use independent from or in addition to the videotape which

would justify its inclusion in an award of costs."  115 F. 3d at 1477-78.

      Despite that taxation of both the costs of videotaping and transcribing depositions is

potentially allowable, the Court will not allow it here.  In <u>Tilton v. Capital Cities/ABC, Inc.</u>, unlike

this case, the transcript served as a back-up to an already-existing videotape record of the deposition.

<u>See</u> 115 F.3d at 1477-78.  The videotape of the deposition here was never used.  It was, instead, the

transcript that was attached as an exhibit to a motion.  <u>See</u> 2003 Claims Motion Exhibit 11.

Furthermore, the videotape recording and the transcript were collected simultaneously, which was

duplicative and ultimately unnecessary, especially when considering that the tape itself was never

used for any independent purpose.  The Defendants might contend that the videotape still can serve

as a back-up to the transcript.  That argument, however, is inconsistent with the reasoning behind

<u>Tilton v. Capital Cities/ABC, Inc</u>.  The Tenth Circuit's reasons why backing up a videotape with a

transcript is a "a legitimate use independent from or in addition to the videotape which would justify

its inclusion in an award of costs" included: (i) potential technical difficulty when using a video

tape; (ii) the possibility of deceptive editing; and (iii) the belief that a transcript provides more

readily accessible information for reference by the court. 115 F.3d at 1477-78.  Those justification

do not support the notion that a videotape could be considered a back-up of a paper transcript.

      The Court finds no sound reason to back up a paper transcript with a videotape and thus finds

that a litigant would have to show some other independent use for the videotape to justify taxation of those fees.  Because the Defendants have shown no such independent use, the Court will sustain Mountain Highlands' objection to the taxation of fees related to the videotaping of depositions.  The costs directly linked to the videotaping of depositions that ultimately were not used -- an amount of $2,732.99 -- will not be taxed against Mountain Highlands.

The Court notes that the attorneys-fees provisions -- in the Exchange Agreement and the promissory notes -- also provide that the prevailing party shall recover "[the party's] related costs," Motion Exhibit 7, "[the party's] related expenses and costs," Motion Exhibits 8, and "all of its costs," Motion Exhibit 9.  The Court is not convinced that this changes the above analysis, nor do the Defendants argue that the definition of "costs" in the contractual provision should be broader or different than how the law defines and uses that term.  The contracts do not appear to define the terms "costs" or "expenses."  The Court finds no sound reason to infer that the parties intended to allow for the award of costs other than those customarily awarded to prevailing parties in litigation, or those which federal law allows the Court to award.  See 28 U.S.C. § 1920 ("A judge or clerk of any court of the United States may tax as costs the following: . . . (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case."); D.N.M. LR-Civ 54.2(b)(1) (allowing fees for depositions "reasonably necessary to the litigation").  Rather, the parties' intent was most likely to remove the Court's discretion in awarding costs under rule 54.  See United States ex rel. Ritchie v. Lockheed Martin Corp., 558 F.3d 1161, 1171 (10th Cir. 2009) ("Awards of costs are reviewed for an abuse of discretion."); Energy Mgmt. Corp. v. City of Shreveport, 467 F.3d 471, 483 (5th Cir. 2006)("A district court has wide discretion whether to award costs to the prevailing party."); McGill v. Faulkner, 18 F.3d 456, 459 (7th Cir. 1994); 10 C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 2668, at 241 (3d ed. 1998)("The court's discretion

-21-

embraces both allowing and disallowing all costs or only particular items."). Because the Court has

awarded costs, and not, in its discretion, refused costs, it has acted consistent with the contract. And

by disallowing costs for the videotaped depositions, the Court believes it has acted consistent with

both federal law and with the language of, and intent behind, the contractual provisions -- to award

costs consistent with federal law.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Steven S. Scholl
Albuquerque, New Mexico

       *Attorney for the Plaintiff*

Charles V. Henry, IV
Charlotte H. Hetherington
Donald A. Walcott
Scheuer, Yost, & Patterson,
  a Professional Corporation
Santa Fe, New Mexico

       *Attorneys for the Defendants*